# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HERRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, MATTHEW BRANDON; | ) | |
| JAMES McKNIGHT; EDWARD | ) | |
| WINSTEAD; DELORES MYLES; | ) | |
| Special Representative To Be | ) | |
| Determined for JAMES R. RILEY; | ) | |
| Special Representative To Be | ) | |
| Determined for JEROME C. DOROBA; | ) | |
| THOMAS F. KELLY; JAMES E. | ) | |
| WARD; WILLIAM TOFFENETTI; | ) | |
| COOK COUNTY; and CHICAGO | ) | |
| HOUSING AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

JERRY HERRINGTON, by and through his attorneys, Hart McLaughlin & Eldridge, LLC, and Romanucci & Blandin, LLC, states as follows for his Complaint against the CITY OF CHICAGO, a municipal corporation, MATTHEW BRANDON, JAMES McKNIGHT, EDWARD WINSTEAD, DELORES MYLES, Special Representative To Be Determined for JAMES R. RILEY, Special Representative To Be Determined for JEROME C. DOROBA,

THOMAS F. KELLY, JAMES E. WARD[1], WILLIAM TOFFENETTI, COOK COUNTY, and CHICAGO HOUSING AUTHORITY:

**INTRODUCTION**

1. Jerry Herrington spent nearly 29 years in prison for a crime he did not commit.

2. Jerry was 16 years old when he was arrested for "disorderly conduct." Little did he know then that he would be framed for a murder he had nothing to do with and that he would not see the light of freedom again until he was released from prison, at the age of 45, in June of 2020.

3. On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 South Dearborn Street in the Dearborn Homes Public Housing Project.

4. At the time, the Dearborn Homes were inundated with drugs, gangs, and crime. Shootings at the Dearborn Homes were not uncommon and, because of the heavy gang presence and fear of deadly retaliation, witnesses to crime were generally unwilling to name names. Chicago Police Department officers and detectives, who had a frequent presence at the Dearborn Homes, knew of this impediment. Therefore, to close cases at the Dearborn Homes, particularly murder cases, CPD officers and detectives had a longstanding pattern and practice of fabricating evidence and manipulating witnesses into falsely identifying "offenders," who would later be baselessly charged, maliciously prosecuted, and wrongfully convicted. That is exactly what happened to Jerry Herrington.

---

[1] Defendants Brandon, McKnight, Winstead, Myles, Riley, Doroba, Kelly, and Ward are sometimes collectively referred to herein as "Defendant Officers and Detectives."

5.      Jerry Herrington was not present at the at the time of Vera Brown's murder and knew nothing about it. He was never identified by a single person as being involved in the murder at any point prior to his criminal trial.

6.      The two pieces of evidence used against Jerry to secure his conviction were both fabricated. First, the Defendant CPD Officers and Detectives coerced and manipulated Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Melvin Jefferson was not present at the site of the shooting and, even based upon his own reported location, he could not have possibly seen the shooting. The Defendant CPD Officers and Detectives told Melvin Jefferson what to say and told him to identify Jerry Herrington as the shooter at trial, knowing that such information was false. Melvin Jefferson has since stated that he was coerced by police into making these false statements.

7.      Second, the Defendant CPD Officers and Detectives, along with Defendant Assistant State's Attorney ("ASA") William Toffenetti, fabricated evidence and falsified reports claiming that Jerry Herrington confessed to the Brown murder. Jerry was subjected to physical abuse and unconstitutional interrogation tactics after his arrest, but he never confessed to having any involvement with the Brown murder. Unsurprisingly, therefore, there is no audio or video recording of his alleged confession, nor did Jerry sign anything memorializing or affirming his purported confession. Defendant Detectives Riley and Doroba and ASA Toffenetti made up this "confession" out of whole cloth, knowing it was false.

8.      Beyond these false and fabricated pieces of evidence — Jefferson's statement and Jerry's confession — there was no evidence to charge Jerry, let alone convict him of murder.

9.      Falsifying and fabricating evidence to support convictions was, after all, part of Defendants' modus operandi. As described below, the Chicago Police Department, as an institution, condoned, enabled, and rewarded its detectives and officers to manipulate witnesses, falsify and fabricate evidence, physically abuse suspects, make up confessions, commit *Brady* violations, and engage in other unconstitutional conduct as a means to an end. That end, here, was the baseless arrest, malicious prosecution, and wrongful conviction of Jerry Herrington.

10.     Without the malicious and unconstitutional conduct of the Defendants, Jerry Herrington would never have been arrested, prosecuted, or convicted; he would never have been ripped away from his family and friends and forced to suffer through the unimaginable horror of spending almost 30 years in prison as an innocent man; he would have never have had his life, liberty, and tremendous potential taken from him; and he would never have the scars, the pain, and the trauma that resulted from him being wrongfully accused, incarcerated, and convicted of murder.

11.     At the same time, however, Jerry always maintained his innocence and always maintained his hope. Now, after surviving a level of torment that no innocent person deserves and persevering through circumstances that would have caused many to lose hope and give up, Jerry Herrington comes before this Court seeking justice and accountability.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under 42 U.S.C. § 1983.

13.     The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14.     The Court has personal jurisdiction over Defendants because at least some reside in the State of Illinois and because their conduct described herein occurred exclusively in Illinois.

15.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because Plaintiff's injuries and damages occurred in the Northern District of Illinois, there are Defendants who reside and conduct business in the Northern District of Illinois, and all events giving rise to this action occurred in the Northern District of Illinois.

## PARTIES

16.     Plaintiff Jerry Herrington was arrested without probable cause, maliciously prosecuted, and wrongfully convicted of the murder of Vera Brown. He now resides in Chicago, Illinois.

17.     Defendant City of Chicago, is a municipal corporation, located in Chicago, Illinois. During the relevant time period, the City of Chicago and its Police Department employed the Defendant Officers and Detectives.

18.     At all relevant times, Defendant Matthew Brandon, believed to be Star No. 17698, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, Brandon was involved with, participated in, and conspired with the other defendants

to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Brandon is a resident of Chicago, Illinois.

19. At all relevant times, Defendant James McKnight, believed to be Star No. 13206, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, McKnight was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington.

20. At all relevant times, Defendant Edward Winstead, believed to be Star No. 20119, was a detective with the Chicago Police Department. In that capacity, Winstead was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Winstead is a resident of Chicago, Illinois.

21. At all relevant times, Defendant Delores Myles, believed to be Star No. 20242, was a detective with the Chicago Police Department. In that capacity, Myles was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Myles is a resident of Chicago, Illinois.

