### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JERRY HERRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 25 C 8795 |
| | ) | |
| v. | ) | Judge |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | |
| Corporation, MATTHEW BRANDON; | ) | |
| JAMES McKNIGHT; EDWARD WINSTEAD, | ) | |
| DELORES MYLES; Special Representative to be | ) | |
| Determined for JAMES R. RILEY; Special | ) | |
| Representative to be Determined for | ) | |
| JEROME C. DOROBA; THOMAS KELLY; | ) | |
| JAMES E. WARD; WILLIAM TOFFENETTI; | ) | |
| COOK COUNTY; and CHICAGO HOUSING | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT COOK COUNTY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Now comes Defendant, COOK COUNTY, by its attorney EILEEN O'NEILL BURKE,

State's Attorney of Cook County, through her Assistant State's Attorney, Kelli Huntsman, and in

answer to Plaintiff's Complaint states as follows:

**INTRODUCTION**

1.      Jerry Herrington spent nearly 29 years in prison for a crime he did not commit.

**ANSWER:      Defendant County is without knowledge or information sufficient to form a
belief as to the truth of the allegations in Paragraph 1.**

2.      Jerry was 16 years old when he was arrested for "disorderly conduct." Little did he know

then that he would be framed for a murder he had nothing to do with and that he would not see the

light of freedom again until he was released from prison, at the age of 45, in June of 2020.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2.**

3.      On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 South Dearborn Street in the Dearborn Homes Public Housing Project.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.**

4.      At the time, the Dearborn Homes were inundated with drugs, gangs, and crime.

Shootings at the Dearborn Homes were not uncommon and, because of the heavy gang presence and fear of deadly retaliation, witnesses to crime were generally unwilling to name names. Chicago Police Department officers and detectives, who had a frequent presence at the Dearborn Homes, knew of this impediment. Therefore, to close cases at the Dearborn Homes, particularly murder cases, CPD officers and detectives had a longstanding pattern and practice of fabricating evidence and manipulating witnesses into falsely identifying "offenders," who would later be baselessly charged, maliciously prosecuted, and wrongfully convicted. That is exactly what happened to Jerry Herrington.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4.**

5.      Jerry Herrington was not present at the at the time of Vera Brown's murder and knew nothing about it. He was never identified by a single person as being involved in the murder at any point prior to his criminal trial.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.**

2

6.     The two pieces of evidence used against Jerry to secure his conviction were both fabricated. First, the Defendant CPD Officers and Detectives coerced and manipulated Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Melvin Jefferson was not present at the site of the shooting and, even based upon his own reported location, he could not have possibly seen the shooting. The Defendant CPD Officers and Detectives told Melvin Jefferson what to say and told him to identify Jerry Herrington as the shooter at trial, knowing that such information was false. Melvin Jefferson has since stated that he was coerced by police into making these false statements.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.**

7.     Second, the Defendant CPD Officers and Detectives, along with Defendant Assistant State's Attorney ("ASA") William Toffenetti, fabricated evidence and falsified reports claiming that Jerry Herrington confessed to the Brown murder. Jerry was subjected to physical abuse and unconstitutional interrogation tactics after his arrest, but he never confessed to having any involvement with the Brown murder. Unsurprisingly, therefore, there is no audio or video recording of his alleged confession, nor did Jerry sign anything memorializing or affirming his purported confession. Defendant Detectives Riley and Doroba and ASA Toffenetti made up this "confession" out of whole cloth, knowing it was false.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 7.**

8.     Beyond these false and fabricated pieces of evidence — Jefferson's statement and

Jerry's confession — there was no evidence to charge Jerry, let alone convict him of murder.

**ANSWER:** **Defendant County is without knowledge or information to form a belief as to the truth of the allegations in Paragraph 8.**

9. Falsifying and fabricating evidence to support convictions was, after all, part of Defendants' modus operandi. As described below, the Chicago Police Department, as an institution, condoned, enabled, and rewarded its detectives and officers to manipulate witnesses, falsify and fabricate evidence, physically abuse suspects, make up confessions, commit *Brady* violations, and engage in other unconstitutional conduct as a means to an end. That end, here, was the baseless arrest, malicious prosecution, and wrongful conviction of Jerry Herrington.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.**

10. Without the malicious and unconstitutional conduct of the Defendants, Jerry Herrington would never have been arrested, prosecuted, or convicted; he would never have been ripped away from his family and friends and forced to suffer through the unimaginable horror of spending almost 30 years in prison as an innocent man; he would have never have had his life, liberty, and tremendous potential taken from him; and he would never have the scars, the pain, and the trauma that resulted from him being wrongfully accused, incarcerated, and convicted of murder.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.**

11. At the same time, however, Jerry always maintained his innocence and always

4

maintained his hope. Now, after surviving a level of torment that no innocent person deserves and persevering through circumstances that would have caused many to lose hope and give up, Jerry Herrington comes before this Court seeking justice and accountability.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11. Defendant County denies any liability to Plaintiff and denies that Plaintiff is entitled to any relief.**

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under 42 U.S.C. § 1983.

**ANSWER:** **Defendant County admits that this Court has jurisdiction and that Plaintiff brings this action pursuant to 42 U.S.C. § 1983.**

13.     The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** **Defendant County admits that Plaintiff brings his claims under the cited jurisdiction but denies the remaining allegations in Paragraph 13.**

14.     The Court has personal jurisdiction over Defendants because at least some reside in the State of Illinois and because their conduct described herein occurred exclusively in Illinois.

**ANSWER:** **Defendant County admits that certain actions took place in Illinois, but Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14.**

15.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because Plaintiff's injuries and damages occurred in the Northern District of Illinois, there are Defendants who reside and conduct business in the Northern District of Illinois, and all events giving rise to this action occurred in the Northern District of Illinois.

**ANSWER:     Defendant County admits that venue is proper in the Northern District of Illinois.**

<u>**PARTIES**</u>

16.     Plaintiff Jerry Herrington was arrested without probable cause, maliciously prosecuted, and wrongfully convicted of the murder of Vera Brown. He now resides in Chicago, Illinois.

**ANSWER:     Defendant County admits that Plaintiff was convicted but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16.**

17.     Defendant City of Chicago, is a municipal corporation, located in Chicago, Illinois. During the relevant time period, the City of Chicago and its Police Department employed the Defendant Officers and Detectives.

**ANSWER:     Defendant County admits the City of Chicago is a municipal corporation located in Illinois. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 17.**

18.     At all relevant times, Defendant Matthew Brandon, believed to be Star No. 17698, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, Brandon was

6

involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Brandon is a resident of Chicago, Illinois.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.**

19. At all relevant times, Defendant James McKnight, believed to be Star No. 13206, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, McKnight was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.**

20. At all relevant times, Defendant Edward Winstead, believed to be Star No. 20119, was a detective with the Chicago Police Department. In that capacity, Winstead was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Winstead is a resident of Chicago, Illinois.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.**

21. At all relevant times, Defendant Delores Myles, believed to be Star No. 20242, was a detective with the Chicago Police Department. In that capacity, Myles was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry

Herrington. Upon information and belief, Myles is a resident of Chicago, Illinois.

**ANSWER: Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.**

22. At all relevant times, James R. Riley, believed to be Star No. 20250, deceased, was a detective with the Chicago Police Department. In that capacity, Riley was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. At the time of his death, James R. Riley was a resident of this district. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of James R. Riley, deceased.

**ANSWER: Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.**

23. At all relevant times, Jerome C. Doroba, believed to be Star No. 20209, deceased, was a detective with the Chicago Police Department. In that capacity, Doroba was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of Jerome C. Doroba, deceased.

**ANSWER: Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.**

24. At all relevant times, Defendant Thomas F. Kelly, believed to be Star No. 14082, was a police officer with the Chicago Police Department. In that capacity, Kelly was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution,

and conviction of Jerry Herrington. Upon information and belief, Kelly is a resident of Chicago, Illinois.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.**

25. At all relevant times, Defendant James E. Ward, believed to be Star No. 15808, was a police officer with the Chicago Police Department. In that capacity, Ward was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Ward is a resident of Yorkville, Illinois.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.**

26. At all relevant times, Defendant William Toffenetti was an Assistant State's Attorney with the Cook County State's Attorney's Office. Serving in an investigative capacity, Toffenetti was involved with, participated in, and conspired with other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Toffenetti resides in Chicago, Illinois.

