**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JERRY HERRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  25-CV-8795 |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Judge John Robert Blakey |
| corporation, MATTHEW BRANDON; | ) | |
| JAMES McKNIGHT; EDWARD | ) | Magistrate Judge Gabriel A. Fuentes |
| WINSTEAD; DELORES MYLES; Special | ) | |
| Representative To Be Determined for JAMES | ) | |
| R. RILEY; Special Representative To Be | ) | |
| Determined for JEROME C. DOROBA; | ) | |
| THOMAS F. KELLY; JAMES E. WARD; | ) | |
| WILLIAM TOFFENETTI; COOK | ) | |
| COUNTY; and CHICAGO HOUSING | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES AND JURY DEMAND

The City of Chicago ("City"), by its attorney, Terrence M. Burns of Burns Noland LLP, for its answer to Plaintiff's Complaint ("Complaint"), states:

## INTRODUCTION

1.      Jerry Herrington spent nearly 29 years in prison for a crime he did not commit.

**ANSWER**:      The City denies knowledge or information of the misconduct alleged in plaintiff's complaint against the named Defendant Officers, and it therefore denies, on information and belief, any allegation or inference in paragraph 1 that is based upon the premise that the alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1.

2.      Jerry was 16 years old when he was arrested for "disorderly conduct." Little did he know then that he would be framed for a murder he had nothing to do with and that he would not see the light of freedom again until he was released from prison, at the age of 45, in June of 2020.

**ANSWER**:     The City admits, upon information and belief, that plaintiff was 16 years old on the date he was arrested for disorderly conduct. Upon information and belief, the City denies that plaintiff reported that he was 16 years old on the date he was arrested for disorderly conduct, and further states that he reported he was 19 years old. The City admits plaintiff was released from prison in June of 2020. The City is without knowledge or information sufficient to form a belief as to plaintiff's age when he was released from prison. Upon information and belief, the City denies that plaintiff was "framed for a murder he had nothing to do with." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2.

3.     On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 South Dearborn Street in the Dearborn Homes Public Housing Project.

**ANSWER**:     Upon information and belief, the City admits the allegations contained in paragraph 3.

4.     At the time, the Dearborn Homes were inundated with drugs, gangs, and crime. Shootings at the Dearborn Homes were not uncommon and, because of the heavy gang presence and fear of deadly retaliation, witnesses to crime were generally unwilling to name names. Chicago Police Department officers and detectives, who had a frequent presence at the Dearborn Homes, knew of this impediment. Therefore, to close cases at the Dearborn Homes, particularly murder cases, CPD officers and detectives had a longstanding pattern and practice of fabricating evidence and manipulating witnesses into falsely identifying "offenders," who would later be baselessly charged, maliciously prosecuted, and wrongfully convicted. That is exactly what happened to Jerry Herrington.

**ANSWER**:     Upon information and belief, the City denies the allegations in paragraph 4 that the circumstances described are "exactly what happened to Jerry Herrington." The City denies all remaining allegations contained in paragraph 4.

5.     Jerry Herrington was not present at the at the time of Vera Brown's murder and knew nothing about it. He was never identified by a single person as being involved in the murder at any point prior to his criminal trial.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 5.

2

6.      The two pieces of evidence used against Jerry to secure his conviction were both fabricated. First, the Defendant CPD Officers and Detectives coerced and manipulated Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Melvin Jefferson was not present at the site of the shooting and, even based upon his own reported location, he could not have possibly seen the shooting. The Defendant CPD Officers and Detectives told Melvin Jefferson what to say and told him to identify Jerry Herrington as the shooter at trial, knowing that such information was false. Melvin Jefferson has since stated that he was coerced by police into making these false statements.

**ANSWER**:      The City is without knowledge or information sufficient to form a belief as to the truth of the allegations as to what Melvin Jefferson has stated since the time he identified plaintiff as the shooter at plaintiff's criminal trial. Upon information and belief, the City denies all remaining allegations in paragraph 6.

7.      Second, the Defendant CPD Officers and Detectives, along with Defendant Assistant State's Attorney ("ASA") William Toffenetti, fabricated evidence and falsified reports claiming that Jerry Herrington confessed to the Brown murder. Jerry was subjected to physical abuse and unconstitutional interrogation tactics after his arrest, but he never confessed to having any involvement with the Brown murder. Unsurprisingly, therefore, there is no audio or video recording of his alleged confession, nor did Jerry sign anything memorializing or affirming his purported confession. Defendant Detectives Riley and Doroba and ASA Toffenetti made up this "confession" out of whole cloth, knowing it was false.

**ANSWER**:      The City admits, upon information and belief, that there is no audio or video recording or signed statement of the confession, but denies any inference or allegation that a recording or signed statement was required. Upon information and belief, the City denies that plaintiff "never confessed to having any involvement with the Brown murder" and denies all remaining allegations contained in paragraph 7.

8.      Beyond these false and fabricated pieces of evidence — Jefferson's statement and Jerry's confession — there was no evidence to charge Jerry, let alone convict him of murder.

**ANSWER**:      The City, upon information and belief, denies the allegations in paragraph 8 that are based upon the premise that the misconduct alleged by plaintiff against the Defendant Officers occurred. The City denies all remaining allegations contained in paragraph 8.

9.      Falsifying and fabricating evidence to support convictions was, after all, part of Defendants' modus operandi. As described below, the Chicago Police Department, as an institution, condoned, enabled, and rewarded its detectives and officers to manipulate witnesses, falsify and

3

fabricate evidence, physically abuse suspects, make up confessions, commit *Brady* violations, and engage in other unconstitutional conduct as a means to an end. That end, here, was the baseless arrest, malicious prosecution, and wrongful conviction of Jerry Herrington.

**ANSWER**:     The City denies the allegations contained in paragraph 9.

10.    Without the malicious and unconstitutional conduct of the Defendants, Jerry Herrington would never have been arrested, prosecuted, or convicted; he would never have been ripped away from his family and friends and forced to suffer through the unimaginable horror of spending almost 30 years in prison as an innocent man; he would have never have had his life, liberty, and tremendous potential taken from him; and he would never have the scars, the pain, and the trauma that resulted from him being wrongfully accused, incarcerated, and convicted of murder.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in

paragraph 10.

11.    At the same time, however, Jerry always maintained his innocence and always maintained his hope. Now, after surviving a level of torment that no innocent person deserves and persevering through circumstances that would have caused many to lose hope and give up, Jerry Herrington comes before this Court seeking justice and accountability.

**ANSWER**:     Upon information and belief, the City denies the allegations in paragraph 11

that are based upon the premise that the misconduct alleged by plaintiff against the Defendant Officers

occurred. Upon information and belief, the City denies that plaintiff "always maintained his

innocence." The City is without knowledge or information sufficient to form a belief as to the truth

of the allegation that plaintiff "always maintained his hope." The City denies liability to plaintiff for

any and all claims asserted in plaintiff's complaint.

## JURISDICTION AND VENUE

12.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under 42 U.S.C. § 1983.

**ANSWER**:     The City admits plaintiff's complaint purports to assert claims pursuant to

federal statutes that seek to invoke the jurisdiction of this court.

13.    The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER**: The City admits 28 U.S.C. §1367(a) provides for supplemental jurisdiction over certain claims, and that plaintiff's complaint includes "state law" claims that seek to invoke the supplemental jurisdiction of this court.

14. The Court has personal jurisdiction over Defendants because at least some reside in the State of Illinois and because their conduct described herein occurred exclusively in Illinois.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti or Cook County. The City has denied, upon information and belief, the Defendant Officers engaged in the misconduct alleged in plaintiff's complaint. The City admits the Court has personal jurisdiction over the City. The City admits, upon information and belief, that the Court has personal jurisdiction over the Defendant Officers. The City denies liability to plaintiff for any and all claims asserted therein. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14.

15. Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because Plaintiff's injuries and damages occurred in the Northern District of Illinois, there are Defendants who reside and conduct business in the Northern District of Illinois, and all events giving rise to this action occurred in the Northern District of Illinois.

**ANSWER**: The City admits venue is proper in the United States District Court, Northern District of Illinois, for the claims asserted in plaintiff's complaint. The City denies liability to plaintiff for any and all claims asserted therein.

## PARTIES

16. Plaintiff Jerry Herrington was arrested without probable cause, maliciously prosecuted, and wrongfully convicted of the murder of Vera Brown. He now resides in Chicago, Illinois.

**ANSWER**: Upon information and belief, the City denies the allegations contained in the first sentence of paragraph 16. The City is without knowledge or information sufficient to form a belief as to the truth of the allegation that plaintiff now resides in Chicago, Illinois.

17.     Defendant City of Chicago, is a municipal corporation, located in Chicago, Illinois. During the relevant time period, the City of Chicago and its Police Department employed the Defendant Officers and Detectives.

**ANSWER**:     The City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois, and that the Chicago Police Department ("CPD") is an administrative department of the City. The City admits that at various times alleged in plaintiff's complaint, Defendant Officers were police officers employed by the CPD.

18.     At all relevant times, Defendant Matthew Brandon, believed to be Star No. 17698, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, Brandon was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Brandon is a resident of Chicago, Illinois.

**ANSWER**:     The City admits that during the investigation of the murder of Vera Brown, Officer Brandon was a police officer with the Public Housing South Tactical Unit of the CPD and was employed by the CPD. The City denies any allegation contained in paragraph 18 inconsistent with the foregoing. Upon information and belief, the City denies the allegations in paragraph 18 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the allegation that Officer Brandon now resides in Chicago, Illinois.

19.     At all relevant times, Defendant James McKnight, believed to be Star No. 13206, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, McKnight was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Officer McKnight was a police officer with the Public Housing South Tactical Unit and employed by the CPD. The City denies any allegation contained in paragraph 19 inconsistent with the foregoing. Upon information and belief, the City denies the allegations in paragraph 19 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or

information sufficient to form a belief as to the truth of the allegation that Officer McKnight now resides in Chicago, Illinois.

20.     At all relevant times, Defendant Edward Winstead, believed to be Star No. 20119, was a detective with the Chicago Police Department. In that capacity, Winstead was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Winstead is a resident of Chicago, Illinois.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Detective Winstead was employed by the CPD. Upon information and belief, the City denies the allegations in paragraph 20 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the allegation that Detective Winstead now resides in Chicago, Illinois.

21.     At all relevant times, Defendant Delores Myles, believed to be Star No. 20242, was a detective with the Chicago Police Department. In that capacity, Myles was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Myles is a resident of Chicago, Illinois.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Detective Myles was employed by CPD. Upon information and belief, the City denies the allegations in paragraph 21 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the allegation that Detective Myles now resides in Chicago, Illinois.

22.     At all relevant times, James R. Riley, believed to be Star No. 20250, deceased, was a detective with the Chicago Police Department. In that capacity, Riley was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. At the time of his death, James R. Riley was a resident of this district. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of James R. Riley, deceased.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Detective Riley was employed by the CPD. Upon information and belief, the City denies the allegations in paragraph 22 that are based upon the premise that the Defendant Officers' alleged misconduct

occurred. Upon information and belief, the City admits Detective Riley is deceased, that no estate was

opened, and that he previously resided in Chicago, Illinois at the time of his death.

23.     At all relevant times, Jerome C. Doroba, believed to be Star No. 20209, deceased, was a detective with the Chicago Police Department. In that capacity, Doroba was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of Jerome C. Doroba, deceased.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Detective

Doroba was employed by the CPD. Upon information and belief, the City denies the allegations in

paragraph 23 that are based upon the premise that the Defendant Officers' alleged misconduct

occurred. Upon information and belief, the City admits Detective Doroba is deceased, that no estate

was opened, and that he previously resided in Chicago, Illinois at the time of his death.

24.     At all relevant times, Defendant Thomas F. Kelly, believed to be Star No. 14082, was a police officer with the Chicago Police Department. In that capacity, Kelly was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Kelly is a resident of Chicago, Illinois.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Officer

Kelly was employed by the CPD. Upon information and belief, the City denies the allegations in

paragraph 24 that are based upon the premise that the Defendant Officers' alleged misconduct

occurred. The City is without knowledge or information sufficient to form a belief as to the truth of

the allegation that Officer Kelly now resides in Chicago, Illinois.

25.     At all relevant times, Defendant James E. Ward, believed to be Star No. 15808, was a police officer with the Chicago Police Department. In that capacity, Ward was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Ward is a resident of Yorkville, Illinois.

**ANSWER**:     The City admits that at various times alleged in plaintiff's complaint, Officer

Ward was employed by CPD. Upon information and belief, the City denies the allegations in paragraph

25 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The

City is without knowledge or information sufficient to form a belief as to the truth of the allegation that Officer Ward now resides in Chicago, Illinois.