22. At all relevant times, James R. Riley, believed to be Star No. 20250, deceased, was a detective with the Chicago Police Department. In that capacity, Riley was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. At the time of his death, James R. Riley was a resident of this district. Upon information and belief, there was no estate opened following

his death. Defendant Special Representative To Be Determined has been named on behalf of James R. Riley, deceased.

23.     At all relevant times, Jerome C. Doroba, believed to be Star No. 20209, deceased, was a detective with the Chicago Police Department. In that capacity, Doroba was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of Jerome C. Doroba, deceased.

24.     At all relevant times, Defendant Thomas F. Kelly, believed to be Star No. 14082, was a police officer with the Chicago Police Department. In that capacity, Kelly was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Kelly is a resident of Chicago, Illinois.

25.     At all relevant times, Defendant James E. Ward, believed to be Star No. 15808, was a police officer with the Chicago Police Department. In that capacity, Ward was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Ward is a resident of Yorkville, Illinois.

26.     At all relevant times, Defendant William Toffenetti was an Assistant State's Attorney with the Cook County State's Attorney's Office. Serving in an investigative capacity, Toffenetti was involved with, participated in, and conspired with other defendants to secure

the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Toffenetti resides in Chicago, Illinois.

27. Cook County, Illinois, is a county within the state of Illinois that during the relevant time had an office commonly referred to as the "Cook County State's Attorney's Office." During the relevant time period, Cook County, Illinois employed Assistant State's Attorney, William Toffenetti.

28. Chicago Housing Authority is, upon information and belief, a municipal corporation created to, among other things, provide public housing. During the relevant time period, Defendant Officers Brandon and McKnight may have been employed by the Chicago Housing Authority.

## **FACTUAL BACKGROUND**

### **Vera Brown's Murder**

29. On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 S. Dearborn at the Dearborn Homes Public Housing Project. There were numerous eyewitnesses to the shooting.

### **All Eyewitness Report a Single Offender**

30. Eyewitness reports given to the Chicago Police Department all describe a single offender.

31. Officer Robert Hightower arrived on scene eight minutes after the shooting. He interviewed a "witness who refused to identify self," who reported that Vera Brown "went into 2910 S. Dearborn [and] was almost immediately chased out of same by a M/1 who shot

8

her 4 times." This first report refers to only one offender, who "was described as wearing a red top and dark pants."

32.     Defendant Detectives Winstead and Myles were also on scene. They were told by unidentified citizens that Brown was shot "by the Mickey Cobra street gang" and that there was a war between the Mickey Cobras and the Gangster Disciples within the Dearborn Homes. Only one witness on scene, "Tony Martin," was willing to speak with Detectives Winstead and Myles.[2] "Martin" reported that he heard a gunshot and saw Brown running and fall to the ground. "Martin" saw a black male run up to Brown and shoot her approximately five more times. He described the offender as slim, in his late teens, and wearing a red t-shirt and blue jeans. This is the second independent report of a single offender.

33.     After the shooting, officers canvassed the area and located two additional eyewitnesses. One eyewitness lived at 2910 S. Dearborn, Unit 308, and may have been identified as Michael Cooper. He told officers that he heard shots and saw one male, 17-18 years old, 5'8" and 150 lbs. with a medium build, with designs in his hair, and wearing a red shirt and blue jeans. This is the third independent report of a single offender.

34.     Officers also spoke with Howard Ivery, who lived at 2731 S. Dearborn. Ivery reported seeing a black male with a light complexion standing over Brown shooting her. This is the fourth independent report of a single offender.

35.     On June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received a message from an anonymous caller who reported that Brown was shot

---

[2] It was later determined that "Tony Martin" was a fictious name given by this eyewitness.

by a black male, age 17-21, with a light complexion.[3] This is the fifth independent report of a single offender.

36.     Defendant Detective Winstead was also told that the shooter was Anthony "Teeth" Taylor, who was described as a black male, age 16, with a thin build, light complexion, and a high-top fade. This is sixth independent report of a single offender.

37.     In line with information received from these six independent sources, initial official reports document only one offender. A Supplementary Report prepared by Defendant Detectives Winstead and Myles describes the "WANTED" offender as: "M/B late teens, approx. 5-10, med build and compl. wearing a red T-shirt and blue jean pants." Further, the Medical Examiner Case Report documents an interview with Defendant Detective Winstead, during which Winstead told the investigator that the shooter was an "unknown male offender."

38.     Notwithstanding numerous consistent eyewitness reports of there being only one shooter, as well as at least one report specifically identifying the shooter as Anthony "Teeth" Taylor, the Defendant CPD Officers and Detectives conspired to frame two individuals, Dion Warr and Jerry Herrington, for this murder.

**Melvin Jefferson**

39.     The Defendant CPD Officers and Detectives used Melvin Jefferson to fabricate evidence that would ultimately lead to Jerry Herrington's conviction.

---

[3] The anonymous caller also reported the shooter's nickname, but that information has been redacted in the file produced by the Chicago Police Department.

40. On June 23, 1991, Jefferson was in custody for auto theft and brought to Area One Violent Crimes to be interviewed by Defendant Detectives Winstead and Myles. According to Myles's report of the interview, Jefferson told them he was standing "by the fieldhouse" and saw Dion Warr and an unknown black male standing together near 2910 S. Dearborn. According to the report, Jefferson then saw Dion Warr point at Vera Brown when she exited the building, at which point the unknown black male pulled a gun from his waistband and shot Brown multiple times. Jefferson is reported as saying that the shooter ran through 2910 S. Dearborn while Dion Warr ran around it, at which point they met each other in the fire lane and ran south. According to the report, Jefferson said the unknown shooter was 5'10", 150 lbs., with a medium build and dark complexion, and was wearing a blue baseball hat and a white pinstripe New York Mets shirt and shorts set.

41. Defendant Detectives Winstead and Myles knew the information they reported as coming from Melvin Jefferson was false. Jefferson could not have seen the shooting from "by the fieldhouse," which was approximately 400 feet away from the site of the shooting with an obstructed line of sight. Also, Jefferson's purported description of two offenders was at odds with all other eyewitness reports, which consistently refer to one offender. Further, no one other than Jefferson mentioned anyone wearing conspicuous clothing, such as a New York Mets shirt and shorts set.

42. Defendant Detectives Winstead and Myles coerced and/or manipulated Melvin Jefferson into giving these false statements, which he would later repeat at trial against Jerry Herrington to secure his conviction.

**Dion Warr is Arrested and Charged with Brown's Murder**

43.     On July 2, 1991, based upon Jefferson's false statements, Dion Warr was arrested and charged with first-degree murder. The Complaint for Preliminary Examination against Dion Warr, signed under oath by Defendant Detective Myles, alleges that Warr "killed Vera BROWN without lawful justification by shooting her with a gun . . ."