**ANSWER:** **Defendant County admits that Defendant William Toffenetti was an Assistant State's Attorney. Defendant County denies the remainder of the allegations in Paragraph 26.**

27. Cook County, Illinois, is a county within the state of Illinois that during the relevant time had an office commonly referred to as the "Cook County State's Attorney's Office." During the relevant time period, Cook County, Illinois employed Assistant State's Attorney, William Toffenetti.

**ANSWER:** **Defendant County admits that Cook County is a governmental entity within the State of Illinois and that it is a necessary party to this lawsuit. Defendant County denies the**

remaining allegations in Paragraph 27.

28. Chicago Housing Authority is, upon information and belief, a municipal corporation created to, among other things, provide public housing. During the relevant time period, Defendant Officers Brandon and McKnight may have been employed by the Chicago Housing Authority.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.**

## FACTUAL BACKGROUND

### Vera Brown's Murder

29. On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 S. Dearborn at the Dearborn Homes Public Housing Project. There were numerous eyewitnesses to the shooting.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29.**

### All Eyewitness Report a Single Offender

30. Eyewitness reports given to the Chicago Police Department all describe a single offender.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30.**

31. Officer Robert Hightower arrived on scene eight minutes after the shooting. He interviewed a "witness who refused to identify self," who reported that Vera Brown "went into 2910 S. Dearborn [and] was almost immediately chased out of same by a M/1 who shot her 4 times." This first

report refers to only one offender, who "was described as wearing a red top and dark pants."

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.**

32.     Defendant Detectives Winstead and Myles were also on scene. They were told by unidentified citizens that Brown was shot "by the Mickey Cobra street gang" and that there was a war between the Mickey Cobras and the Gangster Disciples within the Dearborn Homes. Only one witness on scene, "Tony Martin," was willing to speak with Detectives Winstead and Myles.[1] "Martin" reported that he heard a gunshot and saw Brown running and fall to the ground. "Martin" saw a black male run up to Brown and shoot her approximately five more times. He described the offender as slim, in his late teens, and wearing a red t-shirt and blue jeans. This is the second independent report of a single offender.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.**

33.     After the shooting, officers canvassed the area and located two additional eyewitnesses. One eyewitness lived at 2910 S. Dearborn, Unit 308, and may have been identified as Michael Cooper. He told officers that he heard shots and saw one male, 17-18 years old, 5'8" and 150 lbs. with a medium build, with designs in his hair, and wearing a red shirt and blue jeans. This is the third independent report of a single offender.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.**

34.     Officers also spoke with Howard Ivery, who lived at 2731 S. Dearborn. Ivery reported

---

[1] It was later determined that "Tony Martin" was a fictious name given by this eyewitness

seeing a black male with a light complexion standing over Brown shooting her. This is the fourth independent report of a single offender.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.**

35.     On June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received a message from an anonymous caller who reported that Brown was shot  by a black male, age 17-21, with a light complexion.[2]  This is the fifth independent report of a single offender.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.**

36.     Defendant Detective Winstead was also told that the shooter was Anthony "Teeth" Taylor, who was described as a black male, age 16, with a thin build, light complexion, and a high-top fade. This is sixth independent report of a single offender.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.**

37.     In line with information received from these six independent sources, initial official reports document only one offender. A Supplementary Report prepared by Defendant Detectives Winstead and Myles describes the "WANTED" offender as: "M/B late teens, approx. 5-10, med build and compl. wearing a red T-shirt and blue jean pants." Further, the Medical Examiner Case Report documents an interview with Defendant Detective Winstead, during which Winstead told the investigator that the shooter

---

[2] The anonymous caller also reported the shooter's nickname, but that information has been redacted in the file produced by the Chicago Police Department.

was an "unknown male offender."

    **ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.**

38.    Notwithstanding numerous consistent eyewitness reports of there being only one shooter, as well as at least one report specifically identifying the shooter as Anthony "Teeth" Taylor, the Defendant CPD Officers and Detectives conspired to frame two individuals, Dion Warr and Jerry Herrington, for this murder.

    **ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.**

### Melvin Jefferson

39.    The Defendant CPD Officers and Detectives used Melvin Jefferson to fabricate evidence that would ultimately lead to Jerry Herrington's conviction.

    **ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.**

40.    On June 23, 1991, Jefferson was in custody for auto theft and brought to Area One Violent Crimes to be interviewed by Defendant Detectives Winstead and Myles. According to Myles's report of the interview, Jefferson told them he was standing "by the fieldhouse" and saw Dion Warr and an unknown black male standing together near 2910 S. Dearborn. According to the report, Jefferson then saw Dion Warr point at Vera Brown when she exited the building, at which point the unknown black male pulled a gun from his waistband and shot Brown multiple times. Jefferson is reported as saying that the shooter ran through 2910 S. Dearborn while Dion Warr ran around it, at which point they met each

other in the fire lane and ran south. According to the report, Jefferson said the unknown shooter was 5'10", 150 lbs., with a medium build and dark complexion, and was wearing a blue baseball hat and a white pinstripe New York Mets shirt and shorts set.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40.**

41.  Defendant Detectives Winstead and Myles knew the information they reported as coming from Melvin Jefferson was false. Jefferson could not have seen the shooting from "by the fieldhouse," which was approximately 400 feet away from the site of the shooting with an obstructed line of sight. Also, Jefferson's purported description of two offenders was at odds with all other eyewitness reports, which consistently refer to one offender. Further, no one other than Jefferson mentioned anyone wearing conspicuous clothing, such as a New York Mets shirt and shorts set.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.**

42.  Defendant Detectives Winstead and Myles coerced and/or manipulated Melvin Jefferson into giving these false statements, which he would later repeat at trial against Jerry Herrington to secure his conviction.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.**

### Dion Warr is Arrested and Charged with Brown's Murder

43.  On July 2, 1991, based upon Jefferson's false statements, Dion Warr was arrested and charged with first-degree murder. The Complaint for Preliminary Examination against Dion Warr, signed

under oath by Defendant Detective Myles, alleges that Warr "killed Vera BROWN without lawful justification by shooting her with a gun . . ."

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.**

### Jerry Herrington is Arrested, Battered, and Charged with Brown's Murder

44.     More than eight weeks after Vera Brown was murdered, on August 22, 1991, at approximately 12:40 p.m., Jerry Herrington was arrested for disorderly conduct. The Vice Case Report states that the arresting officers, including Defendant Officers Brandon and McKnight, "received information from a female citizen over the phone at Unit 715 of 3 M/Bs selling drugs in the rear of 2940 S. State," and that the caller gave them "a physical and clothing description of the alleged offenders." Jerry Herrington, who was sitting on a bench when the arresting officers arrived, allegedly matched the description of one of the black males and was arrested.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44.**

45.     Jerry Herrington's arrest itself was unconstitutional because there was no probable cause to arrest him. The initial Vice Case Report indicates that Jerry Herrington was sitting on a bench outside of 2940 S. State Street when the arresting officers arrived. The report does not describe any unlawful activity on the part of Jerry Herrington and concludes that he matched the description of one of the three black males who were allegedly selling drugs and "was [ ] arrested and charged accordingly." However, Jerry was not arrested or charged with selling drugs or anything of the sort.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.**

46.     The Arrest Report from the same day says that Jerry Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." However, the Vice Report does not describe anything of the sort and, in terms of Jerry's conduct, says nothing other than that he was sitting on a bench.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.**

47.     The police reports are thus inconsistent as to why Jerry Herrington was arrested. The truth is that there was no probable cause to arrest him. The police fabricated the anonymous report that Jerry Herrington matched the description of someone selling drugs outside of 2940 S. State Street. They also fabricated the report that Jerry Herrington did not disperse upon being ordered to do so.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.**

48.     Jerry was only 16 years old at the time of his arrest, although he did not immediately tell that to the arresting officers.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.**

49.     Initially, Jerry was taken to a lockup near the Dearborn Homes. At or about that time, the Defendant CPD Officers and Detectives set in motion a plan to frame Jerry Herrington for Vera Brown's murder.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a**