26.     At all relevant times, Defendant William Toffenetti was an Assistant State's Attorney with the Cook County State's Attorney's Office. Serving in an investigative capacity, Toffenetti was involved with, participated in, and conspired with other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Toffenetti resides in Chicago, Illinois.

**ANSWER**:     The City admits on information and belief that Defendant Toffenetti was an Assistant State's Attorney ("ASA") with the Cook County State's Attorney's Office ("CCSAO") at various times alleged in plaintiff's complaint. Upon information and belief, the City denies the allegations in paragraph 26 that are based on the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26.

27.     Cook County, Illinois, is a county within the state of Illinois that during the relevant time had an office commonly referred to as the "Cook County State's Attorney's Office." During the relevant time period, Cook County, Illinois employed Assistant State's Attorney, William Toffenetti.

**ANSWER**:     The City admits Cook County is a governmental entity within the State of Illinois, and admits upon information and belief that Defendant Toffenetti was employed as an Assistant State's Attorney. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 27.

28.     Chicago Housing Authority is, upon information and belief, a municipal corporation created to, among other things, provide public housing. During the relevant time period, Defendant Officers Brandon and McKnight may have been employed by the Chicago Housing Authority.

**ANSWER**:     The City admits that the Chicago Housing Authority is a municipal corporation and a public housing authority. Upon information and belief, the City admits Officers Brandon and McKnight were employed by the CPD during the investigation of the murder of Vera Brown, and denies any allegation in paragraph 28 inconsistent therewith. The City is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28.

## FACTUAL BACKGROUND

### Vera Brown's Murder

29.     On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 S. Dearborn at the Dearborn Homes Public Housing Project. There were numerous eyewitnesses to the shooting.

**ANSWER**:     Upon information and belief, the City admits that on June 22, 1991, at approximately 3:10 pm, Vera Brown was shot outside of 2910 S. Dearborn at the Dearborn Homes Public Housing Project and that she subsequently died at the hospital as a result of the shooting. Answering further, upon information and belief, the City admits there were eyewitnesses to the shooting. The City denies any remaining allegation contained in paragraph 29 inconsistent with the foregoing.

### All Eyewitness Report a Single Offender

30.     Eyewitness reports given to the Chicago Police Department all describe a single offender.

**ANSWER**:     Upon information and belief, the City denies the allegations in paragraph 30.

31.     Officer Robert Hightower arrived on scene eight minutes after the shooting. He interviewed a "witness who refused to identify self," who reported that Vera Brown "went into 2910 S. Dearborn [and] was almost immediately chased out of same by a M/1 who shot her 4 times." This first report refers to only one offender, who "was described as wearing a red top and dark pants."

**ANSWER**:     The City admits that Officer Robert Hightower arrived on scene eight minutes after the shooting according to a police report and that a "witness who refused to identify self" reported that Vera Brown "went into 2910 S. Dearborn [and] was almost immediately chased out of same by a M1 who shot her 4 times." The City further admits the police report indicates the witness described the offender "as wearing a red top and dark pants." Upon information and belief, the City denies the remaining allegations in Paragraph 31.

32.     Defendant Detectives Winstead and Myles were also on scene. They were told by unidentified citizens that Brown was shot "by the Mickey Cobra street gang" and that there was a war between the Mickey Cobras and the Gangster Disciples within the Dearborn Homes. Only one witness on scene, "Tony Martin," was willing to speak with Detectives Winstead and Myles.[2] "Martin" reported that he heard a gunshot and saw Brown running and fall to the ground. "Martin" saw a black male run up to Brown and shoot her approximately five more times. He described the offender as slim, in his late teens, and wearing a red t-shirt and blue jeans. This is the second independent report of a single offender.

**ANSWER**:     Upon information and belief, the City admits that Detectives Winstead and

Myles were on the scene, that they were told by citizens that Brown was shot by the Micky Cobra

Street Gang, and that there was a war between the 29th Street Mickey Cobras and the Gangster

Disciples from 27th Street. The City further admits on information and belief that only one of those

citizens, Tony Martin, "appeared willing to speak at length," and he stated that he heard a shot and

saw Brown running, and then a black male came up and fired approximately five more times. Upon

information and belief, the City further admits that the witness who identified himself as Tony Martin

reported that he saw a lot of people running and knew that one involved was wearing a red T-shirt

and blue jean pants, was slim, and was in his late teens. The City is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 32.

33.     After the shooting, officers canvassed the area and located two additional eyewitnesses. One eyewitness lived at 2910 S. Dearborn, Unit 308, and may have been identified as Michael Cooper. He told officers that he heard shots and saw one male, 17-18 years old, 5'8" and 150 lbs. with a medium build, with designs in his hair, and wearing a red shirt and blue jeans. This is the third independent report of a single offender.

**ANSWER**:     Upon information and belief, the City admits that after the shooting,

Detectives Munoz and Moseley canvassed the area and located two witnesses. The City further admits,

upon information and belief, a witness, who may have been identified as Michael Cooper and who

was at 2910 S. Dearborn, Unit 308, told officers he heard shots and saw a black male, 17-18 years old,

---

[2] [Footnote 1 in the complaint is omitted from the answer because it is not part of the allegations.] It was later determined that "Tony Martin" was a fictitious name given by the eyewitness.
**ANSWER:** The City is without knowledge or information sufficient to form a belief as to the truth of the vague allegation contained in footnote 2.

5'8" and 150 lbs., medium build, with designs in his haircut, wearing a red shirt and blue jeans after the shots were fired. The City lacks knowledge sufficient to admit or deny whether this individual lived at 2910 S. Dearborn, Unit 308, and whether this report was the "third independent report of a single offender." The City denies the remaining allegations contained in paragraph 33.

34.     Officers also spoke with Howard Ivery, who lived at 2731 S. Dearborn. Ivery reported seeing a black male with a light complexion standing over Brown shooting her. This is the fourth independent report of a single offender.

**ANSWER**:     The City admits, on information and belief, that officers spoke with Howard Ivery at 2731 S. Dearborn, and he stated he saw a person with a light complexion and wearing a white jumpsuit standing over the victim and shooting her. Upon information and belief, the City denies that the subject police department report states the person was a black male or that Ivery lived at 2731 S. Dearborn. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34.

35.     On June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received a message from an anonymous caller who reported that Brown was shot by a black male, age 17-21, with a light complexion.[3] This is the fifth independent report of a single offender.

**ANSWER**:     The City admits on information and belief that, on June 23, 1991, an anonymous caller stated that Brown was shot by a black male, age 17-21, with a light complexion, and with the nickname, "Stray." The City denies, on information and belief, any allegation or inference that this anonymous caller stated the shooter acted alone. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35.

---

[3] The anonymous caller also reported the shooter's nickname, but that information has been redacted in the file produced by the Chicago Police Department.
**ANSWER:** The City admits that the subject police department report references the nickname, "Stray." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in footnote 3.

36.     Defendant Detective Winstead was also told that the shooter was Anthony "Teeth" Taylor, who was described as a black male, age 16, with a thin build, light complexion, and a high-top fade. This is sixth independent report of a single offender.

**ANSWER**:     The City admits that a General Progress Report includes a note stating "Taylor, Anthony 'Teeth,'" followed by the description alleged in the first sentence of paragraph 36. Upon information and belief, the City denies that this report is the "sixth independent report of a single offender." The City denies any allegations contained in paragraph 36 that are inconsistent with the language in the General Progress Report. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 36.

37.     In line with information received from these six independent sources, initial official reports document only one offender. A Supplementary Report prepared by Defendant Detectives Winstead and Myles describes the "WANTED" offender as: "M/B late teens, approx. 5-10, med build and compl. wearing a red T-shirt and blue jean pants." Further, the Medical Examiner Case Report documents an interview with Defendant Detective Winstead, during which Winstead told the investigator that the shooter was an "unknown male offender."

**ANSWER**: Upon information and belief, the City denies that the reports documented only one offender. The City admits that a Supplementary Report prepared by Defendants Winstead and Myles, dated June 23, 1991, described the WANTED offender as alleged in paragraph 37. Upon information and belief, the City admits a Medical Examiner Case Report purports to document an interview with Detective Winstead and that, according to the Medical Examiner Case Report, Detective Winstead told the investigator the victim was chased by an "unknown male offender…who fired several shots" that struck the victim. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 37.

38.     Notwithstanding numerous consistent eyewitness reports of there being only one shooter, as well as at least one report specifically identifying the shooter as Anthony "Teeth" Taylor, the Defendant CPD Officers and Detectives conspired to frame two individuals, Dion Warr and Jerry Herrington, for this murder.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 38.

13

**Melvin Jefferson**

39.     The Defendant CPD Officers and Detectives used Melvin Jefferson to fabricate evidence that would ultimately lead to Jerry Herrington's conviction.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 39.

40.     On June 23, 1991, Jefferson was in custody for auto theft and brought to Area One Violent Crimes to be interviewed by Defendant Detectives Winstead and Myles. According to Myles's report of the interview, Jefferson told them he was standing "by the fieldhouse" and saw Dion Warr and an unknown black male standing together near 2910 S. Dearborn. According to the report, Jefferson then saw Dion Warr point at Vera Brown when she exited the building, at which point the unknown black male pulled a gun from his waistband and shot Brown multiple times. Jefferson is reported as saying that the shooter ran through 2910 S. Dearborn while Dion Warr ran around it, at which point they met each other in the fire lane and ran south. According to the report, Jefferson said the unknown shooter was 5'10", 150 lbs., with a medium build and dark complexion, and was wearing a blue baseball hat and a white pinstripe New York Mets shirt and shorts set.

**ANSWER**:     The City admits on information and belief that Jefferson was in custody for auto theft and that in an interview at Area One, Jefferson related, in essence and in part, that he was standing by the fieldhouse and saw Dion Warr and an unknown black male standing together by the water fountain near the 2910 S. Dearborn building, that he saw Dion Warr point at Brown who had exited the building, that Brown started to run and the unknown black male shot her in the leg, Brown fell and the shooter ran towards her, stood over her, and fired repeatedly at her. The City further admits that, according to the supplementary report, Jefferson stated the shooter ran through the 2910 S. Dearborn building while Dion Warr ran around, and they met each other in the fire lane and ran south. The City further admits that, according to the supplementary report, Jefferson described the shooter as wearing a blue baseball cap and "a white pinstripe 'METS' shorts set with orange logos of NY on the left breast pocket and Mets on the back." The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 40.

41.     Defendant Detectives Winstead and Myles knew the information they reported as coming from Melvin Jefferson was false. Jefferson could not have seen the shooting from "by the fieldhouse," which was approximately 400 feet away from the site of the shooting with an obstructed line of sight. Also, Jefferson's purported description of two offenders was at odds with all other

14

eyewitness reports, which consistently refer to one offender. Further, no one other than Jefferson mentioned anyone wearing conspicuous clothing, such as a New York Mets shirt and shorts set.

**ANSWER**: Upon information and belief, the City denies the allegations in paragraph 41 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 41.

42.     Defendant Detectives Winstead and Myles coerced and/or manipulated Melvin Jefferson into giving these false statements, which he would later repeat at trial against Jerry Herrington to secure his conviction.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 42.

## Dion Warr is Arrested and Charged with Brown's Murder

43.     On July 2, 1991, based upon Jefferson's false statements, Dion Warr was arrested and charged with first-degree murder. The Complaint for Preliminary Examination against Dion Warr, signed under oath by Defendant Detective Myles, alleges that Warr "killed Vera BROWN without lawful justification by shooting her with a gun . . ."

**ANSWER**: The City admits that, on July 2, 1991, Dion Warr was arrested and charged with first-degree murder. The City admits that the Complaint for Preliminary Examination was signed under oath by Detective Myles, and alleges, in part that Warr "killed Vera BROWN without lawful justification by shooting her with a gun . . . ." Upon information and belief, the City denies any allegation in paragraph 43 that is based upon the premise that the Defendant Officers' alleged misconduct occurred.

## Jerry Herrington is Arrested, Battered, and Charged with Brown's Murder

44.     More than eight weeks after Vera Brown was murdered, on August 22, 1991, at approximately 12:40 p.m., Jerry Herrington was arrested for disorderly conduct. The Vice Case Report states that the arresting officers, including Defendant Officers Brandon and McKnight, "received information from a female citizen over the phone at Unit 715 of 3 M/Bs selling drugs in the rear of 2940 S. State," and that the caller gave them "a physical and clothing description of the alleged offenders." Jerry Herrington, who was sitting on a bench when the arresting officers arrived, allegedly matched the description of one of the black males and was arrested.

**ANSWER**: The City admits upon information and belief plaintiff was arrest for disorderly conduct on August 22, 1991. The City admits the existence of a Vice Case Report, dated August 22, 1991, refers to the content of that report, and denies any allegation contained in paragraph 44 inconsistent therewith. The City admits the Vice Case Report indicates "Harvey Herrington" was arrested for disorderly conduct and that the quoted language in paragraph 44 appears in the Vice Case Report. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 44.