**Jerry Herrington is Arrested, Battered, and Charged with Brown's Murder**

44.     More than eight weeks after Vera Brown was murdered, on August 22, 1991, at approximately 12:40 p.m., Jerry Herrington was arrested for disorderly conduct. The Vice Case Report states that the arresting officers, including Defendant Officers Brandon and McKnight, "received information from a female citizen over the phone at Unit 715 of 3 M/Bs selling drugs in the rear of 2940 S. State," and that the caller gave them "a physical and clothing description of the alleged offenders." Jerry Herrington, who was sitting on a bench when the arresting officers arrived, allegedly matched the description of one of the black males and was arrested.

45.     Jerry Herrington's arrest itself was unconstitutional because there was no probable cause to arrest him. The initial Vice Case Report indicates that Jerry Herrington was sitting on a bench outside of 2940 S. State Street when the arresting officers arrived. The report does not describe any unlawful activity on the part of Jerry Herrington and concludes that he matched the description of one of the three black males who were allegedly selling drugs and "was [ ] arrested and charged accordingly." However, Jerry was not arrested or charged with selling drugs or anything of the sort.

46. The Arrest Report from the same day says that Jerry Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." However, the Vice Report does not describe anything of the sort and, in terms of Jerry's conduct, says nothing other than that he was sitting on a bench.

47. The police reports are thus inconsistent as to why Jerry Herrington was arrested. The truth is that there was no probable cause to arrest him. The police fabricated the anonymous report that Jerry Herrington matched the description of someone selling drugs outside of 2940 S. State Street. They also fabricated the report that Jerry Herrington did not disperse upon being ordered to do so.

48. Jerry was only 16 years old at the time of his arrest, although he did not immediately tell that to the arresting officers.

49. Initially, Jerry was taken to a lockup near the Dearborn Homes. At or about that time, the Defendant CPD Officers and Detectives set in motion a plan to frame Jerry Herrington for Vera Brown's murder.

50. Jerry was taken from lockup to the 21st District, and then later to Area One Violent Crimes by Defendant Detectives Riley and Doroba at approximately 8:00 p.m. During the transport, Defendant Detectives Riley and Doroba told him that he was being arrested for murder — which was the first time, after more than seven hours in custody, that Jerry was informed of anything pertaining to the Brown murder.

51. At Area One, Jerry was placed in an interrogation room and handcuffed to a ring on the wall. Defendant Detectives Riley and Doroba then began interrogating Jerry about Vera Brown's murder. Jerry told them that he was only 16, that he had no idea what they were

talking about, and that he wanted to call his grandmother. Defendant Detectives Riley and Doroba refused Jerry's request for a phone call and did nothing to locate a parent, guardian, or youth officer.

52.     After Jerry told Defendant Detectives Riley and Doroba that he knew nothing about Vera Brown's murder they physically battered him by slapping him in face and hitting him in the stomach. At no time did Jerry confess to the murder, even falsely, notwithstanding the unconstitutional interrogation tactics and physical abuse by Defendant Detectives Riley and Doroba.

53.     On August 22, 1991 at approximately 11:30 p.m., Jerry Herrington was arrested for the murder of Vera Brown.

54.     At the time Jerry was arrested there was literally zero evidence that he was involved with Vera Brown's murder. No one had identified Jerry as the shooter, there was no physical evidence connecting Jerry to the murder, and Jerry did not make any statements other than to say he knew nothing about the murder. Therefore, the Defendants fabricated evidence to support the prosecution and ultimate conviction of Jerry Herrington.

**The Fabricated August 23, 1991 Police Report**

55.     On August 23, 1991 — *after* Jerry had already been wrongfully arrested and charged with Brown's murder — Defendant Officers Brandon and McKnight fabricated an official report about the initial call they purportedly received from the unidentified "female citizen" the day before. As discussed above, the Vice Case Report from August 22, 1991 states that Defendant Officers Brandon and McKnight "received information from a female citizen over the phone . . . of 3 M/Bs selling drugs in the rear of 2940 S. State." The Vice Case Report

14

says nothing about the Brown murder. Similarly, an August 22, 1991 handwritten Arrest Report by Defendant Officers Brandon and McKnight says that Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." It too says nothing about the Brown murder.

56. However, a Supplementary Report from the next day — again, *after* Jerry had been charged with Brown's murder — conveniently changes the narrative to say not only did this "unknown female citizen" report three black males selling drugs in the rear of 2940 S. State, she "***also stated*** that the M/B that was wearing a green short sleeved shirt, black jeans and green & white gym shoes was involved in the shooting death of a f/b named Brown, Vera" (emphasis added).

57. This August 23, 1991 Supplementary Report by Defendant Officers Brandon and McKnight was obviously fabricated because if this unknown female *actually* said that one of the black males was involved in the Brown murder during her call, that is something that would have been reported in the August 22, 1991 Vice Case Report and the August 22, 1991 Arrest Report. Instead, neither report says anything about the Brown murder and both reports treat Jerry Herrington's arrest as an afterthought.

58. In reference to Jerry Herrington, the August 22, 1991 Vice Case Report states only that "Arrestee HERRINGTON matching the description of one of the 3 M/Bs that *were selling drugs* was also arrested and charged accordingly" (emphasis added). Had he have been described as matching the description of the shooter in Vera Brown's murder, the Vice Case Report would have indicated that.

59.     In reference to Jerry Herrington, the August 22, 1991 Arrest Report states only that he was "arrested after refusing lawful order to disperse there." Had he been arrested because he matched the description of the shooter in Vera Brown's murder, the Arrest Report would have indicated that. It is also something that Jerry Herrington would have immediately been confronted with.

**The Fabricated Confession**

60.     After Jerry Herrington was arrested, Defendant Detectives Riley and Doroba, together with Assistant State's Attorney, William Toffenetti, conspired to fabricate a confession from him.

61.     As stated above, Jerry was physically beaten and held for nearly 12 hours without a parent, guardian, or youth officer and, yet, did not give in to Defendant Detectives Riley's and Doroba's unconstitutional efforts to extract a false confession. So, they made one up.

62.     On September 1, 1991 — *10 days* after Jerry was charged with Brown's murder — Defendant Detectives Riley and Doroba fabricated a Supplementary Report claiming that Jerry Herrington confessed. Detective Riley's notes of the purported confession were not processed until September 12, 1991, *21 days* after Jerry was charged with Brown's murder.

63.     Had Jerry Herrington actually confessed to a murder on August 22, 1991, Defendant Detectives Riley and Doroba would have reported it right away, not 10 and 21 days later. They would have also taken measures to record the confession (either video or audio) or have Jerry memorialize or affirm it in some way (such as by signing or initialing a written statement); they did none of the above.