**belief as to the truth of the allegations in Paragraph 49.**

50.     Jerry was taken from lockup to the 21st District, and then later to Area One Violent Crimes by Defendant Detectives Riley and Doroba at approximately 8:00 p.m. During the transport, Defendant Detectives Riley and Doroba told him that he was being arrested for murder — which was the first time, after more than seven hours in custody, that Jerry was informed of anything pertaining to the Brown murder.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.**

51.     At Area One, Jerry was placed in an interrogation room and handcuffed to a ring on the wall. Defendant Detectives Riley and Doroba then began interrogating Jerry about Vera Brown's murder. Jerry told them that he was only 16, that he had no idea what they were talking about, and that he wanted to call his grandmother. Defendant Detectives Riley and Doroba refused Jerry's request for a phone call and did nothing to locate a parent, guardian, or youth officer.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.**

52.     After Jerry told Defendant Detectives Riley and Doroba that he knew nothing about Vera Brown's murder they physically battered him by slapping him in face and hitting him in the stomach. At no time did Jerry confess to the murder, even falsely, notwithstanding the unconstitutional interrogation tactics and physical abuse by Defendant Detectives Riley and Doroba.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.**

53.     On August 22, 1991 at approximately 11:30 p.m., Jerry Herrington was arrested for the murder of Vera Brown.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.**

54.     At the time Jerry was arrested there was literally zero evidence that he was involved with Vera Brown's murder. No one had identified Jerry as the shooter, there was no physical evidence connecting Jerry to the murder, and Jerry did not make any statements other than to say he knew nothing about the murder. Therefore, the Defendants fabricated evidence to support the prosecution and ultimate conviction of Jerry Herrington.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.**

**The Fabricated August 23, 1991 Police Report**

55.     On August 23, 1991 — *after* Jerry had already been wrongfully arrested and charged with Brown's murder — Defendant Officers Brandon and McKnight fabricated an official report about the initial call they purportedly received from the unidentified "female citizen" the day before. As discussed above, the Vice Case Report from August 22, 1991 states that Defendant Officers Brandon and McKnight "received information from a female citizen over the phone . . . of 3 M/Bs selling drugs in the rear of 2940 S. State." The Vice Case Report says nothing about the Brown murder. Similarly, an August 22, 1991 handwritten Arrest Report by Defendant Officers Brandon and McKnight says that Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." It too says nothing about the Brown murder.

18

**ANSWER:** Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56.     However, a Supplementary Report from the next day — again, *after* Jerry had been charged with Brown's murder — conveniently changes the narrative to say not only did this "unknown female citizen" report three black males selling drugs in the rear of 2940 S. State, she "***also stated*** that the M/B that was wearing a green short sleeved shirt, black jeans and green & white gym shoes was involved in the shooting death of a f/b named Brown, Vera" (emphasis added).

**ANSWER:** Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56.

57.     This August 23, 1991 Supplementary Report by Defendant Officers Brandon and McKnight was obviously fabricated because if this unknown female *actually* said that one of the black males was involved in the Brown murder during her call, that is something that would have been reported in the August 22, 1991 Vice Case Report and the August 22, 1991 Arrest Report. Instead, neither report says anything about the Brown murder and both reports treat Jerry Herrington's arrest as an afterthought.

**ANSWER:** Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

58.     In reference to Jerry Herrington, the August 22, 1991 Vice Case Report states only that "Arrestee HERRINGTON matching the description of one of the 3 M/Bs that *were selling drugs* was also arrested and charged accordingly" (emphasis added). Had he have been described as matching the description of the shooter in Vera Brown's murder, the Vice Case Report would have indicated that.

**ANSWER:** Defendant County is without knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 58.

59.     In reference to Jerry Herrington, the August 22, 1991 Arrest Report states only that he was "arrested after refusing lawful order to disperse there." Had he been arrested because he matched the description of the shooter in Vera Brown's murder, the Arrest Report would have indicated that. It is also something that Jerry Herrington would have immediately been confronted with.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.**

### **The Fabricated Confession**

60.     After Jerry Herrington was arrested, Defendant Detectives Riley and Doroba, together with Assistant State's Attorney, William Toffenetti, conspired to fabricate a confession from him.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the  allegations in Paragraph 60.**

61.     As stated above, Jerry was physically beaten and held for nearly 12 hours without a parent, guardian, or youth officer and, yet, did not give in to Defendant Detectives Riley's and Doroba's unconstitutional efforts to extract a false confession. So, they made one up.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61.**

62.     On September 1, 1991 — *10 days* after Jerry was charged with Brown's murder — Defendant Detectives Riley and Doroba fabricated a Supplementary Report claiming that Jerry Herrington confessed. Detective Riley's notes of the purported confession were not processed until September 12,

1991, *21 days* after Jerry was charged with Brown's murder.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62.**

63.     Had Jerry Herrington actually confessed to a murder on August 22, 1991, Defendant Detectives Riley and Doroba would have reported it right away, not 10 and 21 days later. They would have also taken measures to record the confession (either video or audio) or have Jerry memorialize or affirm it in some way (such as by signing or initialing a written statement); they did none of the above.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63.**

64.     Instead, Defendant Detectives Riley and Doroba, together with Defendant Assistant State's Attorney William Toffenetti, conspired to fabricate a story that Jerry also confessed to Toffenetti, but when Toffenetti asked him to give a handwritten statement of his confession, Jerry suddenly invoked his right to counsel.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64.**

65.     This story is too convenient, however, because it is the only way to for the Defendants to explain how Jerry never acknowledged, affirmed, or signed his purported confession.

**ANSWER:** **. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65.**

66.     Tellingly, a Memorandum dated August 22, 1991 from Defendant ASA Toffenetti to the

supervisor of the Felony Review Unit, says not one word about this purported confession. Had Jerry confessed to Toffenetti that night, as Defendants claim, Toffenetti would have undoubtedly reflected that in his Memorandum.

**ANSWER: Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66.**

### The Fabricated July 2, 1991 General Progress Report

67. Another piece of evidence that was fabricated – this time by Defendant Officers Kelly and Ward – is a handwritten General Progress Report ("GPR") purportedly dated July 2, 1991, which is 10 days after the Brown murder and more 7 weeks before Jerry Herrington was arrested. In this GPR, Defendant Officers Kelly and Ward purportedly write to Detectives Winstead and Myles that Vera Brown's godmother, Cathy Scott, said the shooter is "Jerry" from around 79th & Lomis, whose girlfriend lives at 2940 State, Unit 104, and who is about 17-18 years old, 5'10", has very dark skin, wears a hat at all times, and always wears light clothes.

**ANSWER: Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.**

68. This handwritten GPR was not properly filled out, dated, signed, or submitted. It was obviously fabricated because there is no indication that at any point in time over next seven weeks that any officer, detective, or investigator interviewed Cathy Scott, went to 79th & Loomis to find "Jerry," went to Unit #104 at 2940 State Street where "Jerry" purportedly stayed, or took any action whatsoever to locate the murderer notwithstanding that they purportedly had a name, location, and detailed physical description.

**ANSWER: Defendant County is without knowledge or information sufficient to form a**

belief as to the truth of the allegations in Paragraph 68.

### The Fabricated In-Court Identification

69. Finally, Defendant Detectives Winstead and Myles manipulated and/or coerced Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Jefferson did not know who Jerry Herrington was; had he, his name would have been included in the manipulated statement reported by Defendant Detectives Winstead and Myles.

**ANSWER:** Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.

70. Because Jefferson did not know who Jerry Herrington was, proper police protocol and best practices required that he be asked to pick Jerry out of lineup or photo array, or even to confirm his identify at a show-up. That never happened. At no point during the 378 days between Brown's murder on June 22, 1991 and Jefferson's trial testimony on July 6, 1992, did Jefferson identify Jerry as the shooter.

**ANSWER:** Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71. Melvin Jefferson had no idea who Jerry Herrington was or what he looked like until he saw him in court. The suggestion that Melvin Jefferson could identify a shooter unknown to him after 378 days, having only seen the shooter from a distance of more than 400 feet, is preposterous. When Jefferson identified Jerry at trial he did so only because the Defendants told him to. His identification of Jerry was false and fabricated.

**ANSWER:** Defendant County is without knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 71.

### The Wrongful Conviction

72.     On July 8, 1992, Jerry Herrington was found guilty in a bench trial and convicted of the first-degree murder of Vera Brown.