45. Jerry Herrington's arrest itself was unconstitutional because there was no probable cause to arrest him. The initial Vice Case Report indicates that Jerry Herrington was sitting on a bench outside of 2940 S. State Street when the arresting officers arrived. The report does not describe any unlawful activity on the part of Jerry Herrington and concludes that he matched the description of one of the three black males who were allegedly selling drugs and "was [ ] arrested and charged accordingly." However, Jerry was not arrested or charged with selling drugs or anything of the sort.

**ANSWER**: Upon information and belief, the City denies the allegations contained in the first sentence of paragraph 45. In further response, the City admits the existence of a Vice Case Report dated August 22, 1991, refers to the content of that report, and denies any allegation contained in paragraph 45 inconsistent therewith. The City admits the Vice Case Report indicates "Harvey Herrington" was arrested for disorderly conduct. The City denies on information and belief any remaining allegations contained in paragraph 45.

46. The Arrest Report from the same day says that Jerry Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." However, the Vice Report does not describe anything of the sort and, in terms of Jerry's conduct, says nothing other than that he was sitting on a bench.

**ANSWER**: The City admits the existence of an Arrest Report dated August 22, 1991, refers to the content of that report and admits that the partial quotation in the first sentence of paragraph 46 appears in the Arrest Report. The City further admits the existence of a Vice Case Report dated August 22, 1991, refers to the content of that report, and denies any allegation contained in the

second sentence of paragraph 46 inconsistent therewith. The City denies any remaining allegation or inference contained in paragraph 46.

47.     The police reports are thus inconsistent as to why Jerry Herrington was arrested. The truth is that there was no probable cause to arrest him. The police fabricated the anonymous report that Jerry Herrington matched the description of someone selling drugs outside of 2940 S. State Street. They also fabricated the report that Jerry Herrington did not disperse upon being ordered to do so.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 47.

48.     Jerry was only 16 years old at the time of his arrest, although he did not immediately tell that to the arresting officers.

**ANSWER**:     Upon information and belief, the City admits that plaintiff, who had given the name Harvey Herrington, reported to the officers that he was 19 years old on August 22, 1991, and did not tell the arresting officers his true age at any time. The City, upon information and belief, admits that plaintiff was 16 years old at the time of the arrest. The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48.

49.     Initially, Jerry was taken to a lockup near the Dearborn Homes. At or about that time, the Defendant CPD Officers and Detectives set in motion a plan to frame Jerry Herrington for Vera Brown's murder.

**ANSWER**:     Upon information and belief, the City admits that plaintiff was transported to Chicago Public Housing Unit 715 for processing. The City denies any allegation in the first sentence of paragraph 49 that is inconsistent with the foregoing. Upon information and belief, the City denies the allegations contained in the second sentence of paragraph 49.

50.     Jerry was taken from lockup to the 21st District, and then later to Area One Violent Crimes by Defendant Detectives Riley and Doroba at approximately 8:00 p.m. During the transport, Defendant Detectives Riley and Doroba told him that he was being arrested for murder — which was the first time, after more than seven hours in custody, that Jerry was informed of anything pertaining to the Brown murder.

**ANSWER**:     Upon information and belief, the City admits that plaintiff was taken from Public Housing Unit 715 to the 21st District and then later to Area One. Upon information and belief,

the City denies any allegation in paragraph 50 that is based upon the premise that the Defendant Officers' alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 50.

51.     At Area One, Jerry was placed in an interrogation room and handcuffed to a ring on the wall. Defendant Detectives Riley and Doroba then began interrogating Jerry about Vera Brown's murder. Jerry told them that he was only 16, that he had no idea what they were talking about, and that he wanted to call his grandmother. Defendant Detectives Riley and Doroba refused Jerry's request for a phone call and did nothing to locate a parent, guardian, or youth officer.

**ANSWER**:     Upon information and belief, the City admits that Detectives Riley and Doroba interviewed plaintiff at Area One. The City is without knowledge or information sufficient to form a belief as to the truth of the allegation that plaintiff was handcuffed to a ring on the wall. Upon information and belief, the City denies the remaining allegations in paragraph 51.

52.     After Jerry told Defendant Detectives Riley and Doroba that he knew nothing about Vera Brown's murder they physically battered him by slapping him in face and hitting him in the stomach. At no time did Jerry confess to the murder, even falsely, notwithstanding the unconstitutional interrogation tactics and physical abuse by Defendant Detectives Riley and Doroba.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 52.

53.     On August 22, 1991 at approximately 11:30 p.m., Jerry Herrington was arrested for the murder of Vera Brown.

**ANSWER**:     The City admits the allegations in paragraph 53.

54.     At the time Jerry was arrested there was literally zero evidence that he was involved with Vera Brown's murder. No one had identified Jerry as the shooter, there was no physical evidence connecting Jerry to the murder, and Jerry did not make any statements other than to say he knew nothing about the murder. Therefore, the Defendants fabricated evidence to support the prosecution and ultimate conviction of Jerry Herrington.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 54.

### The Fabricated August 23, 1991 Police Report

55.     On August 23, 1991 — *after* Jerry had already been wrongfully arrested and charged with Brown's murder — Defendant Officers Brandon and McKnight fabricated an official report

about the initial call they purportedly received from the unidentified "female citizen" the day before. As discussed above, the Vice Case Report from August 22, 1991 states that Defendant Officers Brandon and McKnight "received information from a female citizen over the phone . . . of 3 M/Bs selling drugs in the rear of 2940 S. State." The Vice Case Report says nothing about the Brown murder. Similarly, an August 22, 1991 handwritten Arrest Report by Defendant Officers Brandon and McKnight says that Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." It too says nothing about the Brown murder.

**ANSWER**: Upon information and belief, the City admits that on August 23, 1991, the day after plaintiff was arrested and charged with Brown's murder, Defendant Officers Brandon and McKnight submitted a Supplementary Report that documented the call they received from the unidentified female citizen on August 22, 1991. The City admits that the Vice Case Report dated August 22, 1991 states that arresting officers "received information from a female citizen over the phone . . . of 3 M/Bs selling drugs in the rear of 2940 S. State" and further admits the Vice Case Report does not mention the Brown murder, but denies any inference that there was a requirement to include such a reference in the Vice Case Report. The City admits that the August 22, 1991, handwritten Arrest Report for disorderly conduct that includes Officers Brandon and McKnight as arresting officers states that Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation, which resulted in the recovery of a weapon and a quantity of cocaine" and that it does not mention the Brown murder, but denies any inference that it was necessary to include such a reference in this Arrest Report. The City denies the remaining allegations contained in paragraph 55.

56. However, a Supplementary Report from the next day — again, *after* Jerry had been charged with Brown's murder — conveniently changes the narrative to say not only did this "unknown female citizen" report three black males selling drugs in the rear of 2940 S. State, she "***also stated*** that the M/B that was wearing a green short sleeved shirt, black jeans and green & white gym shoes was involved in the shooting death of a f/b named Brown, Vera" (emphasis added).

**ANSWER**: The City admits that a Supplementary Report, submitted on August 23, 1991, states that the female caller "also stated that the M/B that was wearing a green short sleeved shirt, black jeans and green & white gym shoes was involved in the shooting death of f/b named Brown,

Vera." The City denies the argumentative assertion that any narrative was "conveniently change[d]" and denies the remaining argumentative allegations in paragraph 56.

57.     This August 23, 1991 Supplementary Report by Defendant Officers Brandon and McKnight was obviously fabricated because if this unknown female *actually* said that one of the black males was involved in the Brown murder during her call, that is something that would have been reported in the August 22, 1991 Vice Case Report and the August 22, 1991 Arrest Report. Instead, neither report says anything about the Brown murder and both reports treat Jerry Herrington's arrest as an afterthought.

**ANSWER**:     Upon information and belief, the City denies the allegations in paragraph 57 that are based upon the premise that the alleged misconduct occurred. The City denies the remaining argumentative and speculative allegations contained in paragraph 57.

58.     In reference to Jerry Herrington, the August 22, 1991 Vice Case Report states only that "Arrestee HERRINGTON matching the description of one of the 3 M/Bs that *were selling drugs* was also arrested and charged accordingly" (emphasis added). Had he have been described as matching the description of the shooter in Vera Brown's murder, the Vice Case Report would have indicated that.

**ANSWER**:     The City denies the argumentative and speculative allegations in paragraph 58.

59.     In reference to Jerry Herrington, the August 22, 1991 Arrest Report states only that he was "arrested after refusing lawful order to disperse there." Had he been arrested because he matched the description of the shooter in Vera Brown's murder, the Arrest Report would have indicated that. It is also something that Jerry Herrington would have immediately been confronted with.

**ANSWER**:     The City denies the argumentative and speculative allegations in paragraph 59.

**The Fabricated Confession**

60.     After Jerry Herrington was arrested, Defendant Detectives Riley and Doroba, together with Assistant State's Attorney, William Toffenetti, conspired to fabricate a confession from him.

**ANSWER**:     Upon information and belief, the City denies the allegations in plaintiff's complaint against the Defendant Officers, and it therefore denies the allegations in paragraph 60.

61.     As stated above, Jerry was physically beaten and held for nearly 12 hours without a parent, guardian, or youth officer and, yet, did not give in to Defendant Detectives Riley's and Doroba's unconstitutional efforts to extract a false confession. So, they made one up.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 61.

62. On September 1, 1991 — *10 days* after Jerry was charged with Brown's murder — Defendant Detectives Riley and Doroba fabricated a Supplementary Report claiming that Jerry Herrington confessed. Detective Riley's notes of the purported confession were not processed until September 12, 1991, *21 days* after Jerry was charged with Brown's murder.

**ANSWER**: The City admits that Detectives Riley and Doroba drafted a Supplemental Report documenting Plaintiff's oral confession, which was submitted for approval on September 1, 1991. Upon information and belief, the City denies the allegations in paragraph 62 that are based upon the premise that the alleged misconduct occurred. The City denies any remaining allegations contained in paragraph 62.

63. Had Jerry Herrington actually confessed to a murder on August 22, 1991, Defendant Detectives Riley and Doroba would have reported it right away, not 10 and 21 days later. They would have also taken measures to record the confession (either video or audio) or have Jerry memorialize or affirm it in some way (such as by signing or initialing a written statement); they did none of the above.

**ANSWER**: The City admits, upon information and belief, that on August 22, 1991, Plaintiff orally confessed to Detectives Riley and Doroba of his involvement in the murder of Vera Brown and that they documented Plaintiff's oral confession. Upon information and belief, the City denies the allegations in paragraph 63 that are based upon the premise that the alleged misconduct occurred. The City denies any speculative inference or allegation that because a confession is not recorded on video or audio or signed or initialed, there was no confession. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63.

64. Instead, Defendant Detectives Riley and Doroba, together with Defendant Assistant State's Attorney William Toffenetti, conspired to fabricate a story that Jerry also confessed to Toffenetti, but when Toffenetti asked him to give a handwritten statement of his confession, Jerry suddenly invoked his right to counsel.

**ANSWER**: Upon information and belief, the City denies the allegations in paragraph 64 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City further denies, based upon a memorandum written by Defendant Toffenetti, that when Toffenetti asked plaintiff to give a handwritten statement, plaintiff "suddenly invoked his right to counsel." The City denies any remaining allegation in paragraph 64.

65.     This story is too convenient, however, because it is the only way to for the Defendants to explain how Jerry never acknowledged, affirmed, or signed his purported confession.

**ANSWER**: The City denies the argumentative allegations in paragraph 65.

66.     Tellingly, a Memorandum dated August 22, 1991 from Defendant ASA Toffenetti to the supervisor of the Felony Review Unit, says not one word about this purported confession. Had Jerry confessed to Toffenetti that night, as Defendants claim, Toffenetti would have undoubtedly reflected that in his Memorandum.

**ANSWER**: Upon information and belief, the City denies the allegations in paragraph 66 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City admits the existence of a Memorandum from ASA Toffenetti dated August 22, 1991, refers to that document for its content, and denies the allegations in paragraph 66 inconsistent therewith. The City states the Memorandum references an "oral statement by Harvey Herrington concerning the murder of Vera Brown" and indicates he "stated he would be willing to give a handwritten statement concerning the shooting." The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 pertaining to what Defendant Toffenetti would or would not have done.

### The Fabricated July 2, 1991 General Progress Report

67.     Another piece of evidence that was fabricated – this time by Defendant Officers Kelly and Ward – is a handwritten General Progress Report ("GPR") purportedly dated July 2, 1991, which is 10 days after the Brown murder and more 7 weeks before Jerry Herrington was arrested. In this GPR, Defendant Officers Kelly and Ward purportedly write to Detectives Winstead and Myles that Vera Brown's godmother, Cathy Scott, said the shooter is "Jerry" from around 79th & Lomis, whose girlfriend lives at 2940 State, Unit 104, and who is about 17-18 years old, 5'10", has very dark skin, wears a hat at all times, and always wears light clothes.