16

64.     Instead, Defendant Detectives Riley and Doroba, together with Defendant Assistant State's Attorney William Toffenetti, conspired to fabricate a story that Jerry also confessed to Toffenetti, but when Toffenetti asked him to give a handwritten statement of his confession, Jerry suddenly invoked his right to counsel.

65.     This story is too convenient, however, because it is the only way to for the Defendants to explain how Jerry never acknowledged, affirmed, or signed his purported confession.

66.     Tellingly, a Memorandum dated August 22, 1991 from Defendant ASA Toffenetti to the supervisor of the Felony Review Unit, says not one word about this purported confession. Had Jerry confessed to Toffenetti that night, as Defendants claim, Toffenetti would have undoubtedly reflected that in his Memorandum.

**The Fabricated July 2, 1991 General Progress Report**

67.     Another piece of evidence that was fabricated – this time by Defendant Officers Kelly and Ward – is a handwritten General Progress Report ("GPR") purportedly dated July 2, 1991, which is 10 days after the Brown murder and more 7 weeks before Jerry Herrington was arrested. In this GPR, Defendant Officers Kelly and Ward purportedly write to Detectives Winstead and Myles that Vera Brown's godmother, Cathy Scott, said the shooter is "Jerry" from around 79th & Lomis, whose girlfriend lives at 2940 State, Unit 104, and who is about 17-18 years old, 5'10", has very dark skin, wears a hat at all times, and always wears light clothes.

68.     This handwritten GPR was not properly filled out, dated, signed, or submitted. It was obviously fabricated because there is no indication that at any point in time over next

seven weeks that any officer, detective, or investigator interviewed Cathy Scott, went to 79th & Loomis to find "Jerry," went to Unit #104 at 2940 State Street where "Jerry" purportedly stayed, or took any action whatsoever to locate the murderer notwithstanding that they purportedly had a name, location, and detailed physical description.

### The Fabricated In-Court Identification

69.     Finally, Defendant Detectives Winstead and Myles manipulated and/or coerced Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Jefferson did not know who Jerry Herrington was; had he, his name would have been included in the manipulated statement reported by Defendant Detectives Winstead and Myles.

70.     Because Jefferson did not know who Jerry Herrington was, proper police protocol and best practices required that he be asked to pick Jerry out of lineup or photo array, or even to confirm his identify at a show-up. That never happened. At no point during the 378 days between Brown's murder on June 22, 1991 and Jefferson's trial testimony on July 6, 1992, did Jefferson identify Jerry as the shooter.

71.     Melvin Jefferson had no idea who Jerry Herrington was or what he looked like until he saw him in court. The suggestion that Melvin Jefferson could identify a shooter unknown to him after 378 days, having only seen the shooter from a distance of more than 400 feet, is preposterous. When Jefferson identified Jerry at trial he did so only because the Defendants told him to. His identification of Jerry was false and fabricated.

### The Wrongful Conviction

72.     On July 8, 1992, Jerry Herrington was found guilty in a bench trial and convicted of the first-degree murder of Vera Brown.

73. The only evidence the prosecution used at trial against Jerry was the false, coerced and/or manipulated testimony from Melvin Jefferson and the false confession purportedly given by Jerry Herrington.

**Jerry Herrington is Innocent**

74. Jerry Herrington is innocent of having any involvement in Vera Brown's murder.

75. There has never been any legitimate evidence connecting Jerry Herrington to Vera Brown's murder.

76. Jerry Herrington was not present at the time of the shooting and knew nothing about it.

77. The statements, reports, and testimony concerning the purported observations of Melvin Jefferson are false and fabricated. Melvin Jefferson did not witness Vera Brown's shooting. He gave false and fabricated statements and testimony because he was manipulated and/or coerced into doing so by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles. The reports purporting to document observations by Melvin Jefferson were fabricated by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles.

78. Jerry Herrington never confessed to having any involvement with the Brown murder. Reports and testimony concerning his confession from Defendant Detectives Riley and Doroba and from Defendant ASA Toffenetti were fabricated and false.

79. Jerry Herrington was convicted of first-degree murder based exclusively on false and fabricated evidence.

80.     Several independent eyewitnesses have provided sworn statements that Anthony "Teeth" Taylor shot and killed Vera Brown on June 22, 1991. It was also reported to Detective Winstead shortly after the shooting that Anthony "Teeth" Taylor was the person who shot and killed Vera Brown.

### The Defendant Officers and Detective's *Brady* Violations

81.     In addition to fostering a false narrative used to convict Jerry Herrington as discussed above, the Defendant CPD Officers and Detectives committed more than 10 *Brady* violations. Defendants did not comply with their *Brady* obligations in failing to disclose the following exculpatory evidence:

> (a) that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

> (b) that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

> (c) that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

> (d) the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

> (e) that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

> (f) that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

> (g) that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip

identifying someone other than Jerry Herrington as being the shooter;

(h) that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

(i) that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder;

(j) that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

**Jerry Herrington is Exonerated**

82.     On March 4, 2025, Jerry Herrington was exonerated, his conviction was vacated, and the charges against him were dismissed.

**The Defendants' History of Unconstitutional Conduct**

83.     At all relevant times, the Defendant Officers and Detectives had a pattern and practice of using unconstitutional policing tactics in order to clear cases and secure the wrongful arrest, prosecution, and conviction of innocent people, just as they did with Jerry Herrington.

84.     **Defendant Officer Matthew Brandon**: It has been alleged that, on October 3, 1990, Defendant Officer Matthew Brandon, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized more than $25,000 found on the premises. Brandon was not subjected to any discipline or otherwise held

accountable for this allegedly unconstitutional conduct. Brandon's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington.

85. **Defendant Officer James McKnight:** It has been alleged that, on October 3, 1990, Defendant Officer James McKnight, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized and failed to inventory or return $8,000 found on the premises. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

86. It has been alleged that, on July 8, 1991, Defendant Officer James McKnight participated in an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

87. It has been alleged that, on August 7, 1991, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

88.    It has been alleged that, on June 1, 1993, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

89.    It has been alleged that, on January 22, 1996, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

90.    Defendant Officer James McKnight has been the subject of additional complaints, 28 in total, which puts him in the top 15% of all Chicago Police Officers in terms of total complaints.

91.    **Defendant Detective Edward Winstead:** It has been alleged that, on March 17, 1991, Defendant Detective Edward Winstead, together with other Chicago Police Department officers and detectives, entered an apartment without consent or a search warrant, and proceeded to conduct an unconstitutional search thereof. Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington.