**ANSWER:   Defendant County admits Plaintiff was convicted.**

73.     The only evidence the prosecution used at trial against Jerry was the false, coerced and/or manipulated testimony from Melvin Jefferson and the false confession purportedly given by Jerry Herrington.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73.**

### Jerry Herrington is Innocent

74.     Jerry Herrington is innocent of having any involvement in Vera Brown's murder.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74.**

75.     There has never been any legitimate evidence connecting Jerry Herrington to Vera Brown's murder.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.**

76.     Jerry Herrington was not present at the time of the shooting and knew nothing about it.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a**

belief as to the truth of the allegations in Paragraph 76.

77.     The statements, reports, and testimony concerning the purported observations of Melvin Jefferson are false and fabricated. Melvin Jefferson did not witness Vera Brown's shooting. He gave false and fabricated statements and testimony because he was manipulated and/or coerced into doing so by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles. The reports purporting to document observations by Melvin Jefferson were fabricated by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.**

78.     Jerry Herrington never confessed to having any involvement with the Brown murder. Reports and testimony concerning his confession from Defendant Detectives Riley and Doroba and from Defendant ASA Toffenetti were fabricated and false.

**ANSWER:     Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78.**

79.     Jerry Herrington was convicted of first-degree murder based exclusively on false and fabricated evidence.

**ANSWER:     Defendant County admits Plaintiff was convicted. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79.**

80.     Several independent eyewitnesses have provided sworn statements that Anthony "Teeth" Taylor shot and killed Vera Brown on June 22, 1991. It was also reported to Detective Winstead shortly after the shooting that Anthony "Teeth" Taylor was the person who shot and killed Vera Brown.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80.**

### The Defendant Officers and Detective's *Brady* Violations

81. In addition to fostering a false narrative used to convict Jerry Herrington as discussed above, the Defendant CPD Officers and Detectives committed more than 10 *Brady* violations. Defendants did not comply with their *Brady* obligations in failing to disclose the following exculpatory evidence:

a.  that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

b.  that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

c.  that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

d. the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

e. that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

f. that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

g. that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip identifying someone other than Jerry

26

Herrington as being the shooter;

h. that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

i. that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder;

j. that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

**ANSWER:** **Defendant County makes no answer as this Paragraph and its subparagraphs are not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 81(a)-(j).**

### Jerry Herrington is Exonerated

82. On March 4, 2025, Jerry Herrington was exonerated, his conviction was vacated, and the charges against him were dismissed.

**ANSWER:** **Defendant County admits that the case against Plaintiff was dismissed.**

### The Defendants' History of Unconstitutional Conduct

83. At all relevant times, the Defendant Officers and Detectives had a pattern and practice of using unconstitutional policing tactics in order to clear cases and secure the wrongful arrest, prosecution, and conviction of innocent people, just as they did with Jerry Herrington.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83.**

84.   **Defendant Officer Matthew Brandon**: It has been alleged that, on October 3, 1990, Defendant Officer Matthew Brandon, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized more than

$25,000 found on the premises. Brandon was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Brandon's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84.**

85.   **Defendant Officer James McKnight:** It has been alleged that, on October 3, 1990, Defendant Officer James McKnight, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized and failed to inventory or return $8,000 found on the premises. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85.**

86.     It has been alleged that, on July 8, 1991, Defendant Officer James McKnight participated in an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86.**

87.     It has been alleged that, on August 7, 1991, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.**

88.     It has been alleged that, on June 1, 1993, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed**

**towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88.**

89.     It has been alleged that, on January 22, 1996, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89.**

90.     Defendant Officer James McKnight has been the subject of additional complaints, 28 in total, which puts him in the top 15% of all Chicago Police Officers in terms of total complaints.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90.**

91.     **Defendant Detective Edward Winstead:** It has been alleged that, on March 17, 1991, Defendant Detective Edward Winstead, together with other Chicago Police Department officers and detectives, entered an apartment without consent or a search warrant, and proceeded to conduct an unconstitutional search thereof. Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry

Herrington.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91.**

92.    In 1994, Detective Winstead was named as a defendant in federal civil lawsuit, *Beamon v. Tock, et al.*, 94-CV-06551 (N.D. Ill), alleging that he coerced the false confession of the two plaintiffs. This case was settled by the defendants for an unknown amount. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged coercion tactics in *Beamon* are consistent with his coercion and/or manipulation of Melvin Jefferson's into giving a false statement implicating Jerry Herrington in the present matter.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92.**

93.    In 2003, Defendant Detective Winstead was named as a defendant in a federal civil lawsuit, *A.M. v. Cassidy, et al.*, 03-CV-0246 (N.D. Ill.), alleging that he falsely reported hearing A.M. tell his mother that he committed a murder, which was used against A.M. in a criminal prosecution ultimately leading to A.M.'s wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in *A.M.* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed**

31

**towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93.**

94.     In 2003, the Illinois Supreme Court found that Detective Winstead failed to properly Mirandize an individual who was illiterate and cognitively challenged. *People v. Braggs*, 209 Ill.2d. 492 (2003). Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's unconstitutional conduct in *Braggs* is consistent with his unconstitutional conduct in the present matter.

     **ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94.**

95.     In 2015, Detective Winstead was named as a defendant in a federal civil lawsuit, *Johnson v. Lutzow*, *et al.*, 15-CV-07177 (N.D. Ill.), alleging that he held the plaintiff in custody without probable cause, interrogated him without giving him *Miranda* warnings, fabricated statements the defendants falsely claimed were made by the plaintiff, fabricated police reports falsely implicating the plaintiff, and falsely testified against the plaintiff, all leading to his wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in *Johnson* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

     **ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95.**

96.    In 2020, Detective Winstead was named as a defendant in two federal civil lawsuits, *Fulton v. Bartik, et al.*, 20-CV-3118 (N.D. Ill.) and *Mitchell v. Bartik, et al.*, 20-CV-3119 (N.D. Ill), alleging that he fabricated a report falsely attributing a statement to a witness implicating one of the plaintiffs in a murder and that he participated in a conspiracy to deprive the plaintiffs of their constitutional rights. The *Fulton/Mitchell* case resulted in a $120,000,000 verdict. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence and participation in a conspiracy in *Fulton/Mitchell* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington and participating in a conspiracy to deprive Jerry Herrington of his constitutional rights in the present matter.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96.**

97.    **Defendant Detective Delores Myles:** In 1999, Detective Myles was named as a defendant in two civil lawsuits, one filed in state court and the other filed in federal court (*Mother v. Cassidy*, 99-CV-03259 (N.D. Ill.), involving the wrongful arrest and malicious prosecution of two young boys, ages 7 and 8, for the murder of an 11-year-old. Detective Myles was among several Chicago Police Department officers and detectives accused of coercing false confessions from the minor plaintiffs. Upon information and belief, this case settled for $6,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged coercion of a false confession in *Mother* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed**

**towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97.**

98.    In 2011, Detective Myles was named as a defendant in a federal civil lawsuit, *Patterson v. Chicago, et al.*, 11-CV-7052 (N.D. Ill), alleging that she fabricated witness statements falsely implicating the plaintiff in a homicide. The case was settled for $4,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged fabrication of witness statements in *Patterson* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98.**

99.    **Defendant Detective James R. Riley:**  It has been alleged that on December 14, 1991, Defendant Detective James R. Riley physically abused a suspect in custody and forced him to sign a confession. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99.**

100.  It has been alleged that, on August 18, 1992, Defendant Detective James R. Riley wrongfully held an individual in custody after determining that he was innocent, refused the individual

his right to make a telephone call, falsified reports that the individual had committed a crime he did not commit, and falsely testified to a grand jury. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his interrogation of Jerry Herrington and his fabrication of reports falsely stating that Jerry confessed when he did not.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100.**


101.   It has been alleged that, on July 11, 2001, Defendant Detective James R. Riley arrested an individual and took him to Area One, disregarded his request for a lawyer, and proceeded to physically and psychologically abuse the individual until he confessed. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his unconstitutional interrogation, physical abuse, and attempts to coerce a confession from Jerry Herrington in the present matter.