**ANSWER**: Upon information and belief, the City denies the allegations in paragraph 67 that are based upon the premise that the alleged misconduct occurred, including that the information in the General Progress Report was fabricated. The City admits that a General Progress Report, dated July 2, 1991, includes, among other things, the information stated in the second sentence of paragraph 67.

68. This handwritten GPR was not properly filled out, dated, signed, or submitted. It was obviously fabricated because there is no indication that at any point in time over next seven weeks that any officer, detective, or investigator interviewed Cathy Scott, went to 79th & Loomis to find "Jerry," went to Unit #104 at 2940 State Street where "Jerry" purportedly stayed, or took any action whatsoever to locate the murderer notwithstanding that they purportedly had a name, location, and detailed physical description.

**ANSWER**: Upon information and belief, the City denies the allegations in paragraph 68 that are based upon the premise that the alleged misconduct occurred. The City denies the remaining argumentative allegations in paragraph 68.

### The Fabricated In-Court Identification

69. Finally, Defendant Detectives Winstead and Myles manipulated and/or coerced Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Jefferson did not know who Jerry Herrington was; had he, his name would have been included in the manipulated statement reported by Defendant Detectives Winstead and Myles.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 69.

70. Because Jefferson did not know who Jerry Herrington was, proper police protocol and best practices required that he be asked to pick Jerry out of lineup or photo array, or even to confirm his identify at a show-up. That never happened. At no point during the 378 days between Brown's murder on June 22, 1991 and Jefferson's trial testimony on July 6, 1992, did Jefferson identify Jerry as the shooter.

**ANSWER**: The City admits, upon information and belief, that Jefferson was not shown a lineup or photo array or asked to confirm plaintiff's identity at a show-up. Upon information and belief, the City denies the remaining argumentative allegations in paragraph 70.

71. Melvin Jefferson had no idea who Jerry Herrington was or what he looked like until he saw him in court. The suggestion that Melvin Jefferson could identify a shooter unknown to him

after 378 days, having only seen the shooter from a distance of more than 400 feet, is preposterous. When Jefferson identified Jerry at trial he did so only because the Defendants told him to. His identification of Jerry was false and fabricated.

**ANSWER**: Upon information and belief, the City denies the allegations in paragraph 71 that are based upon the premise that the Defendant Officers' alleged misconduct occurred. The City further denies upon information and belief that Jefferson had no idea what plaintiff looked like until he saw him in court and denies that Jefferson's identification of plaintiff was false and fabricated. The City denies all remaining allegations in paragraph 71.

### The Wrongful Conviction

72. On July 8, 1992, Jerry Herrington was found guilty in a bench trial and convicted of the first-degree murder of Vera Brown.

**ANSWER**: The City admits the allegations in paragraph 72.

73. The only evidence the prosecution used at trial against Jerry was the false, coerced and/or manipulated testimony from Melvin Jefferson and the false confession purportedly given by Jerry Herrington.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 73.

### Jerry Herrington is Innocent

74. Jerry Herrington is innocent of having any involvement in Vera Brown's murder.

**ANSWER**: The City, upon information and belief, denies the allegations contained in paragraph 74.

75. There has never been any legitimate evidence connecting Jerry Herrington to Vera Brown's murder.

**ANSWER**: The City, upon information and belief, denies the allegations contained in paragraph 75.

76. Jerry Herrington was not present at the time of the shooting and knew nothing about it.

**ANSWER**: The City, upon information and belief, denies the allegations contained in paragraph 76.

77. The statements, reports, and testimony concerning the purported observations of Melvin Jefferson are false and fabricated. Melvin Jefferson did not witness Vera Brown's shooting. He gave false and fabricated statements and testimony because he was manipulated and/or coerced into doing so by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles. The reports purporting to document observations by Melvin Jefferson were fabricated by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 77.

78. Jerry Herrington never confessed to having any involvement with the Brown murder. Reports and testimony concerning his confession from Defendant Detectives Riley and Doroba and from Defendant ASA Toffenetti were fabricated and false.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 78.

79. Jerry Herrington was convicted of first-degree murder based exclusively on false and fabricated evidence.

**ANSWER**: The City admits plaintiff was convicted of first-degree murder. The City, upon information and belief, denies all remaining allegations contained in paragraph 79.

80. Several independent eyewitnesses have provided sworn statements that Anthony "Teeth" Taylor shot and killed Vera Brown on June 22, 1991. It was also reported to Detective Winstead shortly after the shooting that Anthony "Teeth" Taylor was the person who shot and killed Vera Brown.

**ANSWER**: The City admits that a General Progress Report includes a note stating "Taylor, Anthony 'Teeth'," followed by a description. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 80.

### The Defendant Officers and Detective's *Brady* Violations

81. In addition to fostering a false narrative used to convict Jerry Herrington as discussed above, the Defendant CPD Officers and Detectives committed more than 10 *Brady* violations. Defendants did not comply with their *Brady* obligations in failing to disclose the following exculpatory evidence:

25

(a)    that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

(b)    that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

(c)    that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

(d)    the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

(e)    that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

(f)    that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

(g)    that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip identifying someone other than Jerry Herrington as being the shooter;

(h)    that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

(i)    that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder;

(j)    that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

**ANSWER**:    Upon information and belief, the City denies the allegations in paragraph 81, including all subparagraphs therein.

### Jerry Herrington is Exonerated

82.    On March 4, 2025, Jerry Herrington was exonerated, his conviction was vacated, and the charges against him were dismissed.

**ANSWER**:    The City admits that on or about March 4, 2025, the court granted plaintiff's petition for relief under the Post Conviction Hearing Act as to the ineffective assistance of counsel

claim, vacated the conviction against him, and granted the State's motion for entry of *nolle prosequi*.

The City denies any allegation in paragraph 82 that is inconsistent with the foregoing.

## The Defendants' History of Unconditional Conduct

83.     At all relevant times, the Defendant Officers and Detectives had a pattern and practice of using unconstitutional policing tactics in order to clear cases and secure the wrongful arrest, prosecution, and conviction of innocent people, just as they did with Jerry Herrington.

**ANSWER**:     The City denies the allegations contained in paragraph 83.

84.     **Defendant Officer Matthew Brandon**: It has been alleged that, on October 3, 1990, Defendant Officer Matthew Brandon, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized more than $25,000 found on the premises. Brandon was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Brandon's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington.

**ANSWER**:     The City states that it has been unable to locate a record showing that Officer

Brandon was the subject of a complaint arising from an incident that occurred on October 3, 1990.

The City is, therefore, without knowledge or information sufficient to form a belief as to the

allegations in paragraph 84 as to what was alleged in the complaint arising from the incident on

October 3, 1990, or whether there was any discipline or other action as a result of the complaint. The

City denies a complaint alleging misconduct that results in the opening of a Complaint Log or

Complaint Register investigation in and of itself establishes that the alleged misconduct occurred.

Further, upon information and belief, the City denies the allegation in paragraph 84 that Officer

Brandon's allegedly unconstitutional actions on October 3, 1990, "are consistent with his

unconstitutional arrest of Jerry Herrington." The City denies any remaining allegations contained in

paragraph 84.

85.     **Defendant Officer James McKnight:** It has been alleged that, on October 3, 1990, Defendant Officer James McKnight, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized and failed to inventory or return $8,000 found on the premises.

McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER**: The City states that it has been unable to locate a record showing that Officer McKnight was the subject of a complaint arising from an incident that occurred on October 3, 1990. The City is, therefore, without knowledge or information sufficient at this time to form a belief as to the allegations in paragraph 85 as to what was alleged in the complaint arising from the incident on October 3, 1990, or whether there was any discipline or other action as a result of the complaint. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the allegation in paragraph 85 that Officer McKnight's allegedly unconstitutional actions on October 3, 1990, "are consistent with his unconstitutional arrest of Jerry Herrington." The City denies any remaining allegations contained in paragraph 85.

86. It has been alleged that, on July 8, 1991, Defendant Officer James McKnight participated in an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER**: The City admits Officer McKnight was the subject of a complaint arising from an incident that occurred on July 8, 1991. The City states that there was a finding of "not sustained" as to the allegations arising from the incident on July 8, 1991, and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 86 that Officer McKnight's allegedly unconstitutional actions on July 8, 1991, "are consistent with his

unconstitutional arrest of Jerry Herrington and fabrication of evidence." The City denies any remaining allegations in paragraph 86.

87. It has been alleged that, on August 7, 1991, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER**: The City admits Officer McKnight was the subject of a complaint arising from an incident that occurred on August 7, 1991. The City states that there was a finding of "exonerated" as to the allegations against Officer McKnight and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 87 that Officer McKnight's allegedly unconstitutional actions on August 7, 1991, for which he was exonerated, "are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence." The City denies any remaining allegations in paragraph 87.

88. It has been alleged that, on June 1, 1993, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER**: The City admits Officer McKnight was the subject of a complaint arising from an incident that occurred on June 1, 1993. The City states that there was a finding of "not sustained" as to the allegations and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 88 that Officer McKnight's allegedly

unconstitutional actions on June 1, 1993, "are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence." The City denies any remaining allegations in paragraph 88.

89.     It has been alleged that, on January 22, 1996, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER**:     The City admits Officer McKnight was the subject of a complaint arising from an incident that occurred on January 22, 1996. The City states that there was a finding of "not sustained" as to those allegations and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 89 that Officer McKnight's allegedly unconstitutional actions on January 22, 1996, "are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence." The City denies any remaining allegations in paragraph 89.

90.     Defendant Officer James McKnight has been the subject of additional complaints, 28 in total, which puts him in the top 15% of all Chicago Police Officers in terms of total complaints.

**ANSWER**:     The City admits Officer McKnight has been the subject of approximately 28 complaints of alleged misconduct over the course of his career. The City denies that a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 90.

91.     **Defendant Detective Edward Winstead:** It has been alleged that, on March 17, 1991, Defendant Detective Edward Winstead, together with other Chicago Police Department officers and detectives, entered an apartment without consent or a search warrant, and proceeded to conduct an unconstitutional search thereof. Winstead was not subjected to any discipline or otherwise

held accountable for this allegedly unconstitutional conduct. Winstead's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington.

**ANSWER**:     The City admits Detective Winstead was the subject of a complaint arising from an incident that occurred on March 17, 1991, states there was a finding of "not sustained" as to those allegations, and no disciplinary action was taken. The City denies that a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 91 that Detective Winstead's allegedly unconstitutional actions on March 17, 1991, "are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington." The City denies any remaining allegations in paragraph 91.

92.     In 1994, Detective Winstead was named as a defendant in federal civil lawsuit, *Beamon v. Tock, et al.*, 94-CV-06551 (N.D. Ill), alleging that he coerced the false confession of the two plaintiffs. This case was settled by the defendants for an unknown amount. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged coercion tactics in *Beamon* are consistent with his coercion and/or manipulation of Melvin Jefferson's into giving a false statement implicating Jerry Herrington in the present matter.

**ANSWER**:     The City admits the existence of the lawsuit filed under the name *Beamon v. Tock, et al.*, 94-CV-06551 (N.D. Ill), in which Detective Winstead was a named defendant, refers to that lawsuit for its content, and denies all allegations in paragraph 92 to the contrary. The City admits that it settled the lawsuit and that Detective Winstead was dismissed with prejudice. The City denies that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City denies the settlement of that lawsuit is relevant to any issue in plaintiff's complaint. Upon information and belief, the City denies the allegations in paragraph 92 that Detective Winstead's alleged coercion tactics in *Beamon* "are consistent with his coercion and/or manipulation of Melvin

Jefferson's into giving a false statement implicating Jerry Herrington in the present matter." The City

denies any remaining allegations contained in paragraph 92.

93.    In 2003, Defendant Detective Winstead was named as a defendant in a federal civil lawsuit, *A.M. v. Cassidy, et al.*, 03-CV-0246 (N.D. Ill.), alleging that he falsely reported hearing A.M. tell his mother that he committed a murder, which was used against A.M. in a criminal prosecution ultimately leading to A.M.'s wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in *A.M.* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER**:    The City admits the existence of the lawsuit filed under the name *A.M. v. Cassidy, et al.*, 03-CV-0246 (N.D. Ill.), in which Detective Winstead was a named defendant, refers to

that lawsuit for its content, and denies all allegations in paragraph 93 to the contrary. The City admits

that it settled the lawsuit and that Detective Winstead was dismissed with prejudice. The City denies

that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred.

The City further denies the settlement of that lawsuit is relevant to any issue in plaintiff's complaint.