23

92.     In 1994, Detective Winstead was named as a defendant in federal civil lawsuit, *Beamon v. Tock, et al.*, 94-CV-06551 (N.D. Ill), alleging that he coerced the false confession of the two plaintiffs. This case was settled by the defendants for an unknown amount. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged coercion tactics in *Beamon* are consistent with his coercion and/or manipulation of Melvin Jefferson's into giving a false statement implicating Jerry Herrington in the present matter.

93.     In 2003, Defendant Detective Winstead was named as a defendant in a federal civil lawsuit, *A.M. v. Cassidy, et al.*, 03-CV-0246 (N.D. Ill.), alleging that he falsely reported hearing A.M. tell his mother that he committed a murder, which was used against A.M. in a criminal prosecution ultimately leading to A.M.'s wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in *A.M.* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

94.     In 2003, the Illinois Supreme Court found that Detective Winstead failed to properly Mirandize an individual who was illiterate and cognitively challenged. *People v. Braggs*, 209 Ill.2d. 492 (2003). Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's unconstitutional conduct in *Braggs* is consistent with his unconstitutional conduct in the present matter.

24

95.     In 2015, Detective Winstead was named as a defendant in a federal civil lawsuit, *Johnson v. Lutzow, et al.*, 15-CV-07177 (N.D. Ill.), alleging that he held the plaintiff in custody without probable cause, interrogated him without giving him *Miranda* warnings, fabricated statements the defendants falsely claimed were made by the plaintiff, fabricated police reports falsely implicating the plaintiff, and falsely testified against the plaintiff, all leading to his wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in *Johnson* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

96.     In 2020, Detective Winstead was named as a defendant in two federal civil lawsuits, *Fulton v. Bartik, et al.*, 20-CV-3118 (N.D. Ill.) and *Mitchell v. Bartik, et al.*, 20-CV-3119 (N.D. Ill), alleging that he fabricated a report falsely attributing a statement to a witness implicating one of the plaintiffs in a murder and that he participated in a conspiracy to deprive the plaintiffs of their constitutional rights. The *Fulton/Mitchell* case resulted in a $120,000,000 verdict. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence and participation in a conspiracy in *Fulton/Mitchell* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington and participating in a conspiracy to deprive Jerry Herrington of his constitutional rights in the present matter.

97.     **Defendant Detective Delores Myles:**  In 1999, Detective Myles was named as a defendant in two civil lawsuits, one filed in state court and the other filed in federal court (*Mother v. Cassidy*, 99-CV-03259 (N.D. Ill.), involving the wrongful arrest and malicious prosecution of two young boys, ages 7 and 8, for the murder of an 11-year-old. Detective Myles was among several Chicago Police Department officers and detectives accused of coercing false confessions from the minor plaintiffs. Upon information and belief, this case settled for $6,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged coercion of a false confession in *Mother* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

98.     In 2011, Detective Myles was named as a defendant in a federal civil lawsuit, *Patterson v. Chicago, et al.*, 11-CV-7052 (N.D. Ill), alleging that she fabricated witness statements falsely implicating the plaintiff in a homicide. The case was settled for $4,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged fabrication of witness statements in *Patterson* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

99.     **Defendant Detective James R. Riley:**  It has been alleged that on December 14, 1991, Defendant Detective James R. Riley physically abused a suspect in custody and forced him to sign a confession. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional

conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

100.    It has been alleged that, on August 18, 1992, Defendant Detective James R. Riley wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, falsified reports that the individual had committed a crime he did not commit, and falsely testified to a grand jury. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his interrogation of Jerry Herrington and his fabrication of reports falsely stating that Jerry confessed when he did not.

101.    It has been alleged that, on July 11, 2001, Defendant Detective James R. Riley arrested an individual and took him to Area One, disregarded his request for a lawyer, and proceeded to physically and psychologically abuse the individual until he confessed. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his unconstitutional interrogation, physical abuse, and attempts to coerce a confession from Jerry Herrington in the present matter.

102.    It has been alleged that, on October 2, 2002, Defendant Detective James R. Riley arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Detective Riley was not even

investigated because he was retired at the time the allegations were made. Riley's allegedly unconstitutional actions on this date are consistent with his unconstitutional interrogation of Jerry Herrington in the present matter.

103.     In 2003, Detective Riley was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's unconstitutional conduct in *Pernell* is strikingly similar to his unconstitutional conduct here, where he interrogated Jerry Herrington while handcuffed to a wall without letting him call his grandmother or securing a parent, guardian, or youth officer, physically abused Jerry Herrington after he told him that he knew nothing of Vera Brown's murder, and then fabricated reports that Jerry confessed when he did not do so.

104.     **Defendant Detective Jerome Doroba:**  It has been alleged that on December 14, 1991, Defendant Detective Jerome Doroba physically abused a suspect in custody and forced him to sign a confession. Doroba was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Doroba's allegedly unconstitutional

conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

105. **Defendant Officer Thomas Kelly:** It has been alleged that, on October 2, 2002, Defendant Officer Thomas Kelly arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly was not even investigated because he was retired at the time the allegations were made. Kelly's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington in the present matter.

106. In 2003, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Pernell* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

107. In 2008, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Williams v. Chicago, et al.*, 08-CV-2936 (N.D. Ill), alleging that he conspired with other officers to cover up and justify the wrongful shooting of the plaintiff by another police officer. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Williams* in covering up and falsifying evidence is consistent with his conduct here in creating a false report to support the unconstitutional arrest, prosecution, and conviction of Jerry Herrington.

108. In 2014, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Moody v. Chicago, et al.*, 13-CV-8809 (N.D. Ill.), alleging that he conspired with other officers to deprive the plaintiff of his constitutional rights. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Moody* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

109. **Officer James Ward:** It has been alleged that, on August 18, 1992, Defendant Detective James E. Ward wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, and conducted a search of the individual's apartment without his consent or a search warrant. Ward was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Ward's allegedly unconstitutional actions described immediately above are consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

110.     Upon information and belief, the Defendant Officers and Detectives have engaged in additional unconstitutional conduct consistent with their respective actions here, which will be the subject of discovery.

## COUNT 1
### 42 U.S.C. § 1983
### Fabrication of Evidence Through Witness Coercion and Manipulation
### vs. Defendant Detectives Winstead and Myles

111.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

112.     As more fully described above, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

113.     Among other things, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another:

    (a) Manipulated and/or coerced Melvin Jefferson into identifying and describing a second offender;

    (b) Manipulated and/or coerced Melvin Jefferson into identifying Jerry Herrington as the shooter of Vera Brown at trial.