**ANSWER:   Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101.**


102.   It has been alleged that, on October 2, 2002, Defendant Detective James R. Riley arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Detective Riley was not even investigated because he was retired at the time the allegations were

made. Riley's allegedly unconstitutional actions on this date are consistent with his unconstitutional interrogation of Jerry Herrington in the present matter.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102.**

103.    In 2003, Detective Riley was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's unconstitutional conduct in *Pernell* is strikingly similar to his unconstitutional conduct here, where he interrogated Jerry Herrington while handcuffed to a wall without letting him call his grandmother or securing a parent, guardian, or youth officer, physically abused Jerry Herrington after he told him that he knew nothing of Vera Brown's murder, and then fabricated reports that Jerry confessed when he did not do so.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103.**

104.    **Defendant Detective Jerome Doroba:** It has been alleged that on December 14, 1991,

Defendant Detective Jerome Doroba physically abused a suspect in custody and forced him to sign a confession. Doroba was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Doroba's allegedly unconstitutional

conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104.**

105. **Defendant Officer Thomas Kelly:** It has been alleged that, on October 2, 2002, Defendant Officer Thomas Kelly arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly was not even investigated because he was retired at the time the allegations were made. Kelly's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington in the present matter.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105.**

106. In 2003, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff

notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Pernell* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106.**

107. In 2008, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Williams v. Chicago, et al.*, 08-CV-2936 (N.D. Ill), alleging that he conspired with other officers to cover up and justify the wrongful shooting of the plaintiff by another police officer. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in W*illiams* in covering up and falsifying evidence is consistent with his conduct here in creating a false report to support the unconstitutional arrest, prosecution, and conviction of Jerry Herrington.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107.**

108. In 2014, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Moody v. Chicago, et al.*, 13-CV-8809 (N.D. Ill.), alleging that he conspired with other officers to deprive the plaintiff of his constitutional rights. Upon information and belief, Kelly was not subjected to any

discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Moody* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108.**

109. **Officer James Ward:** It has been alleged that, on August 18, 1992, Defendant Detective James E. Ward wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, and conducted a search of the individual's apartment without his consent or a search warrant. Ward was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Ward's allegedly unconstitutional actions described immediately above are consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109.**

110. Upon information and belief, the Defendant Officers and Detectives have engaged in additional unconstitutional conduct consistent with their respective actions here, which will be the subject of discovery.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations in Paragraph 110.**

## COUNT 1
### 42 U.S.C. § 1983
**Fabrication of Evidence Through Witness Coercion and Manipulation vs.
Defendant Detectives Winstead and Myles**

111.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answer to each previous paragraph of the complaint as if fully set forth herein.**

112.    As more fully described above, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112.**

113.    Among other things, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another:

       a.    Manipulated and/or coerced Melvin Jefferson into identifying and describing a second offender;

       b.    Manipulated and/or coerced Melvin Jefferson into identifying Jerry Herrington as the shooter of Vera Brown at trial.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or**

information sufficient to form a belief as to the truth of the allegations in Paragraph 113 and its subparagraphs.

114.    Absent this unconstitutional conduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by Defendant Detectives Winstead and Myles, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114.**

115.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115.**

116.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116.**

117.    Through this misconduct, the Defendant Detectives Winstead and Myles directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117.**

118.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118.**

### COUNT 2
### 42 U.S.C. § 1983
### Fabrication of Evidence Through False Reporting
### vs. Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti

119.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

42

120.     As more fully described above, Defendant Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

**ANSWER:    Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 120.**

121.     Among other things, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified the August 23, 1991 police report claiming that they received a tip describing Jerry Herrington as being involved in Vera Brown's murder.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121.**

122.     Additionally, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified (inconsistent) reports that there was probable cause to arrest Jerry Herrington when there was not.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122.**

123.     Additionally, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another, falsified reports concerning Melvin Jefferson's purported statement.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123.**

124. Additionally, Defendant Officers Kelly and Ward, acting individually, jointly, and in conspiracy with one another, falsified the July 2, 1991 General Progress Report claiming that they received information identifying "Jerry" as being involved in Vera Brown's murder.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124.**

125. Additionally, Defendant Detectives Riley and Doroba, together with Defendant ASA Toffenetti, acting individually, jointly, and in conspiracy with one another, falsified reports that Jerry Herrington confessed to being involved in Vera Brown's murder when he gave no such confession.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 125.**

126. At the time of ASA Toffenetti's conduct as described herein, he was acting in a fact-finding and investigative capacity and, therefore, is not entitled absolute, prosecutorial, or any other type of immunity.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 126.**

127. Absent the misconduct described under this count, Jerry Herrington would not have been

arrested, indicted, prosecuted, or convicted this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by the Defendants, as described herein, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 127.**

128. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 128.**

129. At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129.**

130. Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful

imprisonment.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 130.**

131. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 131.**

**COUNT 3**
**42 U.S.C. § 1983**
***Brady* Violations**
**vs. Defendant CPD Officers and Detectives**

132. Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:** **Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

133. As more fully described above, the Defendant CPD Officers and Detectives,

individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Plaintiff Jerry Herrington of his constitutional rights to a fair trial and due process by withholding and suppressing exculpatory evidence from Jerry Herrington, his counsel, and the prosecution.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133.**

134.     As set forth above, the Defendant CPD Officers and Detectives withheld from Jerry Herrington and the prosecution exculpatory evidence including:

   a.   that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

   b.   that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

   c.   that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

   d.   the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

   e.   that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

   f.   that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

   g.   that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip identifying someone other than Jerry Herrington as being the shooter;

       h.   that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

       i.   that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder;

       j.   that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

**ANSWER:**    **Defendant County makes no answer as this paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134 and its subparagraphs.**

135.    The aforementioned evidence is exculpatory as it tends to prove Jerry Herrington's innocence and was therefore required to be produced to Jerry Herrington and his counsel. None of this evidence was so produced.

**ANSWER:**    **Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135.**

136.    The misconduct described above was objectively unreasonable and was undertaken intentionally, with malice, willful indifference to Jerry Herrington's constitutional rights and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER:**    **Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136.**

137.     At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137.**

138.     Through this misconduct, the Defendant CPD Officers and Detectives directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138.**

139.     Without the misconduct of withholding exculpatory evidence, Jerry Herrington would not have been prosecuted or convicted.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139.**

140.     By withholding exculpatory evidence from Jerry Herrington, the Defendant CPD Officers and Detectives deprived Jerry Herrington of his constitutional right to a fair trial in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed**

toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140.

141.     Absent this misconduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct of the Defendant CPD Officers and Detectives, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141.**

142.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142.**

## COUNT 4
### 42 U.S.C. § 1983

**Unlawful Arrest and Detention**
**vs. Defendant CPD Officers and Detectives**

143.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

144.    As more fully described above, the Defendant CPD Officers and Detectives, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, accused Jerry Herrington of criminal activity and exerted influence to initiate, continue, and perpetuate his unlawful detention without any probable cause, by using evidence which they knew to be false, and in spite of the fact that they knew Jerry Herrington was innocent, in violation of his constitutional rights.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144.**

145.    In so doing, the Defendant CPD Officers and Detectives caused Jerry Herrington to be unlawfully detained and deprived of his liberty without probable cause.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145.**

146.    Absent this misconduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the

misconduct by the Defendant CPD Officers and Detectives, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was detained and imprisoned without probable cause.

**ANSWER:      Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146.**

147.    The Defendant CPD Officers' and Detectives' misconduct was objectively unreasonable, and they acted intentionally and with willful indifference to Jerry Herrington's constitutional rights and innocence.