Upon information and belief, the City denies the allegations in paragraph 93 that Detective Winstead's

alleged fabrication of evidence in *A.M.* "is consistent with him fabricating a false statement from

Melvin Jefferson implicating Jerry Herrington in the present matter." The City denies any remaining

allegations contained in paragraph 93.

94.    In 2003, the Illinois Supreme Court found that Detective Winstead failed to properly Mirandize an individual who was illiterate and cognitively challenged. *People v. Braggs*, 209 Ill.2d. 492 (2003). Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's unconstitutional conduct in *Braggs* is consistent with his unconstitutional conduct in the present matter.

**ANSWER**:    The City states that this paragraph alleges, in part, a legal conclusion, in that it

attempts to describe a legal finding in *Braggs*, to which no answer is required. Should an answer be

required, the City admits the existence of the case of *People v. Braggs*, 209 Ill.2d 492 (2003), but the City

denies that the holding in *Braggs* remains good law because it relied on the case of *Alvarado v. Hickman*,

316 F.3d 841 (9th Cir. 2002), which was subsequently overturned by the United States Supreme Court

in *Yarborough v. Alvarado*, 541 U.S. 652, 655, 124 S.Ct. 2140, 2144, 158 L.Ed.2d 938, 946 (2004). *See, e.g.*, *People v. Croom*, 379 Ill. App. 3d 341, 350, 883 N.E.2d 681, 688 (2008) (finding *Yarborough* abrogated the Supreme Court's ruling in *Braggs*, including its reasoning that modification of the reasonable person standard was appropriate to account for the defendant's mental retardation). The City, therefore, denies any allegation in paragraph 94 that is premised on the *Braggs* decision. Further, upon information and belief, the City denies the allegations in paragraph 94 that Detective Winstead engaged in unconstitutional conduct in this case. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 94.

95.     In 2015, Detective Winstead was named as a defendant in a federal civil lawsuit, *Johnson v. Lutzow, et al.*, 15-CV-07177 (N.D. Ill.), alleging that he held the plaintiff in custody without probable cause, interrogated him without giving him *Miranda* warnings, fabricated statements the defendants falsely claimed were made by the plaintiff, fabricated police reports falsely implicating the plaintiff, and falsely testified against the plaintiff, all leading to his wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in *Johnson* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER**:     The City admits the existence of the lawsuit filed under the name *Johnson v. Lutzow, et al.*, 15-CV-07177 (N.D. Ill.), in which Detective Winstead was a named defendant, refers to that lawsuit for its content, and denies all allegations in paragraph 95 to the contrary. The City admits that it settled the lawsuit and that Detective Winstead was dismissed with prejudice. The City denies that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City further denies the settlement of that lawsuit is relevant to any issue in plaintiff's complaint. Upon information and belief, the City denies the allegations in paragraph 95 that Detective Winstead's alleged fabrication of evidence in *Johnson* "is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter." The City denies any remaining allegations contained in paragraph 95.

96.     In 2020, Detective Winstead was named as a defendant in two federal civil lawsuits, *Fulton v. Bartik, et al.*, 20-CV-3118 (N.D. Ill.) and *Mitchell v. Bartik, et al.*, 20-CV-3119 (N.D. Ill), alleging

that he fabricated a report falsely attributing a statement to a witness implicating one of the plaintiffs in a murder and that he participated in a conspiracy to deprive the plaintiffs of their constitutional rights. The *Fulton/Mitchell* case resulted in a $120,000,000 verdict. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence and participation in a conspiracy in *Fulton/Mitchell* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington and participating in a conspiracy to deprive Jerry Herrington of his constitutional rights in the present matter.

**ANSWER**: The City admits the existence of lawsuits filed under the names *Fulton v. Bartik, et al.*, 20-CV-3118 (N.D. Ill.) and *Mitchell v. Bartik, et al.*, 20-CV-3119 (N.D. Ill), in which Detective Winstead was a named defendant, refers to those lawsuits for their content, and denies all allegations in paragraph 96 to the contrary. The City states the jury verdicts and judgments in *Fulton* and *Mitchell* were entered in favor of Detective Winstead and against each respective plaintiff as to the claims asserted against Detective Winstead. The City denies that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. Upon information and belief, the City denies the allegations in paragraph 96 that Detective Winstead's alleged fabrication of evidence in *Fulton* and *Mitchell*, for which he was exonerated by the jury, "is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington and participating in a conspiracy to deprive Jerry Herrington of his constitutional rights in the present matter." The City denies any remaining allegations contained in paragraph 96.

97. **Defendant Detective Delores Myles:** In 1999, Detective Myles was named as a defendant in two civil lawsuits, one filed in state court and the other filed in federal court (*Mother v. Cassidy*, 99-CV-03259 (N.D. Ill.), involving the wrongful arrest and malicious prosecution of two young boys, ages 7 and 8, for the murder of an 11-year-old. Detective Myles was among several Chicago Police Department officers and detectives accused of coercing false confessions from the minor plaintiffs. Upon information and belief, this case settled for $6,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged coercion of a false confession in *Mother* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER**: The City admits the existence of the lawsuit filed under the name *Mother v. Cassidy*, 99-CV-03259 (N.D. Ill.), in which Detective Myles was a named defendant, refers to that

lawsuit for its content, and denies all allegations in paragraph 97 to the contrary. The City states the federal lawsuit was voluntarily dismissed. The City denies, upon information and belief, that Detective Myles was a named defendant in the related state court lawsuit. The City admits upon information and belief that the City settled the related state court lawsuit, but is without knowledge or information sufficient to form a belief as to the truth of the allegation that the state court case settled for $6,200,000. The City denies that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. Further, the City has denied, upon information and belief, the Defendant Officers' alleged misconduct, and it therefore denies the allegations in paragraph 97 that Detective Myles's alleged coercion of a false confession in *Mother* "is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter." The City denies any remaining allegations contained in paragraph 97.

98.     In 2011, Detective Myles was named as a defendant in a federal civil lawsuit, *Patterson v. Chicago, et al.*, 11-CV-7052 (N.D. Ill), alleging that she fabricated witness statements falsely implicating the plaintiff in a homicide. The case was settled for $4,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged fabrication of witness statements in *Patterson* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER**:     The City admits the existence of the lawsuit filed under the name *Patterson v. Chicago, et al.*, 11-CV-7052 (N.D. Ill), in which Detective Myles was a named defendant, refers to that lawsuit for its content, and denies all allegations in paragraph 98 to the contrary. The City admits that it settled the lawsuit and that Detective Myles was dismissed with prejudice. The City denies that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City further denies the settlement of that lawsuit is relevant to any issue in plaintiff's Complaint. Upon information and belief, the City denies the allegations in paragraph 98 that Detective Myles's alleged fabrication of witness statements in *Patterson* "is consistent with him fabricating a false statement from

Melvin Jefferson implicating Jerry Herrington in the present matter." The City denies any remaining allegations contained in paragraph 98.

99.     **Defendant Detective James R. Riley:** It has been alleged that on December 14, 1991, Defendant Detective James R. Riley physically abused a suspect in custody and forced him to sign a confession. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

**ANSWER**:     The City admits Detective Riley was the subject of a complaint arising from an incident that occurred on December 14, 1991, states there was a finding of "unfounded" as to the allegations, and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Upon information and belief, the City denies the premise of the allegation in paragraph 99 that Detective Riley's allegedly unconstitutional actions on December 14, 1991, which were unfounded, "is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him." The City denies any remaining allegations in paragraph 99.

100.     It has been alleged that, on August 18, 1992, Defendant Detective James R. Riley wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, falsified reports that the individual had committed a crime he did not commit, and falsely testified to a grand jury. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his interrogation of Jerry Herrington and his fabrication of reports falsely stating that Jerry confessed when he did not.

**ANSWER**:     The City states that it has been unable to locate a record showing that Detective Riley was the subject of a complaint arising from an incident that occurred on August 18, 1992. The City is, therefore, without knowledge or information sufficient at this time to form a belief as to the allegations in paragraph 100 as to what was alleged in the complaint arising from the incident on August 18, 1992, or as to whether there was any discipline or other action as a result of the complaint. The City denies a complaint alleging misconduct that results in the opening of a Complaint

36

Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Upon information and belief, the City denies the premise of the allegation in paragraph 100 that Detective Riley's allegedly unconstitutional actions on August 18, 1992, "are consistent with his interrogation of Jerry Herrington and his fabrication of reports falsely stating that Jerry confessed when he did not." The City denies any remaining allegations in paragraph 100.

101.     It has been alleged that, on July 11, 2001, Defendant Detective James R. Riley arrested an individual and took him to Area One, disregarded his request for a lawyer, and proceeded to physically and psychologically abuse the individual until he confessed. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his unconstitutional interrogation, physical abuse, and attempts to coerce a confession from Jerry Herrington in the present matter.

**ANSWER**:     The City admits Detective Riley was the subject of a complaint arising from an incident that occurred on July 11, 2001, states that there was a finding of "unfounded" as to the allegations and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Upon information and belief, the City denies the premise of the allegation in paragraph 101 that Detective Riley's allegedly unconstitutional actions on July 11, 2001, which were deemed unfounded, "is consistent with his unconstitutional interrogation, physical abuse, and attempts to coerce a confession from Jerry Herrington in the present matter." The City denies any remaining allegations in paragraph 101.

102.     It has been alleged that, on October 2, 2002, Defendant Detective James R. Riley arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Detective Riley was not even investigated because he was retired at the time the allegations were made. Riley's allegedly unconstitutional actions on this date are consistent with his unconstitutional interrogation of Jerry Herrington in the present matter.

**ANSWER**:     The City admits Detective Riley was the subject of a complaint arising from an incident that occurred on October 2, 2002, states there was a finding of "not sustained" as to those

allegations, and admits no disciplinary action was taken. The City denies a complaint alleging

misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and

of itself establishes that the alleged misconduct occurred. Upon information and belief, the City denies

the premise of the allegation in paragraph 102 that Detective Riley's allegedly unconstitutional actions

on October 2, 2002, which allegations were not sustained, "are consistent with his unconstitutional

interrogation of Jerry Herrington in the present matter." The City denies any remaining allegations in

paragraph 102.

103.    In 2003, Detective Riley was named as a defendant in a federal civil rights lawsuit,
*Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable
cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours
while he was interrogated and physically abused, and ultimately coerced a false confession from the
plaintiff notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder.
Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted.
The defendants settled this case for $370,000. Upon information and belief, Riley was not subjected
to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's
unconstitutional conduct in *Pernell* is strikingly similar to his unconstitutional conduct here, where he
interrogated Jerry Herrington while handcuffed to a wall without letting him call his grandmother or
securing a parent, guardian, or youth officer, physically abused Jerry Herrington after he told him that
he knew nothing of Vera Brown's murder, and then fabricated reports that Jerry confessed when he
did not do so.

**ANSWER**:    The City admits the existence of the lawsuit filed under the name *Pernell v.*

*Farley, et al.*, 03-CV-5316 (N.D. Ill.), in which Detective Riley was a named defendant, refers to that

lawsuit for its content, and denies all allegations in paragraph 103 to the contrary. The City admits that

it settled the lawsuit and that Detective Riley was dismissed with prejudice. The City denies that a

lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City

further denies the settlement of that lawsuit is relevant to any issue in plaintiff's complaint. The City

denies, upon information and belief, the allegations in paragraph 103 that are premised on plaintiff's

allegations of misconduct against the Defendant Officers and denies any remaining allegations

contained in paragraph 103.

104.    **Defendant Detective Jerome Doroba:** It has been alleged that on December 14,
1991, Defendant Detective Jerome Doroba physically abused a suspect in custody and forced him to

sign a confession. Doroba was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Doroba's allegedly unconstitutional conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

**ANSWER**:      The City admits Detective Doroba was the subject of a complaint arising from an incident that occurred on December 14, 1991, states that there was a finding of "not sustained" as to those allegations, and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 104 that Detective Doroba's allegedly unconstitutional conduct on December 14, 1991, which allegations were not sustained, "is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him." The City denies any remaining allegations in paragraph 104.

105.      **Defendant Officer Thomas Kelly:** It has been alleged that, on October 2, 2002, Defendant Officer Thomas Kelly arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly was not even investigated because he was retired at the time the allegations were made. Kelly's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington in the present matter.

**ANSWER**:      The City admits Officer Kelly was the subject of a complaint arising from an incident that occurred on October 2, 2002, states there was a finding of "not sustained" as to those allegations, and admits no disciplinary action was taken. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies premise of the allegation in paragraph 105 that Officer Kelly's allegedly unconstitutional actions on October 2, 2002, which allegations were not sustained, "are consistent with his

unconstitutional conduct with respect to the investigation of Jerry Herrington in the present matter." The City denies any remaining allegations in paragraph 105.