114.     Absent this unconstitutional conduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by Defendant Detectives Winstead and

Myles, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

115.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

116.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

117.    Through this misconduct, the Defendant Detectives Winstead and Myles directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

118.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

<u>**COUNT 2**</u>
**42 U.S.C. § 1983**
**Fabrication of Evidence Through False Reporting**
**vs. Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti**

119.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

120.     As more fully described above, Defendant Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

121.     Among other things, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified the August 23, 1991 police report claiming that they received a tip describing Jerry Herrington as being involved in Vera Brown's murder.

122.     Additionally, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified (inconsistent) reports that there was probable cause to arrest Jerry Herrington when there was not.

123.     Additionally, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another, falsified reports concerning Melvin Jefferson's purported statement.

124.     Additionally, Defendant Officers Kelly and Ward, acting individually, jointly, and in conspiracy with one another, falsified the July 2, 1991 General Progress Report claiming that they received information identifying "Jerry" as being involved in Vera Brown's murder.

125.     Additionally, Defendant Detectives Riley and Doroba, together with Defendant ASA Toffenetti, acting individually, jointly, and in conspiracy with one another, falsified reports that Jerry Herrington confessed to being involved in Vera Brown's murder when he gave no such confession.

33

126.     At the time of ASA Toffenetti's conduct as described herein, he was acting in a fact-finding and investigative capacity and, therefore, is not entitled absolute, prosecutorial, or any other type of immunity.

127.     Absent the misconduct described under this count, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by the Defendants, as described herein, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

128.     The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

129.     At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

130.     Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

131.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of

the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**COUNT 3**
**42 U.S.C. § 1983**
*Brady* **Violations**
**vs. Defendant CPD Officers and Detectives**

132.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

133.    As more fully described above, the Defendant CPD Officers and Detectives, individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Plaintiff Jerry Herrington of his constitutional rights to a fair trial and due process by withholding and suppressing exculpatory evidence from Jerry Herrington, his counsel, and the prosecution.

134.    As set forth above, the Defendant CPD Officers and Detectives withheld from Jerry Herrington and the prosecution exculpatory evidence including:

(a) that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

(b) that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

(c) that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

(d) the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

(e) that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

(f) that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

(g) that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip identifying someone other than Jerry Herrington as being the shooter;

(h) that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

(i) that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder;

(j) that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

135.    The aforementioned evidence is exculpatory as it tends to prove Jerry Herrington's innocence and was therefore required to be produced to Jerry Herrington and his counsel. None of this evidence was so produced.

136.    The misconduct described above was objectively unreasonable and was undertaken intentionally, with malice, willful indifference to Jerry Herrington's constitutional rights and in total disregard of the truth and Jerry Herrington's innocence.

137.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

138.     Through this misconduct, the Defendant CPD Officers and Detectives directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

139.     Without the misconduct of withholding exculpatory evidence, Jerry Herrington would not have been prosecuted or convicted.

140.     By withholding exculpatory evidence from Jerry Herrington, the Defendant CPD Officers and Detectives deprived Jerry Herrington of his constitutional right to a fair trial in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

141.     Absent this misconduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct of the Defendant CPD Officers and Detectives, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

142.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

## COUNT 4
### 42 U.S.C. § 1983
### Unlawful Arrest and Detention
### vs. Defendant CPD Officers and Detectives

143.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

144.     As more fully described above, the Defendant CPD Officers and Detectives, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, accused Jerry Herrington of criminal activity and exerted influence to initiate, continue, and perpetuate his unlawful detention without any probable cause, by using evidence which they knew to be false, and in spite of the fact that they knew Jerry Herrington was innocent, in violation of his constitutional rights.

145.     In so doing, the Defendant CPD Officers and Detectives caused Jerry Herrington to be unlawfully detained and deprived of his liberty without probable cause.

146.     Absent this misconduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by the Defendant CPD Officers and Detectives, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was detained and imprisoned without probable cause.

147.     The Defendant CPD Officers' and Detectives' misconduct was objectively unreasonable, and they acted intentionally and with willful indifference to Jerry Herrington's constitutional rights and innocence.

148.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

149.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

## COUNT 5
### 42 U.S.C. § 1983
### Conspiracy to Violate Constitutional Rights
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

150.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

151.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators not yet known to Jerry Herrington, reached an agreement among themselves to coerce, induce, and fabricate false evidence in the form of witness statements, a false confession, identifications, and testimony for the purpose of framing Jerry Herrington for a crime he did not commit.

152.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators, not yet known to Jerry Herrington, reached an agreement among themselves to deprive Jerry Herrington of material exculpatory evidence and information to

which he was lawfully entitled, and to conceal their misconduct from Jerry Herrington, all in violation of Jerry Herrington's constitutional rights as described above.

153.   The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, acting in concert with unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

154.   In furtherance of that conspiracy, each of the co-conspirators committed overt acts and was a willful participant in joint activity.

155.   The misconduct described above was objectively unreasonable and was undertaken intentionally and with willful indifference to Jerry Herrington's constitutional rights.

156.   At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

157.   Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

158.   The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

## COUNT 6
## 42 U.S.C. §§ 1983, 1986
## Failure to Intervene
## vs. Defendant CPD Officers and Detectives

159.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

160.     In the manner described above, the Defendant CPD Officers and Detectives, together with other CPD officers, stood by without intervening to prevent violations of Jerry Herrington's constitutional rights, even though they had the ability and opportunity to do so.

161.     The conduct of the Defendant CPD Officers and Detectives was objectively unreasonable.

162.     The Defendant CPD Officers and Detectives acted intentionally and with willful indifference to Jerry Herrington's constitutional rights.

163.     The Defendant CPD Officers and Detectives, knowing of the conspiracy to frame Jerry Herrington, and having the power to prevent or aid in preventing the commission of the acts in furtherance of that conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

164.     At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

165.     Through this misconduct, the Defendant CPD Officers and Detectives directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

166. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**COUNT 7**
**42 U.S.C. §§ 1983**
**Malicious Prosecution**
**vs. Defendant CPD Officers and Detectives and ASA Toffenetti**

167. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

168. The Defendants herein initiated criminal proceedings against Jerry for the murder of Vera Brown, for which Jerry was convicted.

169. At no point in time, was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

170. As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

171. On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

172.    The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

173.    The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

174.    The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime he was accused of.

175.    This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

176.    The Defendant CPD Officers and Detectives and ASA Toffenetti acted under the color of state law to deprive Jerry Herrington of his rights under the U.S. Constitution. Accordingly, the Defendant CPD Officers and Detectives and ASA Toffenetti violated 42 U.S.C. § 1983.

177.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of

the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

### COUNT 8
**42 U.S.C. § 1983**
*Monell* **Liability**
**vs. City of Chicago**

178.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 177 as if fully set forth herein.

179.    The City of Chicago and CPD, through their official policies and widespread practices and customs, have been responsible for dozens of criminal cases where innocent men and women have been wrongfully convicted of crimes they did not commit.