**ANSWER:      Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147.**

148.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:      Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148.**

149.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation;

degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed toward it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149.**

## COUNT 5
### 42 U.S.C. § 1983
### Conspiracy to Violate Constitutional Rights
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

150.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

151.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators not yet known to Jerry Herrington, reached an agreement among themselves to coerce, induce, and fabricate false evidence in the form of witness statements, a false confession, identifications, and testimony for the purpose of framing Jerry Herrington for a crime he did not commit.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 151.**

152.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators, not yet known to Jerry Herrington, reached an agreement among themselves to deprive Jerry

Herrington of material exculpatory evidence and information to which he was lawfully entitled, and to conceal their misconduct from Jerry Herrington, all in violation of Jerry Herrington's constitutional rights as described above.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 152.**

153. The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, acting in concert with unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 153.**

154. In furtherance of that conspiracy, each of the co-conspirators committed overt acts and was a willful participant in joint activity.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154.**

155. The misconduct described above was objectively unreasonable and was undertaken intentionally and with willful indifference to Jerry Herrington's constitutional rights.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 155.**

156.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 156.**

157.    Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 157.**

158.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 158.**

**COUNT 6**
**42 U.S.C. §§ 1983, 1986**
**Failure to Intervene**
**vs. Defendant CPD Officers and Detectives**

159.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

160.    In the manner described above, the Defendant CPD Officers and Detectives, together with other CPD officers, stood by without intervening to prevent violations of Jerry Herrington's constitutional rights, even though they had the ability and opportunity to do so.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160.**

161.    The conduct of the Defendant CPD Officers and Detectives was objectively unreasonable.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161.**

162.    The Defendant CPD Officers and Detectives acted intentionally and with willful indifference to Jerry Herrington's constitutional rights.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162.**

56

163.    The Defendant CPD Officers and Detectives, knowing of the conspiracy to frame Jerry Herrington, and having the power to prevent or aid in preventing the commission of the acts in furtherance of that conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163.**

164.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164.**

165.    Through this misconduct, the Defendant CPD Officers and Detectives directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165.**

166.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation;

degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166.**

**COUNT 7**
**42 U.S.C. §§ 1983**
**Malicious Prosecution**
**vs. Defendant CPD Officers and Detectives and ASA Toffenetti**

167.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:** **Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

168.    The Defendants herein initiated criminal proceedings against Jerry for the murder of Vera Brown, for which Jerry was convicted.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 168.**

169.    At no point in time, was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 169.**

170.    As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 170.**

171.    On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

**ANSWER:    Defendant County admits that the case against Plaintiff was dismissed. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 171.**

172.    The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 172.**

173.    The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 173.**

174. The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime he was accused of.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 174.**

175. This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 175.**

176. The Defendant CPD Officers and Detectives and ASA Toffenetti acted under the color of state law to deprive Jerry Herrington of his rights under the U.S. Constitution. Accordingly, the Defendant CPD Officers and Detectives and ASA Toffenetti violated 42

U.S.C. § 1983.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 176.**

177.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 177.**

## COUNT 8
### 42 U.S.C. § 1983
### *Monell* Liability vs.
### City of Chicago

178.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 177 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

179.     The City of Chicago and CPD, through their official policies and widespread practices and customs, have been responsible for dozens of criminal cases where innocent men and women have been wrongfully convicted of crimes they did not commit.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179.**

180.     Since the 1980s, there have been more than 100 cases where CPD police officers and detectives fabricated false evidence and/or suppressed exculpatory evidence in order to secure convictions of innocent men and women.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180.**

181.     These cases include many where CPD police officers and detectives employed the same unconstitutional tactics that they used against Jerry Herrington here, including fabricating reports and other evidence, manipulating and coercing witnesses in order to influence testimony and identifications, concealing, burying, and/or failing to disclose exculpatory evidence, and making up confessions that did not take place. Such tactics have been — and were, in this case — employed without probable cause and without regard for the person's guilt or innocence.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181.**

182.     At all material times, the Defendant CPD Officers and Detectives were clothed with the authority of state law and acting under color and authority of state law as agents and employees of CPD.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182.**

183.     The Defendant CPD Officers and Detectives committed and caused the commission of the above alleged constitutional violations pursuant to one or more *de facto* policies, practices, and/or customs of the City of Chicago.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183.**

184.     At the time of Jerry Herrington's arrest, the City of Chicago had *de facto* policies or practices that included: (a) procuring false witness testimony; (b) concealing exculpatory evidence; (c) manipulating witnesses to obtain false identifications from witnesses; (d) manipulating witnesses to influence their testimony; (e) making up false confessions; (f) arresting individuals without probable cause; (g) falsifying reports and fabricating evidence to support their unconstitutional conduct; and (h) using these tactics to secure the arrest, prosecution, and conviction of a person without regard to their actual guilt or innocence.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184.**

185.     At all relevant times, there was a widespread custom and practice of coercing, manipulating, threatening, and pressuring witnesses to make false witness statements, and concealing exculpatory evidence.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or**

information sufficient to form a belief as to the truth of the allegations in Paragraph 185.

186.    At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely manufactured evidence against innocent persons by coercing, manipulating, and threatening witnesses to make false statements implicating innocent persons knowing full well that those statements were false.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186.**

187.    As a matter of widespread custom and practice, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, fabricated narratives that were fed to vulnerable witnesses who then adopted those fabricated narratives as their own for the purpose of wrongly convicting an innocent person.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187.**

188.    At all relevant times, and as set forth above, members of the CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically suppressed exculpatory and/or impeaching material in violation of *Brady*.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188.**

189.     Consistent with the *de facto* policies and practices described in the preceding paragraphs, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, fabricated evidence and procured false statements from witnesses knowing full well their statements were false and would lead to the wrongful conviction of Jerry Herrington.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189.**

190.     At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically suppressed exculpatory and/or impeaching material by intentionally concealing reports, memos, and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these files were also withheld from the State's Attorney's Office and from criminal defendants and were not maintained as part of the official file.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190.**

191.     Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, concealed exculpatory evidence from Jerry Herrington.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191.**

192.     At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely manipulated, tricked, lied to, and misled witnesses for the purpose of influencing their testimony to conform to narratives fabricated by the officers themselves. As a matter of widespread practice and custom, these tactics were also used to induce false identifications of suspects.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192.**

193.     Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, manipulated, tricked, and improperly coerced false statements and identifications given by Melvin Jefferson.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193.**

194.     At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically reported and testified to purported confessions from criminal suspects that did not in actuality occur.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194.**

195. Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, reported and testified that Jerry Herrington confessed to the Vera Brown murder when he did not do so.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 195.**

196. At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically detained and arrested individuals, particularly at the Dearborn Homes, without probable cause.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196.**

197. Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, detained and arrested Jerry Herrington without probable cause.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not**

**directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197.**

198.     At all relevant times, the City of Chicago and CPD failed to seriously discipline any CPD officers for any misconduct relating to the investigation of and/or involvement with charging innocent persons with serious crimes.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198.**

199.     Prior to and during 1991 (the year in which Jerry Herrington was falsely charged with the crimes at issue here), the City of Chicago operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct. At that time, the Chicago Police Office of Professional Standards almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. Moreover, the Chicago police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 199.**

200.     As a matter of both policy and practice, municipal policymakers and department supervisors condoned and facilitated a code of silence within CPD. In accordance with this code,

officers refused to report and otherwise lied about misconduct committed by their colleagues, including the same type of misconduct at issue here.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 200.**

201.     As a result of the City of Chicago's established practices and *de facto* policies of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the CPD, CPD officers, including but not limited to the Defendant CPD Officers and Detectives, came to believe that they can violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of CPD acted with impunity when they violated the constitutional and civil rights of citizens.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201.**

202.     The City of Chicago and CPD failed in 1991, and the years before and after, to properly train, supervise, discipline, monitor, or otherwise control police officers engaged in police misconduct, particularly officers such as Officers Brandon, McKnight, Kelly, and Ward, and Detectives Winstead, Myles, Riley, and Doroba, here, who were repeatedly accused of police misconduct, making false arrests, manipulating witnesses into giving false statements and

identifications, destroying or withholding evidence, engaging in physical abuse during custodial interrogations, fabricating police reports, providing false testimony, and otherwise engaging in malicious prosecutions and wrongful convictions.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202.**

203. The need to properly train, supervise, discipline, monitor, or otherwise control police officers engaged in this type of conduct was and remains obvious.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203.**

204. By failing to properly train, supervise, discipline, monitor, or otherwise control police officers such as the Defendant CPD Officers and Detectives, including specifically, Officers Brandon, McKnight, Kelly, and Ward, and Detectives Winstead, Myles, Riley, and Doroba, the City of Chicago and CPD effectively condoned, ratified, and sanctioned the kind of misconduct that the Defendant CPD Officers and Detectives committed against Jerry Herrington in this case.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204.**