106.    In 2003, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Pernell* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER**:    The City admits the existence of the lawsuit filed under the name *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), in which Officer Kelly was a named defendant, refers to that lawsuit for its content, and denies all allegations in paragraph 106 to the contrary. The City admits that it settled the lawsuit and that Officer Kelly was dismissed with prejudice. The City further denies that a lawsuit alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City denies the settlement of that lawsuit is relevant to any issue in plaintiff's complaint. The City denies, upon information and belief, the allegations in paragraph 106 that are premised on plaintiff's allegations of misconduct against the Defendant Officers and denies any remaining allegations contained in paragraph 106.

107.    In 2008, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Williams v. Chicago, et al.*, 08-CV-2936 (N.D. Ill), alleging that he conspired with other officers to cover up and justify the wrongful shooting of the plaintiff by another police officer. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Williams* in covering up and falsifying evidence is consistent with his conduct here in creating a false report to support the unconstitutional arrest, prosecution, and conviction of Jerry Herrington.

**ANSWER**:    The City admits the existence of the lawsuit filed under the name *Williams v. Chicago, et al.*, 08-CV-2936 (N.D. Ill), in which Officer Kelly was a named defendant, refers to that lawsuit for its content, and denies all allegations in paragraph 107 to the contrary. The City admits that it settled the lawsuit and that Officer Kelly was dismissed with prejudice. The City denies that a lawsuit

alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City denies the settlement of that lawsuit is relevant to any issue in plaintiff's complaint. The City denies, upon information and belief, the allegations in paragraph 107 that are premised on plaintiff's allegations of misconduct against the Defendant Officers and denies any remaining allegations contained in paragraph 107.

108.     In 2014, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Moody v. Chicago, et al.*, 13-CV-8809 (N.D. Ill.), alleging that he conspired with other officers to deprive the plaintiff of his constitutional rights. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Moody* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER**:     The City denies the existence of a lawsuit filed under the name and case number of *Moody v. Chicago, et al.*, 13-CV-8809 (N.D. Ill.). The City admits the existence of a lawsuit filed under the name and case number of *Moody v. Chicago, et al.*, 14-CV-8809 (N.D. Ill.), in which Officer Kelly was a named defendant, refers to that lawsuit for its content, and denies all allegations in paragraph 108 to the contrary. The City admits that it settled the lawsuit and that Officer Kelly was dismissed with prejudice. The City denies that a complaint alleging misconduct in and of itself establishes that the alleged misconduct occurred. The City denies the settlement of that lawsuit is relevant to any issue in plaintiff's Complaint. The City denies, upon information and belief, the allegations in paragraph 108 that are premised on plaintiff's allegations of misconduct against the Defendant Officers and denies any remaining allegations contained in paragraph 108.

109.     **Officer James Ward:** It has been alleged that, on August 18, 1992, Defendant Detective James E. Ward wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, and conducted a search of the individual's apartment without his consent or a search warrant. Ward was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Ward's allegedly unconstitutional actions described immediately above are consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER**:     The City states that it has been unable to locate a record showing that Defendant Officer Ward was the subject of a complaint arising from an incident that occurred on

41

August 18, 1992. The City is, therefore, without knowledge or information sufficient at this time to form a belief as to the allegations in paragraph 109 as to what was alleged in the complaint arising from the incident on August 18, 1992 or as to whether there was any discipline or other action as a result of the complaint. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation in and of itself establishes that the alleged misconduct occurred. Further, upon information and belief, the City denies the premise of the allegation in paragraph 109 that Officer Ward's allegedly unconstitutional actions on August 18, 1992, "are consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights." The City denies any remaining allegations in paragraph 109.

110. Upon information and belief, the Defendant Officers and Detectives have engaged in additional unconstitutional conduct consistent with their respective actions here, which will be the subject of discovery.

**ANSWER**: The City has denied, upon information and belief, the misconduct alleged in plaintiff's complaint against the Defendant Officers, and it therefore denies the allegations in paragraph 110 that are premised on such alleged misconduct. As to the remainder of the allegations, the City objects to plaintiff's group pleading and reference to all "Defendant Officers and Detectives" without identifying specific individuals or conduct, which renders the paragraph vague and indefinite. Subject to and without waiving the foregoing objection, upon information and belief, the City denies the remaining allegations in paragraph 110.

<u>**COUNT 1**</u>
**42 U.S.C. § 1983**
**Fabrication of Evidence Through Witness Coercion and Manipulation**
**vs. Defendant Detectives Winstead and Myles**

111. Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:     The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 111 as though fully set forth herein.

112.     As more fully described above, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

**ANSWER**:     To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. Upon information and belief, the City denies all remaining allegations contained in paragraph 112.

113.     Among other things, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another:

(a)     Manipulated and/or coerced Melvin Jefferson into identifying and describing a second offender;

(b)     Manipulated and/or coerced Melvin Jefferson into identifying Jerry Herrington as the shooter of Vera Brown at trial.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 113, including the subparagraphs therein.

114.     Absent this unconstitutional conduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by Defendant Detectives Winstead and Myles, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 114.

115.     The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 115.

43

116.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER**:    This paragraph states a legal conclusion to which no answer is required. Subject to and without waiving the foregoing objection, the City denies any allegation in paragraph 116 that is inconsistent with the law. Upon information and belief, the City denies the remaining allegations contained in paragraph 116.

117.    Through this misconduct, the Defendant Detectives Winstead and Myles directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 117.

118.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 118.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 1, and for its costs and such further relief as this Court deems just.

### COUNT 2
### 42 U.S.C. § 1983
### Fabrication of Evidence Through False Reporting
### vs. Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti

119.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**: The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 119 as though fully set forth herein.

120. As more fully described above, Defendant Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. Upon information and belief, the City denies the remaining allegations in paragraph 120.

121. Among other things, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified the August 23, 1991 police report claiming that they received a tip describing Jerry Herrington as being involved in Vera Brown's murder.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 121.

122. Additionally, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified (inconsistent) reports that there was probable cause to arrest Jerry Herrington when there was not.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 122.

123. Additionally, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another, falsified reports concerning Melvin Jefferson's purported statement.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 123.

124. Additionally, Defendant Officers Kelly and Ward, acting individually, jointly, and in conspiracy with one another, falsified the July 2, 1991 General Progress Report claiming that they received information identifying "Jerry" as being involved in Vera Brown's murder.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 124.

125. Additionally, Defendant Detectives Riley and Doroba, together with Defendant ASA Toffenetti, acting individually, jointly, and in conspiracy with one another, falsified reports that Jerry Herrington confessed to being involved in Vera Brown's murder when he gave no such confession.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies, on information and belief, the remaining allegations in paragraph 125.

126. At the time of ASA Toffenetti's conduct as described herein, he was acting in a fact-finding and investigative capacity and, therefore, is not entitled absolute, prosecutorial, or any other type of immunity.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Further, the paragraph states legal conclusions to which no response is required. Subject to and without waiving the foregoing and to the extent an answer is required, the City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 126.

127. Absent the misconduct described under this count, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by the Defendants, as described herein, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 127.

128. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER**:     The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 128.

129.     At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER**:     This paragraph states a legal conclusion to which no answer is required. Subject to and without waiving the foregoing objection, the City denies any allegation in paragraph 129 that is inconsistent with the law. Further, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies the remaining allegations in paragraph 129, which are based on the premise that the alleged misconduct occurred. The City denies any remaining allegations in paragraph 129.

130.     Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER**:     The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 130.

131.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:     The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 131.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 2, and for its costs and such further relief as this Court deems just.

### COUNT 3
### 42 U.S.C. § 1983
### *Brady* Violations
### vs. Defendant CPD Officers and Detectives

132.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:     The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 132 as though fully set forth herein.

133.     As more fully described above, the Defendant CPD Officers and Detectives, individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Plaintiff Jerry Herrington of his constitutional rights to a fair trial and due process by withholding and suppressing exculpatory evidence from Jerry Herrington, his counsel, and the prosecution.

**ANSWER**:     To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. Upon information and belief, the City denies the allegations contained in paragraph 133.

134.     As set forth above, the Defendant CPD Officers and Detectives withheld from Jerry Herrington and the prosecution exculpatory evidence including:

 (a)     that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

 (b)     that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

 (c)     that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

 (d)     the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

(e)    that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

(f)    that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

(g)    that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip identifying someone other than Jerry Herrington as being the shooter;

(h)    that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

(i)    that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder;

(j)    that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. Upon information and belief, the City denies the allegations contained in paragraph 134, including all subparagraphs therein.

135.    The aforementioned evidence is exculpatory as it tends to prove Jerry Herrington's innocence and was therefore required to be produced to Jerry Herrington and his counsel. None of this evidence was so produced.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. Upon information and belief, the City denies the allegations contained in paragraph 135.

136.    The misconduct described above was objectively unreasonable and was undertaken intentionally, with malice, willful indifference to Jerry Herrington's constitutional rights and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 136.

137.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER**:     This paragraph states a legal conclusion to which no answer is required. Subject to and without waiving the foregoing objection, the City denies any allegation in paragraph 137 that is inconsistent with the law. Further, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies the remaining allegations in paragraph 137, which are based on the premise that the alleged misconduct occurred. The City denies any remaining allegations in paragraph 137.

138.     Through this misconduct, the Defendant CPD Officers and Detectives directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 138.

139.     Without the misconduct of withholding exculpatory evidence, Jerry Herrington would not have been prosecuted or convicted.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 139.

140.     By withholding exculpatory evidence from Jerry Herrington, the Defendant CPD Officers and Detectives deprived Jerry Herrington of his constitutional right to a fair trial in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 140.

141.     Absent this misconduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct of the Defendant CPD Officers and Detectives, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 141.

142.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated

and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 142.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 3, and for its costs and such further relief as this Court deems just.

### COUNT 4
### 42 U.S.C. § 1983
### Unlawful Arrest and Detention
### vs. Defendant CPD Officers and Detectives

143.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:    The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 143 as though fully set forth herein.

144.    As more fully described above, the Defendant CPD Officers and Detectives, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, accused Jerry Herrington of criminal activity and exerted influence to initiate, continue, and perpetuate his unlawful detention without any probable cause, by using evidence which they knew to be false, and in spite of the fact that they knew Jerry Herrington was innocent, in violation of his constitutional rights.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 144.

145.    In so doing, the Defendant CPD Officers and Detectives caused Jerry Herrington to be unlawfully detained and deprived of his liberty without probable cause.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 145.

146.    Absent this misconduct, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted of this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by the Defendant CPD Officers and Detectives, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was detained and imprisoned without probable cause.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 146.

147.    The Defendant CPD Officers' and Detectives' misconduct was objectively unreasonable, and they acted intentionally and with willful indifference to Jerry Herrington's constitutional rights and innocence.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 147.

148.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER**:    This paragraph states a legal conclusion to which no answer is required. Subject to and without waiving the foregoing objection, the City denies any allegation in paragraph 148 that is inconsistent with the law. Further, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies, on information and belief, the allegations in paragraph 148 that are based on the premise that the alleged misconduct occurred. The City denies any remaining allegations in paragraph 148.

149.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 149.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 4, and for its costs and such further relief as this Court deems just.

## COUNT 5
### 42 U.S.C. § 1983
### Conspiracy to Violate Constitutional Rights
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

150.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:    The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 150 as though fully set forth herein.

151.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators not yet known to Jerry Herrington, reached an agreement among themselves to coerce, induce, and fabricate false evidence in the form of witness statements, a false confession, identifications, and testimony for the purpose of framing Jerry Herrington for a crime he did not commit.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 151.

152.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators, not yet known to Jerry Herrington, reached an agreement among themselves to deprive Jerry Herrington of material exculpatory evidence and information to which he was lawfully entitled, and to conceal their misconduct from Jerry Herrington, all in violation of Jerry Herrington's constitutional rights as described above.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 152.

153.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, acting in concert with unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

**ANSWER**:  The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 153.

154.  In furtherance of that conspiracy, each of the co-conspirators committed overt acts and was a willful participant in joint activity.

**ANSWER**:  The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 154.

155.  The misconduct described above was objectively unreasonable and was undertaken intentionally and with willful indifference to Jerry Herrington's constitutional rights.

**ANSWER**:  The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 155.

156.  At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER**:  This paragraph states a legal conclusion to which no answer is required. Subject to and without waiving the foregoing objection, the City denies any allegation in paragraph 156 that is inconsistent with the law. Further, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies, on information and belief, the remaining allegations in paragraph 156, which are based on the premise that the alleged misconduct occurred. The City denies any remaining allegations in paragraph 156.

157.  Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER**:  The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 157.

158.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 158.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 5, and for its costs and such further relief as this Court deems just.