180.    Since the 1980s, there have been more than 100 cases where CPD police officers and detectives fabricated false evidence and/or suppressed exculpatory evidence in order to secure convictions of innocent men and women.

181.    These cases include many where CPD police officers and detectives employed the same unconstitutional tactics that they used against Jerry Herrington here, including fabricating reports and other evidence, manipulating and coercing witnesses in order to influence testimony and identifications, concealing, burying, and/or failing to disclose exculpatory evidence, and making up confessions that did not take place. Such tactics have been — and were, in this case — employed without probable cause and without regard for the person's guilt or innocence.

182. At all material times, the Defendant CPD Officers and Detectives were clothed with the authority of state law and acting under color and authority of state law as agents and employees of CPD.

183. The Defendant CPD Officers and Detectives committed and caused the commission of the above alleged constitutional violations pursuant to one or more *de facto* policies, practices, and/or customs of the City of Chicago.

184. At the time of Jerry Herrington's arrest, the City of Chicago had *de facto* policies or practices that included: (a) procuring false witness testimony; (b) concealing exculpatory evidence; (c) manipulating witnesses to obtain false identifications from witnesses; (d) manipulating witnesses to influence their testimony; (e) making up false confessions; (f) arresting individuals without probable cause; (g) falsifying reports and fabricating evidence to support their unconstitutional conduct; and (h) using these tactics to secure the arrest, prosecution, and conviction of a person without regard to their actual guilt or innocence.

185. At all relevant times, there was a widespread custom and practice of coercing, manipulating, threatening, and pressuring witnesses to make false witness statements, and concealing exculpatory evidence.

186. At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely manufactured evidence against innocent persons by coercing, manipulating, and threatening witnesses to make false statements implicating innocent persons knowing full well that those statements were false.

187. As a matter of widespread custom and practice, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, fabricated narratives that were

fed to vulnerable witnesses who then adopted those fabricated narratives as their own for the purpose of wrongly convicting an innocent person.

188.     At all relevant times, and as set forth above, members of the CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically suppressed exculpatory and/or impeaching material in violation of *Brady*.

189.     Consistent with the *de facto* policies and practices described in the preceding paragraphs, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, fabricated evidence and procured false statements from witnesses knowing full well their statements were false and would lead to the wrongful conviction of Jerry Herrington.

190.     At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically suppressed exculpatory and/or impeaching material by intentionally concealing reports, memos, and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these files were also withheld from the State's Attorney's Office and from criminal defendants and were not maintained as part of the official file.

191.     Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, concealed exculpatory evidence from Jerry Herrington.

192.  At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely manipulated, tricked, lied to, and misled witnesses for the purpose of influencing their testimony to conform to narratives fabricated by the officers themselves. As a matter of widespread practice and custom, these tactics were also used to induce false identifications of suspects.

193.  Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, manipulated, tricked, and improperly coerced false statements and identifications given by Melvin Jefferson.

194.  At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically reported and testified to purported confessions from criminal suspects that did not in actuality occur.

195.  Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, reported and testified that Jerry Herrington confessed to the Vera Brown murder when he did not do so.

196.  At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically detained and arrested individuals, particularly at the Dearborn Homes, without probable cause.

197.  Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the

Defendant CPD Officers and Detectives, detained and arrested Jerry Herrington without probable cause.

198.     At all relevant times, the City of Chicago and CPD failed to seriously discipline any CPD officers for any misconduct relating to the investigation of and/or involvement with charging innocent persons with serious crimes.

199.     Prior to and during 1991 (the year in which Jerry Herrington was falsely charged with the crimes at issue here), the City of Chicago operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct. At that time, the Chicago Police Office of Professional Standards almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. Moreover, the Chicago police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

200.     As a matter of both policy and practice, municipal policymakers and department supervisors condoned and facilitated a code of silence within CPD. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the same type of misconduct at issue here.

201.     As a result of the City of Chicago's established practices and *de facto* policies of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the CPD, CPD officers, including but not limited to the Defendant CPD Officers and Detectives, came to believe that they can violate the civil rights

of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of CPD acted with impunity when they violated the constitutional and civil rights of citizens.

202.     The City of Chicago and CPD failed in 1991, and the years before and after, to properly train, supervise, discipline, monitor, or otherwise control police officers engaged in police misconduct, particularly officers such as Officers Brandon, McKnight, Kelly, and Ward, and Detectives Winstead, Myles, Riley, and Doroba, here, who were repeatedly accused of police misconduct, making false arrests, manipulating witnesses into giving false statements and identifications, destroying or withholding evidence, engaging in physical abuse during custodial interrogations, fabricating police reports, providing false testimony, and otherwise engaging in malicious prosecutions and wrongful convictions.

203.     The need to properly train, supervise, discipline, monitor, or otherwise control police officers engaged in this type of conduct was and remains obvious.

204.     By failing to properly train, supervise, discipline, monitor, or otherwise control police officers such as the Defendant CPD Officers and Detectives, including specifically, Officers Brandon, McKnight, Kelly, and Ward, and Detectives Winstead, Myles, Riley, and Doroba, the City of Chicago and CPD effectively condoned, ratified, and sanctioned the kind of misconduct that the Defendant CPD Officers and Detectives committed against Jerry Herrington in this case.

205. The City of Chicago and CPD routinely failed to provide adequate training to CPD officers and detectives with deliberate indifference to the constitutional rights of others. That includes, but is not limited to, failures to provide adequate training:

      (a) to conduct constitutionally valid identification procedures;
      (b) to disclose exculpatory evidence;
      (c) to report only accurate and truthful information;
      (d) to refrain from physical and psychological, and coercive and manipulative conduct, in relation to suspects and witnesses;
      (e) to not fabricate evidence or testimony;
      (f) as to the risk of wrongful convictions and the steps that can be taken to minimize that risk;
      (g) that the truth should drive investigations, and not the desire to close cases; and
      (h) that misconduct by CPD officers and detectives and others in the criminal justice system, including State's Attorneys, must be reported.

206. The failures to train as described herein existed at the time of the events giving rise to this lawsuit and resulted in the alleged constitutional violations committed by Defendants that caused Jerry Herrington to be wrongfully charged, prosecuted, and convicted of a crime he did not commit.

207. The City of Chicago and CPD failed to act to remedy the patterns of abuse described above, despite actual knowledge of the pattern of misconduct, thereby perpetuating the unlawful practices and creating a *de facto* policy condoning the misconduct at issue here.