205. The City of Chicago and CPD routinely failed to provide adequate training to CPD officers and detectives with deliberate indifference to the constitutional rights of others. That

includes, but is not limited to, failures to provide adequate training:

      a. to conduct constitutionally valid identification procedures;

      b. to disclose exculpatory evidence;

      c. to report only accurate and truthful information;

      d. to refrain from physical and psychological, and coercive and manipulative conduct, in relation to suspects and witnesses;

      e. to not fabricate evidence or testimony;

      f. as to the risk of wrongful convictions and the steps that can be taken to minimize that risk;

      g. that the truth should drive investigations, and not the desire to close cases; and

      h. that misconduct by CPD officers and detectives and others in the criminal justice system, including State's Attorneys, must be reported.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 205 and its subparts (a-h).**

206.     The failures to train as described herein existed at the time of the events giving rise to this lawsuit and resulted in the alleged constitutional violations committed by Defendants that caused Jerry Herrington to be wrongfully charged, prosecuted, and convicted of a crime he did not commit.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206.**

207.     The City of Chicago and CPD failed to act to remedy the patterns of abuse described above, despite actual knowledge of the pattern of misconduct, thereby perpetuating the unlawful practices and creating a *de facto* policy condoning the misconduct at issue here.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 207.**

208.    These *de facto* policies and practices described above were consciously approved by the City of Chicago and CPD policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 208.**

209.    The actions of the Defendant CPD Officers and Detectives were done pursuant to one or more interrelated *de facto* policies, practices, and/or customs of the City of Chicago and CPD which were ratified by policymakers for the City of Chicago and CPD with final policymaking authority. These *de facto* policies and practices include:

    a.  conducting physically and psychologically, illegal, or improperly coercive interrogations of witnesses to obtain false statements and wrongful convictions;

    b.  manufacturing and fabricating false witness and suspect statements and manipulating and lying to witnesses to influence unreliable and inaccurate testimony;

    c.  covering up the true nature of witness interviews and/or interrogations;

    d.  suppressing exculpatory evidence;

    e.  filing false police reports and giving false statements and testimony about such false reports to support false charges and wrongful convictions;

    f.  fabricating evidence to support false charges and wrongful convictions; and

g. lying about police misconduct during investigations of the same and to cover up the true nature of police misconduct.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 209 and its subparts (a-g).**

210.     The policies and practices described above were maintained and implemented by the City of Chicago and CPD with deliberate indifference to Jerry Herrington's constitutional rights.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 210.**

211.     The aforementioned *de facto* policies, practices, and/or customs of the City of Chicago and CPD were the moving force behind the Defendant CPD Officers and Detectives depriving Jerry Herrington of his constitutional rights.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 211.**

212.     These patterns and practices were so widespread, permanent, and well-settled as to constitute a custom with the force of law.

**ANSWER:     Defendant County makes no answer as this Paragraph is not directed**

towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 212.

213.    These patterns and practices permeate a critical mass of the institutional body of the City of Chicago and its Police Department.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 213.**

214.    It was obvious that these patterns and practices would lead to constitutional violations.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 214.**

215.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 215.**

## COUNT 9
## State Law Malicious Prosecution
## vs. Defendant CPD Officers and Detectives and ASA Toffenetti

216.     Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:     Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

217.     The Defendants herein initiated criminal proceedings against Jerry Herrington for the murder of Vera Brown, for which Jerry Herrington was convicted.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 217.**

218.     At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 218.**

219.     As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 219.**

220. On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

**ANSWER:** **Defendant County admits that the case against Plaintiff was dismissed. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 220.**

221. The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 221.**

222. The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 222.**

223. The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime he was accused of.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 223.**

224. This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER: Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 224.**

225. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER: Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 225.**

## COUNT 10
### Intentional Infliction of Emotional Distress
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

226. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER: Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

227.     The acts and conduct of the Defendant CPD Officers and Detectives and ASA Toffenetti as set forth above were extreme and outrageous. The Defendant CPD Officers and Detectives and ASA Toffenetti intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Jerry Herrington.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 227.**

228.     The actions and conduct by the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused severe emotional distress to Jerry Herrington and thereby constituted intentional infliction of emotional distress.

**ANSWER:     Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 228.**

229.     The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER:     Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 229.**

230.     As a direct and proximate result of the wrongful acts committed by the Defendant CPD Officers and Detectives and ASA Toffenetti, Jerry Herrington suffered injuries, including but not limited to emotional distress.

**ANSWER:     Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 230.**

**COUNT 11**
**Willful and Wanton Conduct**
**vs. Defendant CPD Officers and Detectives**

231.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

232.    At all relevant times, the Defendant CPD Officers and Detectives had a duty to refrain from willful and wanton conduct.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232.**

233.    Notwithstanding, the Defendant CPD Officers and Detectives acted willfully and wantonly through a course of conduct, as more fully described above, that showed an utter indifference to, or conscious disregard of Jerry Herrington's rights.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 233.**

234.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of

and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:** **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 234.**

## COUNT 12
### Civil Conspiracy
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

235. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:** **Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

236. As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti, acting in concert with one another and other co-conspirators, conspired to accomplish an unlawful purpose by unlawful means.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 236.**

237. In furtherance of the conspiracy, the Defendant CPD Officers and Detectives and ASA Toffenetti committed overt acts and were otherwise willing participants in joint activity.

**ANSWER:** **Defendant County is without knowledge or information sufficient to form a**

belief as to the truth of the remaining allegations in Paragraph 237.

238.    The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 238.**

239.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:    Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 239.**

**COUNT 13**
*Respondeat Superior*
**vs. City of Chicago, Cook County, and Chicago Housing Authority**

240.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:    Defendant County restates its answers to each previous paragraph of the Complaint as if fully set forth herein.**

241.     When they committed the acts alleged in this Complaint, the Defendant CPD Officers and Detectives were members and agents of the Chicago Police Department, an agency of the City of Chicago, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**     **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241.**

242.     Defendant City of Chicago is liable as a principal for all torts committed by its agents.

**ANSWER:**     **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242.**

243.     Alternatively, Defendants Officers Brandon and McKnight were employed by the Chicago Housing Authority and, at all relevant times, acting within the course and scope of their employment.

**ANSWER:**     **Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 243.**

244.    Defendant Chicago Housing Authority is liable as a principal for all torts committed by its agents.

**ANSWER:    Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244.**

245.    When he committed the acts alleged in this Complaint, Defendant ASA Toffenetti was an employee and agent of Cook County and the Cook County State's Attorney's Office, acting at all relevant times within the scope of his employment.

**ANSWER:    Paragraph 245 contains legal conclusions to which no response is required. To the extent an answer is required, Defendant County admits that Defendant Toffenetti was an assistant state's attorney at all relevant times.**

246.    Defendant Cook County is liable as principal for all torts committed by its agents.

**ANSWER:    Paragraph 246 contains legal conclusions to which no response is required. To the extent an answer is required, Defendant County admits that Illinois law directs local public entities to pay tort judgments for compensatory damages for which employees are liable for actions taken within the scope of their employment activities.**

247.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time,

affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:** **Defendant County denies there was any misconduct. Defendant County is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 247.**

## COUNT 14
**Indemnification**
**vs. City of Chicago, Cook County, and Chicago Housing Authority**

248.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:   Defendant County restates its answer to each previous paragraph of the Complaint as if fully set forth herein.**

249.   Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based upon the employees' misconduct committed within the scope of their employment activities.

**ANSWER:   Paragraph 249 contains legal conclusions to which no response is required. To the extent an answer is required, Defendant County admits that Illinois law directs local public entities to pay tort judgments for compensatory damages for which employees are liable for actions taken within the scope of their employment activities.**

250.   The Defendant CPD Officers and Detectives were employees of the Chicago Police Department, an agency of the City of Chicago, who acted within the scope of their employment in

committing the misconduct described herein.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 250.**

251. Defendant City of Chicago is responsible to pay any judgment entered against the Defendant CPD Officers and Detectives.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251.**

252. Alternatively, Defendants Officers Brandon and McKnight were employed by the Chicago Housing Authority and, at all relevant times, acting within the course and scope of their employment.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 252.**

253. Defendant Chicago Housing Authority is liable as a principal for all torts committed by its agents.

**ANSWER: Defendant County makes no answer as this Paragraph is not directed towards it. If the Court requires an answer, Defendant County is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253.**

254. Defendant ASA Toffenetti was an employee of the Cook County State's Attorney's Office,

an office within Cook County, Illinois, who acted within the scope of his employment in committing the misconduct described herein.