### COUNT 6
### 42 U.S.C. §§ 1983, 1986
### Failure to Intervene
### vs. Defendant CPD Officers and Detectives

159.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:    The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 159 as though fully set forth herein.

160.    In the manner described above, the Defendant CPD Officers and Detectives, together with other CPD officers, stood by without intervening to prevent violations of Jerry Herrington's constitutional rights, even though they had the ability and opportunity to do so.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 160.

161.    The conduct of the Defendant CPD Officers and Detectives was objectively unreasonable.

**ANSWER**:    Upon information and belief, the City denies the allegations contained in paragraph 161.

162.     The Defendant CPD Officers and Detectives acted intentionally and with willful indifference to Jerry Herrington's constitutional rights.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 162.

163.     The Defendant CPD Officers and Detectives, knowing of the conspiracy to frame Jerry Herrington, and having the power to prevent or aid in preventing the commission of the acts in furtherance of that conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 163.

164.     At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER**:     This paragraph states a legal conclusion to which no answer is required. Subject to and without waiving the foregoing objection, the City denies any allegation in paragraph 164 that is inconsistent with the law. Further, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies, on information and belief, the remaining allegations in paragraph 164, which are based on the premise that the alleged misconduct occurred. The City denies any remaining allegations in paragraph 164.

165.     Through this misconduct, the Defendant CPD Officers and Detectives directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 165.

166.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 166.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 6, and for its costs and such further relief as this Court deems just.

## COUNT 7
### 42 U.S.C. §§ 1983
### Malicious Prosecution
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

167.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:    The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 167 as though fully set forth herein.

168.    The Defendants herein initiated criminal proceedings against Jerry for the murder of Vera Brown, for which Jerry was convicted.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 168.

169.    At no point in time, was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 169.

170.    As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 170.

171.    On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

**ANSWER**:    The City admits on information and belief plaintiff' criminal conviction was vacated on March 4, 2025. The City denies that the criminal proceedings were terminated in a manner indicative of plaintiff's innocence and denies the remaining allegations as phrased in paragraph 171.

172.    The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 172.

173.    The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 173.

174.    The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime he was accused of.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 174.

175.    This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 175.

176.     The Defendant CPD Officers and Detectives and ASA Toffenetti acted under the color of state law to deprive Jerry Herrington of his rights under the U.S. Constitution. Accordingly, the Defendant CPD Officers and Detectives and ASA Toffenetti violated 42 U.S.C. § 1983.

**ANSWER**:     The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. The City denies, upon information and belief, that the Defendant Officers deprived plaintiff of his rights under the U.S. Constitution and denies that the Defendant Officer violated 42 U.S.C. § 1983. The City admits that at various times alleged in the complaint, the Defendant Officers would have been acting under color of law as employees of the CPD in the performance of the lawful duties of their respective offices.

177.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:     The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 177.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 7, and for its costs and such further relief as this Court deems just.

**<u>COUNT 8</u>**
**42 U.S.C. § 1983**
***Monell* Liability**
**vs. City of Chicago**

178.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 177 as if fully set forth herein.

**ANSWER**:     The City adopts and restates its answers and responses to paragraphs 1 through 177 of plaintiff's complaint as and for its answer and response to paragraph 178 as though fully set forth herein.

179.     The City of Chicago and CPD, through their official policies and widespread practices and customs, have been responsible for dozens of criminal cases where innocent men and women have been wrongfully convicted of crimes they did not commit.

**ANSWER**:     The City denies the allegations contained in paragraph 179.

180.     Since the 1980s, there have been more than 100 cases where CPD police officers and detectives fabricated false evidence and/or suppressed exculpatory evidence in order to secure convictions of innocent men and women.

**ANSWER**:     The City denies the allegations contained in paragraph 180.

181.     These cases include many where CPD police officers and detectives employed the same unconstitutional tactics that they used against Jerry Herrington here, including fabricating reports and other evidence, manipulating and coercing witnesses in order to influence testimony and identifications, concealing, burying, and/or failing to disclose exculpatory evidence, and making up confessions that did not take place. Such tactics have been — and were, in this case — employed without probable cause and without regard for the person's guilt or innocence.

**ANSWER**:     The City denies the allegations contained in paragraph 181.

182.     At all material times, the Defendant CPD Officers and Detectives were clothed with the authority of state law and acting under color and authority of state law as agents and employees of CPD.

**ANSWER**:     The City objects to this paragraph, which consists of the blanket assertion that each of the Defendant Officers was acting under color and authority of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, paragraph 182 asserts legal conclusions to which no answer is required. Should an answer be required, the City admits Defendant Officers were police officers employed by the CPD, and on information and belief, the City admits the named individual Defendant Officers would have been acting within the scope of employment in the performance of the lawful duties of their respective office when investigating the Vera Brown murder.

183.     The Defendant CPD Officers and Detectives committed and caused the commission of the above alleged constitutional violations pursuant to one or more *de facto* policies, practices, and/or customs of the City of Chicago.

**ANSWER**:     The City denies the allegations contained in paragraph 183.

184.     At the time of Jerry Herrington's arrest, the City of Chicago had *de facto* policies or practices that included: (a) procuring false witness testimony; (b) concealing exculpatory evidence; (c) manipulating witnesses to obtain false identifications from witnesses; (d) manipulating witnesses to influence their testimony; (e) making up false confessions; (f) arresting individuals without probable cause; (g) falsifying reports and fabricating evidence to support their unconstitutional conduct; and (h) using these tactics to secure the arrest, prosecution, and conviction of a person without regard to their actual guilt or innocence.

**ANSWER**:     The City denies the allegations contained in paragraph 184.

185.     At all relevant times, there was a widespread custom and practice of coercing, manipulating, threatening, and pressuring witnesses to make false witness statements, and concealing exculpatory evidence.

**ANSWER**:     The City denies the allegations contained in paragraph 185.

186.     At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely manufactured evidence against innocent persons by coercing, manipulating, and threatening witnesses to make false statements implicating innocent persons knowing full well that those statements were false.

**ANSWER**:     The City denies the allegations contained in paragraph 186.

187.     As a matter of widespread custom and practice, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, fabricated narratives that were fed to vulnerable witnesses who then adopted those fabricated narratives as their own for the purpose of wrongly convicting an innocent person.

**ANSWER**:     The City denies the allegations contained in paragraph 187.

188.     At all relevant times, and as set forth above, members of the CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically suppressed exculpatory and/or impeaching material in violation of *Brady*.

**ANSWER**:     The City denies the allegations contained in paragraph 188.

189.     Consistent with the *de facto* policies and practices described in the preceding paragraphs, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, fabricated evidence and procured false statements from witnesses knowing full well their statements were false and would lead to the wrongful conviction of Jerry Herrington.

**ANSWER**:     The City denies the allegations contained in paragraph 189.

190.     At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically suppressed exculpatory and/or impeaching material by intentionally concealing reports, memos, and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these files were also withheld

from the State's Attorney's Office and from criminal defendants and were not maintained as part of the official file.

**ANSWER**:    The City denies the allegations contained in paragraph 190.

191.    Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, concealed exculpatory evidence from Jerry Herrington.

**ANSWER**:    The City denies the allegations contained in paragraph 191.

192.    At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely manipulated, tricked, lied to, and misled witnesses for the purpose of influencing their testimony to conform to narratives fabricated by the officers themselves. As a matter of widespread practice and custom, these tactics were also used to induce false identifications of suspects.

**ANSWER**:    The City denies the allegations contained in paragraph 192.

193.    Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, manipulated, tricked, and improperly coerced false statements and identifications given by Melvin Jefferson.

**ANSWER**:    The City denies the allegations contained in paragraph 193.

194.    At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically reported and testified to purported confessions from criminal suspects that did not in actuality occur.

**ANSWER**:    The City denies the allegations contained in paragraph 194.

195.    Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, reported and testified that Jerry Herrington confessed to the Vera Brown murder when he did not do so.

**ANSWER**:    The City denies the allegations contained in paragraph 195.

196.    At all relevant times, as set forth above, members of CPD, including but not limited to the Defendant CPD Officers and Detectives, routinely and systematically detained and arrested individuals, particularly at the Dearborn Homes, without probable cause.

**ANSWER**:    The City denies the allegations contained in paragraph 196.

197.    Consistent with the *de facto* municipal policies and practices described in the preceding paragraph, employees of the City of Chicago, including but not limited to the Defendant CPD Officers and Detectives, detained and arrested Jerry Herrington without probable cause.

**ANSWER**: The City denies the allegations contained in paragraph 197.

198. At all relevant times, the City of Chicago and CPD failed to seriously discipline any CPD officers for any misconduct relating to the investigation of and/or involvement with charging innocent persons with serious crimes.

**ANSWER**: The City denies the allegations contained in paragraph 198.

199. Prior to and during 1991 (the year in which Jerry Herrington was falsely charged with the crimes at issue here), the City of Chicago operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct. At that time, the Chicago Police Office of Professional Standards almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. Moreover, the Chicago police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

**ANSWER**: The City denies the allegations contained in paragraph 199.

200. As a matter of both policy and practice, municipal policymakers and department supervisors condoned and facilitated a code of silence within CPD. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the same type of misconduct at issue here.

**ANSWER**: The City denies the allegations contained in paragraph 200.

201. As a result of the City of Chicago's established practices and *de facto* policies of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the CPD, CPD officers, including but not limited to the Defendant CPD Officers and Detectives, came to believe that they can violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of CPD acted with impunity when they violated the constitutional and civil rights of citizens.

**ANSWER**: The City denies the allegations contained in paragraph 201.

202. The City of Chicago and CPD failed in 1991, and the years before and after, to properly train, supervise, discipline, monitor, or otherwise control police officers engaged in police misconduct, particularly officers such as Officers Brandon, McKnight, Kelly, and Ward, and Detectives Winstead, Myles, Riley, and Doroba, here, who were repeatedly accused of police misconduct, making false arrests, manipulating witnesses into giving false statements and identifications, destroying or withholding evidence, engaging in physical abuse during custodial interrogations, fabricating police reports, providing false testimony, and otherwise engaging in malicious prosecutions and wrongful convictions.

**ANSWER**: The City denies the allegations contained in paragraph 202.

203. The need to properly train, supervise, discipline, monitor, or otherwise control police officers engaged in this type of conduct was and remains obvious.

**ANSWER**: The City objects to the allegations in this paragraph as vague as to the phrase "police officers engaged in this type of conduct." Further, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies the allegations in paragraph 203 that are based on the premise that the alleged misconduct occurred.

204. By failing to properly train, supervise, discipline, monitor, or otherwise control police officers such as the Defendant CPD Officers and Detectives, including specifically, Officers Brandon, McKnight, Kelly, and Ward, and Detectives Winstead, Myles, Riley, and Doroba, the City of Chicago and CPD effectively condoned, ratified, and sanctioned the kind of misconduct that the Defendant CPD Officers and Detectives committed against Jerry Herrington in this case.

**ANSWER**: The City denies the allegations contained in paragraph 204.

205. The City of Chicago and CPD routinely failed to provide adequate training to CPD officers and detectives with deliberate indifference to the constitutional rights of others. That includes, but is not limited to, failures to provide adequate training:

  (a)  to conduct constitutionally valid identification procedures;
  (b)  to disclose exculpatory evidence;
  (c)  to report only accurate and truthful information;
  (d)  to refrain from physical and psychological, and coercive and manipulative conduct, in relation to suspects and witnesses;
  (e)  to not fabricate evidence or testimony;
  (f)  as to the risk of wrongful convictions and the steps that can be taken to minimize that risk;
  (g)  that the truth should drive investigations, and not the desire to close cases; and
  (h)  that misconduct by CPD officers and detectives and others in the criminal justice system, including State's Attorneys, must be reported.

**ANSWER**: The City denies the allegations contained in paragraph 205, including all subparagraphs therein.

206. The failures to train as described herein existed at the time of the events giving rise to this lawsuit and resulted in the alleged constitutional violations committed by Defendants that caused Jerry Herrington to be wrongfully charged, prosecuted, and convicted of a crime he did not commit.

**ANSWER**: The City denies the allegations contained in paragraph 206.

207. The City of Chicago and CPD failed to act to remedy the patterns of abuse described above, despite actual knowledge of the pattern of misconduct, thereby perpetuating the unlawful practices and creating a *de facto* policy condoning the misconduct at issue here.

**ANSWER**: The City denies the allegations contained in paragraph 207.

208. These *de facto* policies and practices described above were consciously approved by the City of Chicago and CPD policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER**: The City denies the allegations contained in paragraph 208.