208. These *de facto* policies and practices described above were consciously approved by the City of Chicago and CPD policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

209.    The actions of the Defendant CPD Officers and Detectives were done pursuant to one or more interrelated *de facto* policies, practices, and/or customs of the City of Chicago and CPD which were ratified by policymakers for the City of Chicago and CPD with final policymaking authority. These *de facto* policies and practices include:

(a) conducting physically and psychologically, illegal, or improperly coercive interrogations of witnesses to obtain false statements and wrongful convictions;

(b) manufacturing and fabricating false witness and suspect statements and manipulating and lying to witnesses to influence unreliable and inaccurate testimony;

(c) covering up the true nature of witness interviews and/or interrogations;

(d) suppressing exculpatory evidence;

(e) filing false police reports and giving false statements and testimony about such false reports to support false charges and wrongful convictions;

(f) fabricating evidence to support false charges and wrongful convictions; and

(g) lying about police misconduct during investigations of the same and to cover up the true nature of police misconduct.

210.    The policies and practices described above were maintained and implemented by the City of Chicago and CPD with deliberate indifference to Jerry Herrington's constitutional rights.

211. The aforementioned *de facto* policies, practices, and/or customs of the City of Chicago and CPD were the moving force behind the Defendant CPD Officers and Detectives depriving Jerry Herrington of his constitutional rights.

212. These patterns and practices were so widespread, permanent, and well-settled as to constitute a custom with the force of law.

213. These patterns and practices permeate a critical mass of the institutional body of the City of Chicago and its Police Department.

214. It was obvious that these patterns and practices would lead to constitutional violations.

215. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

## COUNT 9
### State Law Malicious Prosecution
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

216. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

217. The Defendants herein initiated criminal proceedings against Jerry Herrington for the murder of Vera Brown, for which Jerry Herrington was convicted.

218.    At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

219.    As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

220.    On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

221.    The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

222.    The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

223.    The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime he was accused of.

224.    This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

225. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**COUNT 10**
**Intentional Infliction of Emotional Distress**
**vs. Defendant CPD Officers and Detectives and ASA Toffenetti**

226. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

227. The acts and conduct of the Defendant CPD Officers and Detectives and ASA Toffenetti as set forth above were extreme and outrageous. The Defendant CPD Officers and Detectives and ASA Toffenetti intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Jerry Herrington.

228. The actions and conduct by the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused severe emotional distress to Jerry Herrington and thereby constituted intentional infliction of emotional distress.

229. The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

230. As a direct and proximate result of the wrongful acts committed by the Defendant CPD Officers and Detectives and ASA Toffenetti, Jerry Herrington suffered injuries, including but not limited to emotional distress.

## COUNT 11
### Willful and Wanton Conduct
### vs. Defendant CPD Officers and Detectives

231.     Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

232.     At all relevant times, the Defendant CPD Officers and Detectives had a duty to refrain from willful and wanton conduct.

233.     Notwithstanding, the Defendant CPD Officers and Detectives acted willfully and wantonly through a course of conduct, as more fully described above, that showed an utter indifference to, or conscious disregard of Jerry Herrington's rights.

234.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

## COUNT 12
### Civil Conspiracy
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

235.     Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

236.     As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti, acting in concert with one another and other co-conspirators, conspired to accomplish an unlawful purpose by unlawful means.

237. In furtherance of the conspiracy, the Defendant CPD Officers and Detectives and ASA Toffenetti committed overt acts and were otherwise willing participants in joint activity.

238. The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

239. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**COUNT 13**
*Respondeat Superior*
**vs. City of Chicago, Cook County, and Chicago Housing Authority**

240. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

241. When they committed the acts alleged in this Complaint, the Defendant CPD Officers and Detectives were members and agents of the Chicago Police Department, an agency of the City of Chicago, acting at all relevant times within the scope of their employment and under color of law.

242. Defendant City of Chicago is liable as a principal for all torts committed by its agents.

243. Alternatively, Defendants Officers Brandon and McKnight were employed by the Chicago Housing Authority and, at all relevant times, acting within the course and scope of their employment.

244. Defendant Chicago Housing Authority is liable as a principal for all torts committed by its agents.

245. When he committed the acts alleged in this Complaint, Defendant ASA Toffenetti was an employee and agent of Cook County and the Cook County State's Attorney's Office, acting at all relevant times within the scope of his employment.

246. Defendant Cook County is liable as principal for all torts committed by its agents.

247. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

## COUNT 14
### Indemnification
### vs. City of Chicago, Cook County, and Chicago Housing Authority

248. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

249. Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based upon the employees' misconduct committed within the scope of their employment activities.

250. The Defendant CPD Officers and Detectives were employees of the Chicago Police Department, an agency of the City of Chicago, who acted within the scope of their employment in committing the misconduct described herein.

251. Defendant City of Chicago is responsible to pay any judgment entered against the Defendant CPD Officers and Detectives.

252. Alternatively, Defendants Officers Brandon and McKnight were employed by the Chicago Housing Authority and, at all relevant times, acting within the course and scope of their employment.

253. Defendant Chicago Housing Authority is liable as a principal for all torts committed by its agents.

254. Defendant ASA Toffenetti was an employee of the Cook County State's Attorney's Office, an office within Cook County, Illinois, who acted within the scope of his employment in committing the misconduct described herein.

255. Defendant Cook County is responsible to pay any judgment entered against ASA Toffenetti.

WHEREFORE, Plaintiff Jerry Herrington prays this Court enter judgment in his favor against Defendants the CITY OF CHICAGO, a municipal corporation, MATTHEW BRANDON, JAMES McNIGHT, EDWARD WINSTEAD, DELORES MYLES, Special Representative To Be Determined for JAMES R. RILEY, Special Representative To Be

Determined for JEROME C. DOROBA, THOMAS F. KELLY, JAMES E. WARD, WILLIAM TOFFENETTI, COOK COUNTY, and CHICAGO HOUSING AUTHORITY, awarding compensatory damages, costs and attorneys' fees against all Defendants, and punitive damages against each of the individual defendants in their individual capacities, and for such further and additional relief as this Court may deem appropriate and just.

**JURY DEMAND**

Plaintiff demands a trial by jury in this action on each and every one of his claims.

Dated: July 28, 2025                    Respectfully Submitted,

                                        /s/ Brian Eldridge
                                        One of the Attorneys for Plaintiff

Brian Eldridge
Carter Grant
John Marrese
Paige Smith
**HART MCLAUGHLIN & ELDRIDGE, LLC**
One South Dearborn Street, Suite 1400
Chicago, Illinois 60603
Tel: (312) 955-0545
beldridge@hmelegal.com
cgrant@hmelegal.com
jmarrese@hmelegal.com
psmith@hmelegal.com

Antonio M. Romanucci
Joshua Levin
Patrick Driscoll
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
jlevin@rblaw.net
pdriscoll@rblaw.net