**ANSWER:  Paragraph 254 contains legal conclusions to which no response is required. To the extent an answer is required, Defendant County denies the allegations in Paragraph 254.**

255.  Defendant Cook County is responsible to pay any judgment entered against ASA Toffenetti.

**ANSWER:  Paragraph 255 contains legal conclusions to which no response is required. To the extent an answer is required, Defendant County admits that Defendant County may have a duty to pay a judgment for compensatory damages entered against the Prosecutor Defendant and denies that Defendant County has a duty to pay a judgment for punitive damages entered against the Prosecutor Defendant.**

WHEREFORE, Plaintiff Jerry Herrington prays this Court enter judgment in his favor against Defendants the CITY OF CHICAGO, a municipal corporation, MATTHEW BRANDON, JAMES McNIGHT, EDWARD WINSTEAD, DELORES MYLES, Special Representative To Be Determined for JAMES R. RILEY, Special Representative To Be Determined for JEROME C. DOROBA, THOMAS F. KELLY, JAMES E. WARD, WILLIAM TOFFENETTI, COOK COUNTY, and CHICAGO HOUSING AUTHORITY, awarding compensatory damages, costs and attorneys' fees against all Defendants, and punitive damages against each of the individual defendants in their individual capacities, and for such further and additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands a trial by jury in this action on each and every one of his claims.

## AFFIRMATIVE DEFENSES

Defendant Cook County, by its Attorney, Eileen O'Neil Burke, State's Attorney of Cook County, through her Assistant State's Attorney Kelli Huntsman, while continuing to deny liability to Plaintiff, and pleading in the alternative and without prejudice to the averments in the Foregoing Answer to Plaintiff's Complaint, for Defendant County's Affirmative Defenses, states as follows:

### FIRST AFFIRMATIVE

### *Absolute Prosecutorial Immunity*

At all relevant times, the Prosecutor Defendant was an Assistant State's Attorneys for the Cook County State's Attorney's Office. In this capacity, the Prosecutor Defendant took actions intimately associated with the judicial phase of the criminal process, including but not limited to the preparation for and initiation of judicial proceedings and trial. When the Prosecutor Defendant spoke with the suspect and witnesses, took statements, and ultimately determined whether criminal charges should be approved, she performed acts toward initiating a prosecution and presenting the State's case. Because the conduct complained of on the part of the Prosecutor Defendant is within the scope of her employment as a prosecutor, within her role as an advocate of the State and arises out of the evaluation of evidence and taking statements for the purpose of initiation and prosecution of criminal charges, Plaintiff's claims are barred on the basis of absolute prosecutorial immunity, and therefore, any claims against Defendant County should be dismissed with prejudice.

### SECOND AFFIRMATIVE DEFENSE

### *No Respondeat Superior*

Defendant County was not the employer of the former Prosecutor Defendant. He was an employee of the Cook County State's Attorney, who was a separately elected official pursuant to the Illinois Constitution of 1970, Article VI, Section 19, and is therefore, an official of the State of Illinois

and not a Cook County Employee. Consequently, Defendant County has no respondeat superior liability for any individual Prosecutor Defendant.

## THIRD AFFIRMATIVE DEFENSE

### *No Official Capacity Claim against Defendant Cook County*

A governmental entity is liable for damages under § 1983 only if the Plaintiff can show that the alleged constitutional deprivation occurred as a result of an official capacity policy, custom, or practice. See Monell v. Department of Social Serv., 436 U.S. 658, 692 (1978). Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law: or (3) a constitutional injury was caused by a person with final policy-making authority. Brokaw v. Mercer County, 235 F.3d 1000, 1013 (7th Cir. 2000). Plaintiff fails to allege his prosecution or incarceration resulted from any policy, custom or practice of Defendant Cook County; and therefore, Plaintiff fails to state an official capacity claim against the Defendant Cook County.

## FOURTH AFFIRMATIVE DEFENSE

### *Sovereign Immunity*

Plaintiff's claims against Prosecutor Defendant are really claims against a State Official based upon their actions as Assistant State's Attorneys, functions that fall within the scope of their employment and authority as Assistant State's Attorneys. Plaintiff's claims against the Prosecutor Defendant; and therefore, Defendant County, are related to the initiation of charges, against and the criminal prosecution of Plaintiff. The State's Attorney is the constitutional officer vested with exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. Plaintiff's claims against Defendant County are against the State of Illinois, and thus sovereign immunity shields Defendant County from liability in

federal court. The Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendant County.

### FIFTH AFFIRMATIVE DEFENSE

#### *Tort Immunity Act 745 ILCS 10/2-201*

Prosecutor Defendant, and thereby Defendant County, are immune from state law claims under 745 ILCS 10/2-201of the Illinois Tort Immunity Act which provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

### SIXTH AFFIRMATIVE DEFENSE

#### *Tort Immunity Act 745 ILCS 10/2-202*

The Acts or omissions that the Prosecutor Defendant allegedly took would have been acts or omissions in her capacity as a public employee in the execution or enforcement of a law and because those acts or omissions did not constitute willful or wanton conduct, Prosecutor Defendant is immune from suit, thereby making Defendant County immune.

### SEVENTH AFFIRMATIVE DEFENSE

#### *Tort Immunity Act 745 ILCS 10/2-204*

Because the Prosecutor Defendant was, at all times relevant to the Plaintiff's complaint, a public employee acting within the scope of his employment, he is immune from suit for any injury caused by the act or omission of another person, thereby making Defendant County immune.

### EIGHTH AFFIRMATIVE DEFENSE

#### *Tort Immunity Act 745 ILCS 10/2-205*

Prosecutor Defendant, and thereby Defendant County, are not liable for any injury caused by

his adoption of an enactment, failure to adopt an enactment, or her enforcement or failure to enforce any law.

## NINTH AFFIRMATIVE DEFENSE

### *Tort Immunity Act 745 ILCS 10/2-208*

Prosecutor Defendant, and thereby Defendant County, are not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause.

## TENTH AFFIRMATIVE DEFENSE

### *Tort Immunity Act 745 ILCS 10/2-213*

Prosecutor Defendant and thereby Defendant County are immune from punitive or exemplary damages under 745 ILCS 10/2-213 which provides as follows: "Notwithstanding any other provision of law, a public employee is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of an legislative, quasi-legislative or quasi-judicial function, even though abused."

## ELEVENTH AFFIRMATIVE DEFENSE

### *Attorney Fees*

Plaintiff is not entitled to attorney fees for his state law claims. *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (Ill. 1979).

## TWELFTH AFFIRMATIVE DEFENSE

### *Failure to Mitigate Damages*

To the extent Plaintiff failed to mitigate any claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty

to mitigate claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in the case.

## THIRTEENTH AFFIRMATIVE DEFENSE

### *Res Judicata and Collateral Estoppel*

Plaintiff's claims in the Complaint are barred by the doctrines of res judicata and collateral estoppel to the extent that they involve issues or claims that were, or could have been, resolved in the underlying criminal or post-conviction proceedings.

## FOURTEENTH AFFIRMATIVE DEFENSE

### *Indemnification*

Any indemnification obligation does not make Defendant County liable to Plaintiff. "But the obligation to pay the judgment does not mean the county itself is liable to the plaintiff. Rather, the county is only a necessary party to the suit so that, as an insurer or backstop for the independent official, it may "veto improvident settlements." *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003)" *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 2010 U.S. App. LEXIS 8762 (7th Cir. Ill. 2010). Additionally, Defendant County is not obligated or authorized to indemnify *punitive* damages.

## JURY DEMAND

Defendant Cook County hereby demands a trial by jury pursuant to Federal rule of Civil Procedure 38(b) on all issues so triable.

WHEREFORE Defendant Cook County respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice, enter a judgment in Defendant County's favor, award reasonable attorney's fees, costs and expenses, and for such other and further relief as the Court deems necessary and appropriate.

Dated: November 3, 2025

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

By:    */s/: Kelli Huntsman*
Kelli Huntsman
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7379
Kelli.huntsman@cookcountysao.org

## CERTIFICATE OF SERIVCE

I, Kelli Huntsman, Assistant State's Attorney, hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois Eastern Division by using the CM/ECF system on November 3, 2025.

*/s/ Kelli Huntsman*
Kelli Huntsman
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7379
Kelli.huntsman@cookcountsao.org