209. The actions of the Defendant CPD Officers and Detectives were done pursuant to one or more interrelated *de facto* policies, practices, and/or customs of the City of Chicago and CPD which were ratified by policymakers for the City of Chicago and CPD with final policymaking authority. These *de facto* policies and practices include:

    (a)    conducting physically and psychologically, illegal, or improperly coercive interrogations of witnesses to obtain false statements and wrongful convictions;

    (b)    manufacturing and fabricating false witness and suspect statements and manipulating and lying to witnesses to influence unreliable and inaccurate testimony;

    (c)    covering up the true nature of witness interviews and/or interrogations;

    (d)    suppressing exculpatory evidence;

    (e)    filing false police reports and giving false statements and testimony about such false reports to support false charges and wrongful convictions;

    (f)    fabricating evidence to support false charges and wrongful convictions; and

    (g)    lying about police misconduct during investigations of the same and to cover up the true nature of police misconduct.

**ANSWER**: The City denies the allegations contained in paragraph 209, including all subparagraphs therein.

210. The policies and practices described above were maintained and implemented by the City of Chicago and CPD with deliberate indifference to Jerry Herrington's constitutional rights.

**ANSWER**: The City denies the allegations contained in paragraph 210.

211. The aforementioned *de facto* policies, practices, and/or customs of the City of Chicago and CPD were the moving force behind the Defendant CPD Officers and Detectives depriving Jerry Herrington of his constitutional rights.

**ANSWER**: The City denies the allegations contained in paragraph 211.

212. These patterns and practices were so widespread, permanent, and well-settled as to constitute a custom with the force of law.

**ANSWER**: The City denies the allegations contained in paragraph 212.

213. These patterns and practices permeate a critical mass of the institutional body of the City of Chicago and its Police Department.

**ANSWER**: The City denies the allegations contained in paragraph 213.

214. It was obvious that these patterns and practices would lead to constitutional violations.

**ANSWER**: The City denies the allegations contained in paragraph 214.

215. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**: The City denies the allegations contained in paragraph 215.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 8, and for its costs and such further relief as this Court deems just.

**COUNT 9**
**State Law Malicious Prosecution**
**vs. Defendant CPD Officers and Detectives and ASA Toffenetti**

The City is not a party defendant from which plaintiff seeks relief in Count 9. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff re-alleges and incorporates these paragraphs in other counts against the City.

216. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**: The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 216 as though fully set forth herein.

217. The Defendants herein initiated criminal proceedings against Jerry Herrington for the murder of Vera Brown, for which Jerry Herrington was convicted.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. The City denies all remaining allegations contained in paragraph 217.

218. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 218.

219. As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 219.

220. On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

**ANSWER**: The City denies the allegations contained in paragraph 220.

221. The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 221.

222. The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 222.

223. The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime he was accused of.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 223.

224. This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 224.

225. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 225.

## COUNT 10
## Intentional Infliction of Emotional Distress
## vs. Defendant CPD Officers and Detectives and ASA Toffenetti

The City is not a party defendant from which plaintiff seeks relief in Count 10. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff re-alleges and incorporates these paragraphs in other counts against the City.

226.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:    The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 226 as though fully set forth herein.

227.    The acts and conduct of the Defendant CPD Officers and Detectives and ASA Toffenetti as set forth above were extreme and outrageous. The Defendant CPD Officers and Detectives and ASA Toffenetti intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Jerry Herrington.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 227.

228.    The actions and conduct by the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused severe emotional distress to Jerry Herrington and thereby constituted intentional infliction of emotional distress.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 228.

229.    The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 229.

230.     As a direct and proximate result of the wrongful acts committed by the Defendant CPD Officers and Detectives and ASA Toffenetti, Jerry Herrington suffered injuries, including but not limited to emotional distress.

**ANSWER**:     The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 230.

**COUNT 11**
**Willful and Wanton Conduct**
**vs. Defendant CPD Officers and Detectives**

The City is not a party defendant from which plaintiff seeks relief in Count 11. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff re-alleges and incorporates these paragraphs in other counts against the City.

231.     Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:     The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 231 as though fully set forth herein.

232.     At all relevant times, the Defendant CPD Officers and Detectives had a duty to refrain from willful and wanton conduct.

**ANSWER**:     Paragraph 232 asserts a legal conclusion to which no response is required. To the extent a response is deemed necessary, the City admits whatever duty of care is imposed by law.

233.     Notwithstanding, the Defendant CPD Officers and Detectives acted willfully and wantonly through a course of conduct, as more fully described above, that showed an utter indifference to, or conscious disregard of Jerry Herrington's rights.

**ANSWER**:     Upon information and belief, the City denies the allegations contained in paragraph 233.

234.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature;

humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**: Upon information and belief, the City denies the allegations contained in paragraph 234.

## COUNT 12
### Civil Conspiracy
### vs. Defendant CPD Officers and Detectives and ASA Toffenetti

The City is not a party defendant from which plaintiff seeks relief in Count 12. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff re-alleges and incorporates these paragraphs in other counts against the City.

235. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**: The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 235 as though fully set forth herein.

236. As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti, acting in concert with one another and other co-conspirators, conspired to accomplish an unlawful purpose by unlawful means.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 236.

237. In furtherance of the conspiracy, the Defendant CPD Officers and Detectives and ASA Toffenetti committed overt acts and were otherwise willing participants in joint activity.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 237.

238. The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 238.

239. The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Toffenetti. Upon information and belief, the City denies the allegations contained in paragraph 239.

## COUNT 13
### *Respondeat Superior*
### vs. City of Chicago, Cook County, and Chicago Housing Authority

240. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**: The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 240 as though fully set forth herein.

241. When they committed the acts alleged in this Complaint, the Defendant CPD Officers and Detectives were members and agents of the Chicago Police Department, an agency of the City of Chicago, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER**: The City objects to this paragraph, which consists of the blanket assertion that each of the Defendant Officers was acting within the scope of his employment in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, paragraph 241 asserts legal conclusions to which no answer is required. Should an answer be required, the City admits Defendant Officers were police

officers employed by the CPD, and on information and belief, the City admits the named individual Defendant Officers would have been acting within the scope of employment in the performance of the lawful duties of their offices when investigating the Vera Brown murder. In further response, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies, on information and belief, the remaining allegations contained in paragraph 241, which are based on the premise that the alleged misconduct occurred

242.    Defendant City of Chicago is liable as a principal for all torts committed by its agents.

**ANSWER**:    The City denies the allegations contained in paragraph 242.

243.    Alternatively, Defendants Officers Brandon and McKnight were employed by the Chicago Housing Authority and, at all relevant times, acting within the course and scope of their employment.

**ANSWER**:    The City admits Defendant Officers Brandon and McKnight were employed by the CPD during the course of the investigation of the Vera Brown murder and denies any allegation in paragraph 243 that is inconsistent therewith. The City further denies liability to plaintiff for any of the claims and/or damages asserted in plaintiff's complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 243.

244.    Defendant Chicago Housing Authority is liable as a principal for all torts committed by its agents.

**ANSWER**:    The City denies the allegations contained in paragraph 244.

245.    When he committed the acts alleged in this Complaint, Defendant ASA Toffenetti was an employee and agent of Cook County and the Cook County State's Attorney's Office, acting at all relevant times within the scope of his employment.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph, as they are asserted against Defendant Cook County.

246.    Defendant Cook County is liable as principal for all torts committed by its agents.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph, as they are asserted against Defendant Cook County.

247.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER**:    The City makes no answer or response to the allegations of this paragraph to the extent they are asserted against Defendant Chicago Housing Authority or Cook County. The City denies all remaining allegations in paragraph 247.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 13, and for its costs and such further relief as this Court deems just.

## COUNT 14
### Indemnification
### vs. City of Chicago, Cook County, and Chicago Housing Authority

248.    Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER**:    The City adopts and restates its answers and responses to paragraphs 1 through 110 of plaintiff's complaint as and for its answer and response to paragraph 248 as though fully set forth herein.

249.    Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based upon the employees' misconduct committed within the scope of their employment activities.

**ANSWER**:    This paragraph asserts legal conclusions to which no response is required. Should an answer be required, the City denies all allegations in paragraph 249 that are inconsistent with 745 ILCS 10/9-102; denies any liability to plaintiff pursuant to that statute; and denies any remaining allegations contained in paragraph 249.

250.    The Defendant CPD Officers and Detectives were employees of the Chicago Police Department, an agency of the City of Chicago, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER**:     The City objects to this paragraph, which consists of the blanket assertion that each of the Defendant Officers was acting within the scope of his employment in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, paragraph 250 asserts legal conclusions to which no answer is required. Should an answer be required, the City admits Defendant Officers were police officers employed by the CPD. On information and belief, the City admits the named individual Defendant Officers would have been acting within the scope of employment in the performance of the lawful duties of their offices when investigating the Vera Brown murder. In further response, the City has denied, on information and belief, the misconduct alleged against the Defendant Officers in plaintiff's complaint, and it therefore denies any allegations contained in paragraph 250 that are based on the premise that the alleged misconduct occurred.

251.    Defendant City of Chicago is responsible to pay any judgment entered against the Defendant CPD Officers and Detectives.

**ANSWER**:     The City denies the allegations as phrased in paragraph 251, and it further denies liability to plaintiff for any of the claims and/or damages asserted in plaintiff's complaint.

252.    Alternatively, Defendants Officers Brandon and McKnight were employed by the Chicago Housing Authority and, at all relevant times, acting within the course and scope of their employment.

**ANSWER**:     The City admits Defendant Officers Brandon and McKnight were employed by the CPD during the course of the investigation of the Vera Brown murder and denies any allegation in paragraph 252 that is inconsistent therewith. The City further denies liability to plaintiff for any of the claims and/or damages asserted in plaintiff's complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 252.

253.    Defendant Chicago Housing Authority is liable as a principal for all torts committed by its agents.

**ANSWER**: The City denies the allegations contained in paragraph 253.

254. Defendant ASA Toffenetti was an employee of the Cook County State's Attorney's Office, an office within Cook County, Illinois, who acted within the scope of his employment in committing the misconduct described herein.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph, as they are asserted against Defendant Cook County.

255. Defendant Cook County is responsible to pay any judgment entered against ASA Toffenetti.

**ANSWER**: The City makes no answer or response to the allegations of this paragraph, as they are asserted against Defendant Cook County.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count 14, and for its costs and such further relief as this Court deems just.

## AFFIRMATIVE DEFENSES

Defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states:

1. To the extent individual employees of the City or its police department are not liable as alleged in plaintiff's complaint, the City would not be liable. 745 ILCS 10/2-109.

2. The City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

3. Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

4. Plaintiff's claims are barred by the applicable statutes of limitations.

5. Plaintiff's claims are barred or limited by the applications of the doctrines of waiver, *res judicata*, collateral estoppel, and/or judicial estoppel to the extent applicable.

6.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law. Punitive damages cannot be imposed against a municipality in a §1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee. 745 ILCS 10/2-102.

7.      As to plaintiff's state law claims, the City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

8.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, including by his criminal misconduct, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

9.      Any recovery of damages by plaintiff against the City is barred by the doctrine of *in pari delicto*.

10.     The City would be entitled to a set-off for any and all amounts plaintiff recovered for the same injuries and damages being claimed in this lawsuit, including but not limited to amounts received from the Illinois Court of Claims or from other parties.

11.     Plaintiff's complaint fails to state cognizable claims for relief against the City:

    a.      To the extent Count IV attempts to assert a Fourteenth Amendment federal malicious prosecution claim or due process claim based on unlawful pretrial detention, those claims are not actionable as a matter of law;

    b.      Plaintiff's failure to intervene claim has no basis in the Constitution, and the "Supreme Court has held many times that §1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) (Easterbrook, J., concurring);

    c.      Plaintiff's derivative failure to intervene and conspiracy claims are not actionable to the extent based on an underlying claim that is subject to dismissal;

      d.      Plaintiff's Fourth Amendment claim for unlawful arrest in Count IV is time-barred; and

      e.      Plaintiff's state law malicious prosecution and intentional infliction of emotional distress claims are time-barred.

To the extent plaintiff's constitutional claims in the complaint fail to state actionable claims, his *Monell* claim against the City likewise fails to state an actionable claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (Where a plaintiff cannot establish a constitutional violation, he has no claim against the municipality).

## JURY DEMAND

      Defendant City of Chicago respectfully requests a trial by jury.

Dated: November 5, 2025

      Respectfully submitted,

      MARY B. RICHARDSON-LOWRY

      Corporation Counsel of the City of Chicago

      By: *s/Molly E. Thompson*
      Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Burns Noland LLP
311 South Wacker Dr., Suite 5200
Chicago, IL 60606
(312) 982-0090 (telephone)
(312) 429-0644 (facsimile)

*Attorneys for Defendant City of Chicago*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **November 5, 2025**, I electronically filed the foregoing **Defendant City of Chicago's Answer and Affirmative Defenses to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

*/s/ Molly E. Thompson*