## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JERRY HERRINGTON, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-08795 |
| CITY OF CHICAGO, a municipal corporation, MATTHEW BRANDON; JAMES McKNIGHT; EDWARD WINSTEAD; DELORES MYLES; Special Representative to be Determined for JAMES R. RILEY; Special Representative to be Determined for JEROME C. DOROBA; THOMAS F. KELLY; JAMES E. WARD; WILLIAM TOFFENETTI; COOK COUNTY; and CHICAGO HOUSING AUTHORITY, | The Honorable John Robert Blakey The Honorable Gabriel A. Fuentes |
| Defendants. | |

## DEFENDANT WILLIAM TOFFENETTI'S
## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, WILLIAM TOFFENETTI ("Defendant"), and for his Answer and Affirmative Defenses to Plaintiff's Complaint, states as follows:

### INTRODUCTION

1.     Jerry Herrington spent nearly 29 years in prison for a crime he did not commit.

**ANSWER:   Defendant denies the allegations in this paragraph.**

2.     Jerry was 16 years old when he was arrested for "disorderly conduct." Little did he know then that he would be framed for a murder he had nothing to do

with and that he would not see the light of freedom again until he was released from prison, at the age of 45, in June of 2020.

**ANSWER: Defendant admits Plaintiff was 16 years old when he was arrested for disorderly conduct on August 22, 1991. Defendant denies the remaining allegations in this paragraph.**

3.      On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 South Dearborn Street in the Dearborn Homes Public Housing Project.

**ANSWER: Defendant admits the allegations in this paragraph.**

4.      At the time, the Dearborn Homes were inundated with drugs, gangs, and crime. Shootings at the Dearborn Homes were not uncommon and, because of the heavy gang presence and fear of deadly retaliation, witnesses to crime were generally unwilling to name names. Chicago Police Department officers and detectives, who had a frequent presence at the Dearborn Homes, knew of this impediment. Therefore, to close cases at the Dearborn Homes, particularly murder cases, CPD officers and detectives had a longstanding pattern and practice of fabricating evidence and manipulating witnesses into falsely identifying "offenders," who would later be baselessly charged, maliciously prosecuted, and wrongfully convicted. That is exactly what happened to Jerry Herrington.

**ANSWER: Defendant denies the allegations in this paragraph**.

5.      Jerry Herrington was not present at the at the time of Vera Brown's murder and knew nothing about it. He was never identified by a single person as being involved in the murder at any point prior to his criminal trial.

**ANSWER: Defendant denies the allegations in this paragraph.**

6.     The two pieces of evidence used against Jerry to secure his conviction were both fabricated. First, the Defendant CPD Officers and Detectives coerced and manipulated Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Melvin Jefferson was not present at the site of the shooting and, even based upon his own reported location, he could not have possibly seen the shooting. The Defendant CPD Officers and Detectives told Melvin Jefferson what to say and told him to identify Jerry Herrington as the shooter at trial, knowing that such information was false. Melvin Jefferson has since stated that he was coerced by police into making these false statements.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Melvin Jefferson has since stated he was coerced by police. Defendant denies the remaining allegations in this paragraph.**

7.     Second, the Defendant CPD Officers and Detectives, along with Defendant Assistant State's Attorney ("ASA") William Toffenetti, fabricated evidence and falsified reports claiming that Jerry Herrington confessed to the Brown murder. Jerry was subjected to physical abuse and unconstitutional interrogation tactics after his arrest, but he never confessed to having any involvement with the Brown murder. Unsurprisingly, therefore, there is no audio or video recording of his alleged confession, nor did Jerry sign anything memorializing or affirming his purported confession. Defendant Detectives Riley and Doroba and ASA Toffenetti made up this "confession" out of whole cloth, knowing it was false.

**ANSWER:   Defendant admits there is no audio or video recording of Plaintiff's confession to the murder of Vera Brown. Defendant further admits Plaintiff did not sign or memorialize in writing his confession to the**

**murder he committed. Defendant denies the remaining allegations in this paragraph.**

8.     Beyond these false and fabricated pieces of evidence — Jefferson's statement and Jerry's confession — there was no evidence to charge Jerry, let alone convict him of murder.

**ANSWER:   Defendant denies the allegations in this paragraph.**

9.     Falsifying and fabricating evidence to support convictions was, after all, part of Defendants' modus operandi. As described below, the Chicago Police Department, as an institution, condoned, enabled, and rewarded its detectives and officers to manipulate witnesses, falsify and fabricate evidence, physically abuse suspects, make up confessions, commit Brady violations, and engage in other unconstitutional conduct as a means to an end. That end, here, was the baseless arrest, malicious prosecution, and wrongful conviction of Jerry Herrington.

**ANSWER:   Defendant denies the allegations in this paragraph.**

10.     Without the malicious and unconstitutional conduct of the Defendants, Jerry Herrington would never have been arrested, prosecuted, or convicted; he would never have been ripped away from his family and friends and forced to suffer through the unimaginable horror of spending almost 30 years in prison as an innocent man; he would have never have had his life, liberty, and tremendous potential taken from him; and he would never have the scars, the pain, and the trauma that resulted from him being wrongfully accused, incarcerated, and convicted of murder.

**ANSWER:   Defendant denies the allegations in this paragraph.**

11.     At the same time, however, Jerry always maintained his innocence and always maintained his hope. Now, after surviving a level of torment that no innocent person deserves and persevering through circumstances that would have caused many to lose hope and give up, Jerry Herrington comes before this Court seeking justice and accountability.

**ANSWER:   Defendant denies the allegations in this paragraph.**

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under 42 U.S.C. § 1983.

**ANSWER:   Defendant denies he is liable to Plaintiff under 42 U.S.C. § 1983. Defendant admits the remaining the allegations in this paragraph.**

13.     The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:   Defendant denies he is liable to Plaintiff for any state law claims. Defendant admits the remaining allegations in this paragraph.**

14.     The Court has personal jurisdiction over Defendants because at least some reside in the State of Illinois and because their conduct described herein occurred exclusively in Illinois.

**ANSWER:   Defendant admit that the court has personal jurisdiction over the Defendant as Plaintiff's murder of Vera Brown, arrest, criminal prosecution and trial that resulted in Plaintiff's conviction occurred within this judicial district and that Defendant resides in the State of Illinois. Defendant is without knowledge or information sufficient to form a belief as to whether other Defendants reside in the State of Illinois. Defendant denies the remaining allegations in this paragraph.**

15.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because Plaintiff's injuries and damages occurred in the Northern District of Illinois, there are Defendants who reside and conduct business in the Northern District of Illinois, and all events giving rise to this action occurred in the Northern District of Illinois.

**ANSWER: Defendant admit that venue is proper in this judicial district as Plaintiff's murder of Vera Brown, arrest, criminal prosecution and trial that resulted in Plaintiff's conviction occurred within this judicial district. Defendant is without knowledge or information sufficient to form a belief as to whether other defendants reside or conduct business in the Northern District of Illinois. Defendant denies the remaining allegations in this paragraph.**

## PARTIES

16.     Plaintiff Jerry Herrington was arrested without probable cause, maliciously prosecuted, and wrongfully convicted of the murder of Vera Brown. He now resides in Chicago, Illinois.

**ANSWER:  Defendant is without knowledge or information sufficient to form a belief as to whether Plaintiff resides in Chicago, Illinois. Defendant denies the remaining allegations in this paragraph.**

17.     Defendant City of Chicago, is a municipal corporation, located in Chicago, Illinois. During the relevant time period, the City of Chicago and its Police Department employed the Defendant Officers and Detectives.

**ANSWER:  Defendant admits the allegations in this paragraph.**

18.     At all relevant times, Defendant Matthew Brandon, believed to be Star No. 17698, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, Brandon was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and

6

conviction of Jerry Herrington. Upon information and belief, Brandon is a resident of Chicago, Illinois.

**ANSWER: Defendant admits Defendant Brandon was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant denies the remaining allegations in this paragraph.**

19.     At all relevant times, Defendant James McKnight, believed to be Star No. 13206, was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department. Alternatively, he was employed by the Chicago Housing Authority. In either capacity, McKnight was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington.

**ANSWER: Defendant admits Defendant McKnight was a police officer with the Public Housing South Tactical Unit of the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant denies the remaining allegations in this paragraph.**

20.     At all relevant times, Defendant Edward Winstead, believed to be Star No. 20119, was a detective with the Chicago Police Department. In that capacity, Winstead was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Winstead is a resident of Chicago, Illinois.

**ANSWER: Defendant admits Defendant Winstead was a detective with the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant is without knowledge or information sufficient to form a belief as to whether Winstead is a resident of Chicago, Illinois. Defendant denies the remaining allegations in this paragraph.**

21.     At all relevant times, Defendant Delores Myles, believed to be Star No. 20242, was a detective with the Chicago Police Department. In that capacity, Myles was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Myles is a resident of Chicago, Illinois.

**ANSWER:  Defendant admits Defendant Myles was a detective with the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant is without knowledge or information sufficient to form a belief as to whether Myles is a resident of Chicago, Illinois. Defendant denies the remaining allegations in this paragraph.**

22.     At all relevant times, James R. Riley, believed to be Star No. 20250, deceased, was a detective with the Chicago Police Department. In that capacity, Riley was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. At the time of his death, James R. Riley was a resident of this district. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of James R. Riley, deceased.

**ANSWER:  Defendant admits James Riley was a detective with the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant is without knowledge or information sufficient to form a belief as to whether Riley was a resident of this district or if there was no estate opened following his death. Defendant denies the remaining allegations in this paragraph.**

23.     At all relevant times, Jerome C. Doroba, believed to be Star No. 20209, deceased, was a detective with the Chicago Police Department. In that capacity, Doroba was involved with, participated in, and conspired with the other defendants

8

to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, there was no estate opened following his death. Defendant Special Representative To Be Determined has been named on behalf of Jerome C. Doroba, deceased.

**ANSWER: Defendant admits Jerome C. Doroba, was a detective with the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant is without knowledge or information sufficient to form a belief as to whether there was no estate opened following his death. Defendant denies the remaining allegations in this paragraph.**

24. At all relevant times, Defendant Thomas F. Kelly, believed to be Star No. 14082, was a police officer with the Chicago Police Department. In that capacity, Kelly was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Kelly is a resident of Chicago, Illinois.

**ANSWER: Defendant admits Thomas F. Kelly was a police officer with the Chicago Police Department, but lacks knowledge or information sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant is without knowledge or information sufficient to form a belief as to whether Kelly is a resident of Chicago, Illinois. Defendant denies the remaining allegations in this paragraph.**

25. At all relevant times, Defendant James E. Ward, believed to be Star No. 15808, was a police officer with the Chicago Police Department. In that capacity, Ward was involved with, participated in, and conspired with the other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Ward is a resident of Yorkville, Illinois.

**ANSWER: Defendant admits James E. Ward was a police officer with the Chicago Police Department, but lacks knowledge or information**

**sufficient to form a belief about the truth of whether he was so employed at all relevant times. Defendant is without knowledge or information sufficient to form a belief as to whether Ward is a resident of Yorkville, Illinois. Defendant denies the remaining allegations in this paragraph.**

26.     At all relevant times, Defendant William Toffenetti was an Assistant State's Attorney with the Cook County State's Attorney's Office. Serving in an investigative capacity, Toffenetti was involved with, participated in, and conspired with other defendants to secure the wrongful arrest, prosecution, and conviction of Jerry Herrington. Upon information and belief, Toffenetti resides in Chicago, Illinois.

**ANSWER:  Defendant admits he was an Assistant State's Attorney with the Cook County State's Attorney's Office for a certain period of time. Defendant denies the remaining allegations in this paragraph.**

27.     Cook County, Illinois, is a county within the state of Illinois that during the relevant time had an office commonly referred to as the "Cook County State's Attorney's Office." During the relevant time period, Cook County, Illinois employed Assistant State's Attorney, William Toffenetti.

**ANSWER:   Defendant admits that for a certain period of time he was employed by the Cook County State's Attorney's Office that is located in Cook County Illinois.**

28.     Chicago Housing Authority is, upon information and belief, a municipal corporation created to, among other things, provide public housing. During the relevant time period, Defendant Officers Brandon and McKnight may have been employed by the Chicago Housing Authority.

**ANSWER:  Defendant admits the Chicago Housing authority was a municipal corporation that provided public housing.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

## FACTUAL BACKGROUND

**Vera Brown's Murder**

29.     On June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 S. Dearborn at the Dearborn Homes Public Housing Project. There were numerous eyewitnesses to the shooting.

**ANSWER: Defendant admits that on June 22, 1991, at approximately 3:10 p.m., Vera Brown was shot and killed outside of 2910 S. Dearborn at the Dearborn Homes Public Housing Project. Defendant admits there were eyewitnesses to the shooting. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

**All Eyewitness Report a Single Offender**

30.     Eyewitness reports given to the Chicago Police Department all describe a single offender.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

31.     Officer Robert Hightower arrived on scene eight minutes after the shooting. He interviewed a "witness who refused to identify self," who reported that Vera Brown "went into 2910 S. Dearborn [and] was almost immediately chased out of same by a M/1 who shot her 4 times." This first report refers to only one offender, who "was described as wearing a red top and dark pants."

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

32.     Defendant Detectives Winstead and Myles were also on scene. They were told by unidentified citizens that Brown was shot "by the Mickey Cobra street gang" and that there was a war between the Mickey Cobras and the Gangster

Disciples within the Dearborn Homes. Only one witness on scene, "Tony Martin," was willing to speak with Detectives Winstead and Myles.2 "Martin" reported that he heard a gunshot and saw Brown running and fall to the ground. "Martin" saw a black male run up to Brown and shoot her approximately five more times. He described the offender as slim, in his late teens, and wearing a red t-shirt and blue jeans. This is the second independent report of a single offender.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

33.     After the shooting, officers canvassed the area and located two additional eyewitnesses. One eyewitness lived at 2910 S. Dearborn, Unit 308, and may have been identified as Michael Cooper. He told officers that he heard shots and saw one male, 17-18 years old, 5'8" and 150 lbs. with a medium build, with designs in his hair, and wearing a red shirt and blue jeans. This is the third independent report of a single offender.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

34.     Officers also spoke with Howard Ivery, who lived at 2731 S. Dearborn. Ivery reported seeing a black male with a light complexion standing over Brown shooting her. This is the fourth independent report of a single offender.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

35.     On June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received a message from an anonymous caller who reported that

Brown was shot by a black male, age 17-21, with a light complexion. This is the fifth independent report of a single offender.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

36.     Defendant Detective Winstead was also told that the shooter was Anthony "Teeth" Taylor, who was described as a black male, age 16, with a thin build, light complexion, and a high-top fade. This is sixth independent report of a single offender.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

37.     In line with information received from these six independent sources, initial official reports document only one offender. A Supplementary Report prepared by Defendant Detectives Winstead and Myles describes the "WANTED" offender as: "M/B late teens, approx. 5-10, med build and compl. wearing a red T-shirt and blue jean pants." Further, the Medical Examiner Case Report documents an interview with Defendant Detective Winstead, during which Winstead told the investigator that the shooter was an "unknown male offender."

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

38.     Notwithstanding numerous consistent eyewitness reports of there being only one shooter, as well as at least one report specifically identifying the shooter as Anthony "Teeth" Taylor, the Defendant CPD Officers and Detectives conspired to frame two individuals, Dion Warr and Jerry Herrington, for this murder.

**ANSWER: Defendant denies the allegations in this paragraph.**

## Melvin Jefferson

39.     The Defendant CPD Officers and Detectives used Melvin Jefferson to fabricate evidence that would ultimately lead to Jerry Herrington's conviction.

**ANSWER:   Defendant denies the allegations in this paragraph.**

40.     On June 23, 1991, Jefferson was in custody for auto theft and brought to Area One Violent Crimes to be interviewed by Defendant Detectives Winstead and Myles. According to Myles's report of the interview, Jefferson told them he was standing "by the fieldhouse" and saw Dion Warr and an unknown black male standing together near 2910 S. Dearborn. According to the report, Jefferson then saw Dion Warr point at Vera Brown when she exited the building, at which point the unknown black male pulled a gun from his waistband and shot Brown multiple times. Jefferson is reported as saying that the shooter ran through 2910 S. Dearborn while Dion Warr ran around it, at which point they met each other in the fire lane and ran south. According to the report, Jefferson said the unknown shooter was 5'10", 150 lbs., with a medium build and dark complexion, and was wearing a blue baseball hat and a white pinstripe New York Mets shirt and shorts set.

**ANSWER:   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

41.     Defendant Detectives Winstead and Myles knew the information they reported as coming from Melvin Jefferson was false. Jefferson could not have seen the shooting from "by the fieldhouse," which was approximately 400 feet away from the site of the shooting with an obstructed line of sight. Also, Jefferson's purported description of two offenders was at odds with all other eyewitness reports, which

consistently refer to one offender. Further, no one other than Jefferson mentioned anyone wearing conspicuous clothing, such as a New York Mets shirt and shorts set.

**ANSWER:  Defendant denies the allegations in this paragraph.**

42.     Defendant Detectives Winstead and Myles coerced and/or manipulated Melvin Jefferson into giving these false statements, which he would later repeat at trial against Jerry Herrington to secure his conviction.

**ANSWER:  Defendant denies the allegations in this paragraph.**

**Dion Warr is Arrested and Charged with Brown's Murder**

43.     On July 2, 1991, based upon Jefferson's false statements, Dion Warr was arrested and charged with first-degree murder. The Complaint for Preliminary Examination against Dion Warr, signed under oath by Defendant Detective Myles, alleges that Warr "killed Vera BROWN without lawful justification by shooting her with a gun . . ."

**ANSWER:  Defendant admits Dion Warr was arrested on July 2, 1991 and charged with first-degree murder. Defendant is without knowledge or information sufficient to form a belief as to the truth of information that is contained in the Complaint for Preliminary Examination against Dion Warr. Defendant denies the remaining allegations in this paragraph.**

**Jerry Herrington is Arrested, Battered, and Charged with Brown's Murder**

44.     More than eight weeks after Vera Brown was murdered, on August 22, 1991, at approximately 12:40 p.m., Jerry Herrington was arrested for disorderly conduct. The Vice Case Report states that the arresting officers, including Defendant Officers Brandon and McKnight, "received information from a female citizen over the phone at Unit 715 of 3 M/Bs selling drugs in the rear of 2940 S. State," and that the caller gave them "a physical and clothing description of the alleged offenders." Jerry

Herrington, who was sitting on a bench when the arresting officers arrived, allegedly matched the description of one of the black males and was arrested.

**ANSWER: Defendant admits Vera Brown was murdered on June 22, 1991 and that Plaintiff was arrested for disorderly conduct on August 22, 1991. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

45. Jerry Herrington's arrest itself was unconstitutional because there was no probable cause to arrest him. The initial Vice Case Report indicates that Jerry Herrington was sitting on a bench outside of 2940 S. State Street when the arresting officers arrived. The report does not describe any unlawful activity on the part of Jerry Herrington and concludes that he matched the description of one of the three black males who were allegedly selling drugs and "was [ ] arrested and charged accordingly." However, Jerry was not arrested or charged with selling drugs or anything of the sort.

**ANSWER: Defendant denies Plaintiff's arrest was unconstitutional or that there was no probable cause to arrest him. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

46. The Arrest Report from the same day says that Jerry Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." However, the Vice Report does not describe anything of the sort and, in terms of Jerry's conduct, says nothing other than that he was sitting on a bench.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

47. The police reports are thus inconsistent as to why Jerry Herrington was arrested. The truth is that there was no probable cause to arrest him. The police

16

fabricated the anonymous report that Jerry Herrington matched the description of someone selling drugs outside of 2940 S. State Street. They also fabricated the report that Jerry Herrington did not disperse upon being ordered to do so.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding any alleged inconsistencies in the police reports. Defendant denies the remaining allegations in this paragraph.**

48.     Jerry was only 16 years old at the time of his arrest, although he did not immediately tell that to the arresting officers.

**ANSWER: Defendant admits Plaintiff was 16 years old at the time of his arrest. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

49.     Initially, Jerry was taken to a lockup near the Dearborn Homes. At or about that time, the Defendant CPD Officers and Detectives set in motion a plan to frame Jerry Herrington for Vera Brown's murder.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of whether Plaintiff was initially taken to a lockup near the Dearborn Homes. Defendant denies the remaining allegation in this paragraph.**

50.     Jerry was taken from lockup to the 21st District, and then later to Area One Violent Crimes by Defendant Detectives Riley and Doroba at approximately 8:00 p.m. During the transport, Defendant Detectives Riley and Doroba told him that he was being arrested for murder — which was the first time, after more than seven hours in custody, that Jerry was informed of anything pertaining to the Brown murder.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

51.     At Area One, Jerry was placed in an interrogation room and handcuffed to a ring on the wall. Defendant Detectives Riley and Doroba then began interrogating Jerry about Vera Brown's murder. Jerry told them that he was only 16, that he had no idea what they were talking about, and that he wanted to call his grandmother. Defendant Detectives Riley and Doroba refused Jerry's request for a phone call and did nothing to locate a parent, guardian, or youth officer.

**ANSWER:   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

52.     After Jerry told Defendant Detectives Riley and Doroba that he knew nothing about Vera Brown's murder they physically battered him by slapping him in face and hitting him in the stomach. At no time did Jerry confess to the murder, even falsely, notwithstanding the unconstitutional interrogation tactics and physical abuse by Defendant Detectives Riley and Doroba.

**ANSWER:   Defendant denies the allegations in this paragraph.**

53.     On August 22, 1991 at approximately 11:30 p.m., Jerry Herrington was arrested for the murder of Vera Brown.

**ANSWER:   Defendant admits the allegations in this paragraph.**

54.     At the time Jerry was arrested there was literally zero evidence that he was involved with Vera Brown's murder. No one had identified Jerry as the shooter, there was no physical evidence connecting Jerry to the murder, and Jerry did not make any statements other than to say he knew nothing about the murder. Therefore, the Defendants fabricated evidence to support the prosecution and ultimate conviction of Jerry Herrington.

**ANSWER: Defendant denies the allegations in this paragraph.**

**The Fabricated August 23, 1991 Police Report**

55.　　On August 23, 1991 — after Jerry had already been wrongfully arrested and charged with Brown's murder — Defendant Officers Brandon and McKnight fabricated an official report about the initial call they purportedly received from the unidentified "female citizen" the day before. As discussed above, the Vice Case Report from August 22, 1991 states that Defendant Officers Brandon and McKnight "received information from a female citizen over the phone . . . of 3 M/Bs selling drugs in the rear of 2940 S. State." The Vice Case Report says nothing about the Brown murder. Similarly, an August 22, 1991 handwritten Arrest Report by Defendant Officers Brandon and McKnight says that Herrington was "arrested after refusing lawful order to disperse therefore interfering in a narcotics investigation." It too says nothing about the Brown murder.

**ANSWER: Defendant denies Plaintiff was wrongfully arrested or wrongfully charged with murder. Defendant further denies Defendants Brandon and McKnight fabricated an official report. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

56.　　However, a Supplementary Report from the next day — again, after Jerry had been charged with Brown's murder — conveniently changes the narrative to say not only did this "unknown female citizen" report three black males selling drugs in the rear of 2940 S. State, she "also stated that the M/B that was wearing a green short sleeved shirt, black jeans and green & white gym shoes was involved in the shooting death of a f/b named Brown, Vera" (emphasis added).

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

57. This August 23, 1991 Supplementary Report by Defendant Officers Brandon and McKnight was obviously fabricated because if this unknown female actually said that one of the black males was involved in the Brown murder during her call, that is something that would have been reported in the August 22, 1991 Vice Case Report and the August 22, 1991 Arrest Report. Instead, neither report says anything about the Brown murder and both reports treat Jerry Herrington's arrest as an afterthought.

**ANSWER: Defendant denies Defendants Brandon and McKnight fabricated the August 23, 1991 supplementary report. Defendant is without knowledge of information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

58. In reference to Jerry Herrington, the August 22, 1991 Vice Case Report states only that "Arrestee HERRINGTON matching the description of one of the 3 M/Bs that were selling drugs was also arrested and charged accordingly" (emphasis added). Had he have been described as matching the description of the shooter in Vera Brown's murder, the Vice Case Report would have indicated that.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

59. In reference to Jerry Herrington, the August 22, 1991 Arrest Report states only that he was "arrested after refusing lawful order to disperse there." Had he been arrested because he matched the description of the shooter in Vera Brown's murder, the Arrest Report would have indicated that. It is also something that Jerry Herrington would have immediately been confronted with.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

**The Fabricated Confession**

60. After Jerry Herrington was arrested, Defendant Detectives Riley and Doroba, together with Assistant State's Attorney, William Toffenetti, conspired to fabricate a confession from him.

**ANSWER: Defendant denies the allegations in this paragraph.**

61. As stated above, Jerry was physically beaten and held for nearly 12 hours without a parent, guardian, or youth officer and, yet, did not give in to Defendant Detectives Riley's and Doroba's unconstitutional efforts to extract a false confession. So, they made one up.

**ANSWER: Defendant denies the allegations in this paragraph.**

62. On September 1, 1991 — 10 days after Jerry was charged with Brown's murder — Defendant Detectives Riley and Doroba fabricated a Supplementary Report claiming that Jerry Herrington confessed. Detective Riley's notes of the purported confession were not processed until September 12, 1991, 21 days after Jerry was charged with Brown's murder.

**ANSWER: Defendant denies the allegations in this paragraph.**

63. Had Jerry Herrington actually confessed to a murder on August 22, 1991, Defendant Detectives Riley and Doroba would have reported it right away, not 10 and 21 days later. They would have also taken measures to record the confession (either video or audio) or have Jerry memorialize or affirm it in some way (such as by signing or initialing a written statement); they did none of the above.

21

Case: 1:25-cv-08795 Document #: 63 Filed: 11/05/25 Page 22 of 64 PageID #:465

**ANSWER: Defendant admits Plaintiff confessed to the murder on August 22, 1991. Defendant denies the remaining allegations in this paragraph.**

64.     Instead, Defendant Detectives Riley and Doroba, together with Defendant Assistant State's Attorney William Toffenetti, conspired to fabricate a story that Jerry also confessed to Toffenetti, but when Toffenetti asked him to give a handwritten statement of his confession, Jerry suddenly invoked his right to counsel.

**ANSWER:  Defendant denies the allegations in this paragraph.**

65.     This story is too convenient, however, because it is the only way to for the Defendants to explain how Jerry never acknowledged, affirmed, or signed his purported confession.

**ANSWER:  Defendant denies the allegations in this paragraph.**

66.     Tellingly, a Memorandum dated August 22, 1991 from Defendant ASA Toffenetti to the supervisor of the Felony Review Unit, says not one word about this purported confession. Had Jerry confessed to Toffenetti that night, as Defendants claim, Toffenetti would have undoubtedly reflected that in his Memorandum.

**ANSWER: Defendant admits he prepared a  Memorandum, dated August 22, 1991, to the attention of a Felony Review Unit Supervisor regarding the circumstances surrounding Plaintiff's oral statement that does not summarize Plaintiff's oral confession to the June 22, 1991 murder of Vera Brown. Defendant denies the remaining allegations in this paragraph.**

**The Fabricated July 2, 1991 General Progress Report**

67.     Another piece of evidence that was fabricated – this time by Defendant Officers Kelly and Ward – is a handwritten General Progress Report ("GPR") purportedly dated July 2, 1991, which is 10 days after the Brown murder and more 7

weeks before Jerry Herrington was arrested. In this GPR, Defendant Officers Kelly and Ward purportedly write to Detectives Winstead and Myles that Vera Brown's godmother, Cathy Scott, said the shooter is "Jerry" from around 79th & Lomis, whose girlfriend lives at 2940 State, Unit 104, and who is about 17-18 years old, 5'10", has very dark skin, wears a hat at all times, and always wears light clothes.

**ANSWER: Defendant denies Defendants Kelly and Ward fabricated a handwritten General Progress Report ("GPR") dated July 2, 1991. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

68. This handwritten GPR was not properly filled out, dated, signed, or submitted. It was obviously fabricated because there is no indication that at any point in time over next seven weeks that any officer, detective, or investigator interviewed Cathy Scott, went to 79th & Loomis to find "Jerry," went to Unit #104 at 2940 State Street where "Jerry" purportedly stayed, or took any action whatsoever to locate the murderer notwithstanding that they purportedly had a name, location, and detailed physical description.

**ANSWER: Defendant denies the handwritten GPR was fabricated. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

**The Fabricated In-Court Identification**

69. Finally, Defendant Detectives Winstead and Myles manipulated and/or coerced Melvin Jefferson into falsely identifying Jerry Herrington as the shooter at trial. Jefferson did not know who Jerry Herrington was; had he, his name would have been included in the manipulated statement reported by Defendant Detectives Winstead and Myles.

**ANSWER:   Defendant denies allegations in this paragraph.**

70.    Because Jefferson did not know who Jerry Herrington was, proper police protocol and best practices required that he be asked to pick Jerry out of lineup or photo array, or even to confirm his identify at a show-up. That never happened. At no point during the 378 days between Brown's murder on June 22, 1991 and Jefferson's trial testimony on July 6, 1992, did Jefferson identify Jerry as the shooter.

**ANSWER:   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

71.    Melvin Jefferson had no idea who Jerry Herrington was or what he looked like until he saw him in court. The suggestion that Melvin Jefferson could identify a shooter unknown to him after 378 days, having only seen the shooter from a distance of more than 400 feet, is preposterous. When Jefferson identified Jerry at trial he did so only because the Defendants told him to. His identification of Jerry was false and fabricated.

**ANSWER:   Defendant denies the allegations in this paragraph.**

**The Wrongful Conviction**

72.    On July 8, 1992, Jerry Herrington was found guilty in a bench trial and convicted of the first-degree murder of Vera Brown.

**ANSWER:   Defendant admits the allegations in this paragraph.**

73.    The only evidence the prosecution used at trial against Jerry was the false, coerced and/or manipulated testimony from Melvin Jefferson and the false confession purportedly given by Jerry Herrington.

**ANSWER:   Defendant denies the allegations in this paragraph.**

**Jerry Herrington is Innocent**

74.     Jerry Herrington is innocent of having any involvement in Vera Brown's murder.

**ANSWER:   Defendant denies the allegations in this paragraph.**

75.     There has never been any legitimate evidence connecting Jerry Herrington to Vera Brown's murder.

**ANSWER:   Defendant denies the allegations in this paragraph.**

76.     Jerry Herrington was not present at the time of the shooting and knew nothing about it.

**ANSWER:   Defendant denies the allegations in this paragraph.**

77.     The statements, reports, and testimony concerning the purported observations of Melvin Jefferson are false and fabricated. Melvin Jefferson did not witness Vera Brown's shooting. He gave false and fabricated statements and testimony because he was manipulated and/or coerced into doing so by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles. The reports purporting to document observations by Melvin Jefferson were fabricated by the Defendant Officers and Detectives, specifically including Defendant Detectives Winstead and Myles.

**ANSWER:   Defendant denies the allegations in this paragraph.**

78.     Jerry Herrington never confessed to having any involvement with the Brown murder. Reports and testimony concerning his confession from Defendant Detectives Riley and Doroba and from Defendant ASA Toffenetti were fabricated and false.

**ANSWER: Defendant denies the allegations in this paragraph.**

79. Jerry Herrington was convicted of first-degree murder based exclusively on false and fabricated evidence.

**ANSWER: Defendant admits Plaintiff was convicted of first-degree murder. Defendant denies the remaining allegations in this paragraph.**

80. Several independent eyewitnesses have provided sworn statements that Anthony "Teeth" Taylor shot and killed Vera Brown on June 22, 1991. It was also reported to Detective Winstead shortly after the shooting that Anthony "Teeth" Taylor was the person who shot and killed Vera Brown.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## The Defendant Officers and Detective's *Brady* Violations

81. In addition to fostering a false narrative used to convict Jerry Herrington as discussed above, the Defendant CPD Officers and Detectives committed more than 10 Brady violations. Defendants did not comply with their Brady obligations in failing to disclose the following exculpatory evidence:

    (a) that the August 22, 1991 anonymous report of Jerry Herrington matching the description of someone selling drugs outside 2940 S. State Street was false and fabricated;

    (b) that the August 23, 1991 anonymous report of Jerry Herrington matching the description of someone involved with Vera Brown's murder was false and fabricated;

    (c) that Melvin Jefferson was not present at the site of Vera Brown's shooting and could not have seen it;

    (d) the disposition of the case that Melvin Jefferson was in custody for when he gave his purported statement to Defendant Detectives Winstead and Myles;

    (e)      that an eyewitness living at 2910 S. Dearborn in Unit 308 saw the shooting and reported seeing only one offender;

    (f)      that an eyewitness, Howard Ivery, saw the shooting and reported seeing only one offender;

    (g)     that on June 23, 1991, the day after the shooting, Defendant Detectives Winstead and Myles received an anonymous tip identifying someone other than Jerry Herrington as being the shooter;

    (h)     that on July 2, 1991, a witness told Detectives Winstead and Myles information that, upon information and belief, was exculpatory for Jerry Herrington, but which was purposefully excluded from the official Supplementary Report;

    (i)      that Anthony "Teeth" Taylor was detained, together with two other individuals, and interrogated concerning the Vera Brown murder; and

    (j)      that the reports of Jerry Herrington confessing and of Melvin Jefferson witnessing the murder were false and fabricated.

**ANSWER: Defendant denies the allegations in this paragraph.**

## Jerry Herrington is Exonerated

82.    On March 4, 2025, Jerry Herrington was exonerated, his conviction was vacated, and the charges against him were dismissed.

**ANSWER: Defendant admits that on March 4, 2025, Plaintiff's request for relief under the Post-Conviction Hearing Act was granted as to the ineffective assistance of counsel claim. Defendant further admits the judgment of conviction was vacated and the charges against him were dismissed. Defendant denies the remaining allegations in this paragraph.**

## The Defendants' History of Unconstitutional Conduct

83.    At all relevant times, the Defendant Officers and Detectives had a pattern and practice of using unconstitutional policing tactics in order to clear cases and secure the wrongful arrest, prosecution, and conviction of innocent people, just as they did with Jerry Herrington.

**ANSWER:   Defendant denies the allegations in this paragraph.**

84.     **Defendant Officer Matthew Brandon:** It has been alleged that, on October 3, 1990, Defendant Officer Matthew Brandon, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized more than $25,000 found on the premises. Brandon was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Brandon's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional arrest. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

85.     **Defendant Officer James McKnight:** It has been alleged that, on October 3, 1990, Defendant Officer James McKnight, together with other Chicago Police Department officers, forced his way into an apartment without consent or a search warrant, wrongfully detained the occupants, conducted an unconstitutional search of the premises, unlawfully arrested an individual without probable cause, and unlawfully seized and failed to inventory or return $8,000 found on the premises. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional arrest or fabricated evidence. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

86.     It has been alleged that, on July 8, 1991, Defendant Officer James McKnight participated in an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional arrest or fabricated evidence. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

87.     It has been alleged that, on August 7, 1991, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional arrest or fabricated evidence. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or**

**information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

88.     It has been alleged that, on June 1, 1993, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional arrest or fabricated evidence. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

89.     It has been alleged that, on January 22, 1996, Defendant Officer James McKnight, together with other Chicago Police Department officers, conducted an unconstitutional search of an apartment without consent or a search warrant. McKnight was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. McKnight's allegedly unconstitutional actions on this date are consistent with his unconstitutional arrest of Jerry Herrington and fabrication of evidence.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional arrest or fabricated evidence. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

90.     Defendant Officer James McKnight has been the subject of additional complaints, 28 in total, which puts him in the top 15% of all Chicago Police Officers in terms of total complaints.

**ANSWER:  Defendant denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

91.     **Defendant Detective Edward Winstead:** It has been alleged that, on March 17, 1991, Defendant Detective Edward Winstead, together with other Chicago Police Department officers and detectives, entered an apartment without consent or a search warrant, and proceeded to conduct an unconstitutional search thereof. Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington.

**ANSWER: Defendant denies Plaintiff was subjected to unconstitutional conduct. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

92.     In 1994, Detective Winstead was named as a defendant in federal civil lawsuit, Beamon v. Tock, et al., 94-CV-06551 (N.D. Ill), alleging that he coerced the false confession of the two plaintiffs. This case was settled by the defendants for an unknown amount. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged coercion tactics in Beamon are consistent with his coercion and/or

manipulation of Melvin Jefferson's into giving a false statement implicating Jerry Herrington in the present matter.

**ANSWER: Defendant denies Melvin Jefferson was coerced and/or manipulated into giving a false statement implicating Plaintiff in the murder of Vera Brown. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

93.     In 2003, Defendant Detective Winstead was named as a defendant in a federal civil lawsuit, A.M. v. Cassidy, et al., 03-CV-0246 (N.D. Ill.), alleging that he falsely reported hearing A.M. tell his mother that he committed a murder, which was used against A.M. in a criminal prosecution ultimately leading to A.M.'s wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in A.M. is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER: Defendant denies Melvin Jefferson's statement implicating Jerry Herrington in the murder of Vera Brown was false or fabricated. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

94.     In 2003, the Illinois Supreme Court found that Detective Winstead failed to properly Mirandize an individual who was illiterate and cognitively challenged. People v. Braggs, 209 Ill.2d. 492 (2003). Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this

allegedly unconstitutional conduct. Winstead's unconstitutional conduct in Braggs is consistent with his unconstitutional conduct in the present matter.

**ANSWER: Defendant denies Plaintiff was subjected to unconstitutional conduct. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

95.     In 2015, Detective Winstead was named as a defendant in a federal civil lawsuit, *Johnson v. Lutzow, et al.*, 15-CV-07177 (N.D. Ill.), alleging that he held the plaintiff in custody without probable cause, interrogated him without giving him Miranda warnings, fabricated statements the defendants falsely claimed were made by the plaintiff, fabricated police reports falsely implicating the plaintiff, and falsely testified against the plaintiff, all leading to his wrongful conviction. The case was settled by the defendants. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence in Johnson is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER: Defendant denies Melvin Jefferson's statement implicating Jerry Herrington in the murder of Vera Brown was false or fabricated. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

96.     In 2020, Detective Winstead was named as a defendant in two federal civil lawsuits, *Fulton v. Bartik, et al.*, 20-CV-3118 (N.D. Ill.) and *Mitchell v. Bartik, et al.*, 20-CV-3119 (N.D. Ill), alleging that he fabricated a report falsely attributing a

statement to a witness implicating one of the plaintiffs in a murder and that he participated in a conspiracy to deprive the plaintiffs of their constitutional rights. The *Fulton/Mitchell* case resulted in a $120,000,000 verdict. Upon information and belief, Winstead was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Winstead's alleged fabrication of evidence and participation in a conspiracy in *Fulton/Mitchell* is consistent with him fabricating a false statement from Melvin Jefferson implicating Jerry Herrington and participating in a conspiracy to deprive Jerry Herrington of his constitutional rights in the present matter.

**ANSWER: Defendant denies Melvin Jefferson's statement implicating Jerry Herrington in the murder of Vera Brown was false or fabricated or that there was a conspiracy to deprive Plaintiff of his constitutional rights. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

97. **Defendant Detective Delores Myles:** In 1999, Detective Myles was named as a defendant in two civil lawsuits, one filed in state court and the other filed in federal court (Mother v. Cassidy, 99-CV-03259 (N.D. Ill.), involving the wrongful arrest and malicious prosecution of two young boys, ages 7 and 8, for the murder of an 11-year-old. Detective Myles was among several Chicago Police Department officers and detectives accused of coercing false confessions from the minor plaintiffs. Upon information and belief, this case settled for $6,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged coercion of a false confession

in Mother is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER: Defendant denies Melvin Jefferson's statement implicating Jerry Herrington in the murder of Vera Brown was false or fabricated. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

98.    In 2011, Detective Myles was named as a defendant in a federal civil lawsuit, *Patterson v. Chicago, et al.*, 11-CV-7052 (N.D. Ill), alleging that she fabricated witness statements falsely implicating the plaintiff in a homicide. The case was settled for $4,200,000. Upon information and belief, Myles was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Myles's alleged fabrication of witness statements in *Patterson* is consistent with her fabricating a false statement from Melvin Jefferson implicating Jerry Herrington in the present matter.

**ANSWER: Defendant denies Melvin Jefferson's statement implicating Jerry Herrington in the murder of Vera Brown was false or fabricated. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

99.    **Defendant Detective James R. Riley:** It has been alleged that on December 14, 1991, Defendant Detective James R. Riley physically abused a suspect in custody and forced him to sign a confession. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

**ANSWER: Defendant denies Plaintiff was physically abused or subjected to any attempt to coerce a false confession from him. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

100. It has been alleged that, on August 18, 1992, Defendant Detective James R. Riley wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, falsified reports that the individual had committed a crime he did not commit, and falsely testified to a grand jury. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his interrogation of Jerry Herrington and his fabrication of reports falsely stating that Jerry confessed when he did not.

**ANSWER: Defendant admits Plaintiff voluntarily confessed to his murder of Vera Brown. Defendant denies reports documenting Plaintiff's confession were fabricated or false. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

101. It has been alleged that, on July 11, 2001, Defendant Detective James R. Riley arrested an individual and took him to Area One, disregarded his request for a lawyer, and proceeded to physically and psychologically abuse the individual until he confessed. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's allegedly unconstitutional actions described immediately above are consistent with his unconstitutional interrogation,

physical abuse, and attempts to coerce a confession from Jerry Herrington in the present matter.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional interrogation, physical abuse, or attempts to coerce a confession from him. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph**.

102.    It has been alleged that, on October 2, 2002, Defendant Detective James R. Riley arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Detective Riley was not even investigated because he was retired at the time the allegations were made. Riley's allegedly unconstitutional actions on this date are consistent with his unconstitutional interrogation of Jerry Herrington in the present matter.

**ANSWER: Defendant denies Plaintiff was subjected to an unconstitutional interrogation. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

103.    In 2003, Detective Riley was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff

notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Riley was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Riley's unconstitutional conduct in *Pernell* is strikingly similar to his unconstitutional conduct here, where he interrogated Jerry Herrington while handcuffed to a wall without letting him call his grandmother or securing a parent, guardian, or youth officer, physically abused Jerry Herrington after he told him that he knew nothing of Vera Brown's murder, and then fabricated reports that Jerry confessed when he did not do so.

**ANSWER: Defendant denies Plaintiff was subjected to unconstitutional conduct, physical abuse, fabricated reports, or attempts to coerce a false confession from him. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

104.    **Defendant Detective Jerome Doroba:** It has been alleged that on December 14, 1991, Defendant Detective Jerome Doroba physically abused a suspect in custody and forced him to sign a confession. Doroba was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Doroba's allegedly unconstitutional conduct on this date is consistent with his physical abuse of Jerry Herrington and attempt to coerce a false confession from him.

**ANSWER: Defendant denies Plaintiff was subjected to physical abuse or attempts to coerce a false confession from him. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

105. **Defendant Officer Thomas Kelly:** It has been alleged that, on October 2, 2002, Defendant Officer Thomas Kelly arrested an individual without a warrant or probable cause, denied him access to his attorney, denied him access to food, water, or a restroom, and interrogated him without reading his *Miranda* rights. Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly was not even investigated because he was retired at the time the allegations were made. Kelly's allegedly unconstitutional actions on this date are consistent with his unconstitutional conduct with respect to the investigation of Jerry Herrington in the present matter.

**ANSWER: Defendant denies Plaintiff was subjected to unconstitutional conduct during the Chicago Police Department's investigation into the murder of Vera Brown. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph**.

106. In 2003, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Pernell v. Farley, et al.*, 03-CV-5316 (N.D. Ill.), alleging that he arrested the plaintiff without probable cause, put him into an interrogation room and handcuffed him to a wall where he was kept for hours while he was interrogated and physically abused, and ultimately coerced a false confession from the plaintiff notwithstanding the plaintiff repeatedly telling him that he had no knowledge of the murder. Criminal charges against Pernell were dismissed after a motion to suppress his confession was granted. The defendants settled this case for $370,000. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Pernell* is

consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER: Defendant denies Defendant Officers and Detectives conspired against Plaintiff or deprived him of his constitutional rights. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

107. In 2008, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Williams v. Chicago, et al.*, 08-CV-2936 (N.D. Ill), alleging that he conspired with other officers to cover up and justify the wrongful shooting of the plaintiff by another police officer. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional conduct in *Williams* in covering up and falsifying evidence is consistent with his conduct here in creating a false report to support the unconstitutional arrest, prosecution, and conviction of Jerry Herrington.

**ANSWER: Defendant denies a false report was created or that Plaintiff was subjected to an unconstitutional arrest, prosecution, or conviction. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

108. In 2014, Officer Kelly was named as a defendant in a federal civil rights lawsuit, *Moody v. Chicago, et al.*, 13-CV-8809 (N.D. Ill.), alleging that he conspired with other officers to deprive the plaintiff of his constitutional rights. Upon information and belief, Kelly was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Kelly's unconstitutional

conduct in *Moody* is consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER: Defendant denies Defendant Officers and Detectives conspired against Plaintiff or deprived him of his constitutional rights. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

109.    Officer James Ward: It has been alleged that, on August 18, 1992, Defendant Detective James E. Ward wrongfully held an individual in custody after determining that he was innocent, refused the individual his right to make a telephone call, and conducted a search of the individual's apartment without his consent or a search warrant. Ward was not subjected to any discipline or otherwise held accountable for this allegedly unconstitutional conduct. Ward's allegedly unconstitutional actions described immediately above are consistent with him conspiring with the Defendant Officers and Detectives in this case to deprive Jerry Herrington of his constitutional rights.

**ANSWER: Defendant denies Defendant Officers and Detectives conspired against Plaintiff or deprived him of his constitutional rights. Defendant further denies that any of the Defendants in this case engaged in any of the alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

110.    Upon information and belief, the Defendant Officers and Detectives have engaged in additional unconstitutional conduct consistent with their respective actions here, which will be the subject of discovery.

**ANSWER: Defendant denies Plaintiff was subjected to unconstitutional conduct by Defendant Officers and Detectives. Defendant further denies that any of the Defendants in this case engaged in any of the**

alleged misconduct involving the Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

## COUNT 1
### 42 U.S.C. 1983
### FABRICATION OF EVIDENCE THROUGH WITNESS COERCION AND MANIPULATION
### vs. DEFENDANT DETECTIVES WINSTEAD AND MYLES

Count 1 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.

## COUNT 2

### 42 U.S.C. § 1983
### FABRICATION OF EVIDENCE THROUGH FALSE REPORTING
### vs. OFFICERS BRANDON AND MCKNIGHT, DETECTIVES RILEY AND DOROBA, OFFICERS KELLY AND WARD, AND ASA TOFFENETTI

119.    Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:   Defendant incorporates his answers to each paragraph of Plaintiff's Complaint as his answer to paragraph 119 of Plaintiff's Complaint.**

120.    As more fully described above, Defendant Officers Brandon and McKnight, Detectives Riley and Doroba, Officers Kelly and Ward, and ASA Toffenetti, acting individually, jointly, and in conspiracy, while under color of law and within the scope of their employment, deprived Jerry Herrington of his constitutional rights to a fair trial and due process.

**ANSWER:   Defendant denies the allegations in this paragraph.**

121.    Among other things, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified the August 23, 1991

police report claiming that they received a tip describing Jerry Herrington as being involved in Vera Brown's murder.

**ANSWER:   Defendant denies the allegations in this paragraph.**

122.    Additionally, Defendant Officers Brandon and McKnight, acting individually, jointly, and in conspiracy with one another, falsified (inconsistent) reports that there was probable cause to arrest Jerry Herrington when there was not.

**ANSWER:   Defendant denies the allegations in this paragraph.**

123.    Additionally, Defendant Detectives Winstead and Myles, acting individually, jointly, and in conspiracy with one another, falsified reports concerning Melvin Jefferson's purported statement.

**ANSWER:   Defendant denies the allegations in this paragraph.**

124.    Additionally, Defendant Officers Kelly and Ward, acting individually, jointly, and in conspiracy with one another, falsified the July 2, 1991 General Progress Report claiming that they received information identifying "Jerry" as being involved in Vera Brown's murder.

**ANSWER:   Defendant denies the allegations in this paragraph.**

125.    Additionally, Defendant Detectives Riley and Doroba, together with Defendant ASA Toffenetti, acting individually, jointly, and in conspiracy with one another, falsified reports that Jerry Herrington confessed to being involved in Vera Brown's murder when he gave no such confession.

**ANSWER:   Defendant denies the allegations in this paragraph**.

126.   At the time of ASA Toffenetti's conduct as described herein, he was acting in a fact-finding and investigative capacity and, therefore, is not entitled absolute, prosecutorial, or any other type of immunity.

**ANSWER:   Defendant denies the allegations in this paragraph.**

127.   Absent the misconduct described under this count, Jerry Herrington would not have been arrested, indicted, prosecuted, or convicted this crime. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of this crime. Thus, as a direct and proximate result of the misconduct by the Defendants, as described herein, Jerry Herrington was deprived of his constitutional rights to a fair trial and due process and was ultimately convicted of a crime he did not commit.

**ANSWER:   Defendant denies the allegations in this paragraph.**

128.   The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Jerry Herrington's innocence.

**ANSWER:   Defendant denies the allegations in this paragraph.**

129.   At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:   Defendant denies the allegations in this paragraph.**

130.   Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER:   Defendant denies the allegations in this paragraph.**

131.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:   Defendant denies the allegations in this paragraph.**

## COUNT 3
## 42 U.S.C. § 1983
### *BRADY* VIOLATIONS
### vs. DEFENDANT CPD OFFICERS AND DETECTIVES

**Count 3 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

## COUNT 4
## 42 U.S.C. § 1983
### UNLAWFUL ARREST AND DETENTION
### vs. DEFENDANT CPD OFFICERS AND DETECTIVES

**Count 4 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

## COUNT 5
## 42 U.S.C. § 1983
### CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
### vs. DEFENDANT CPD OFFICERS AND DETECTIVES AND ASA TOFFENETTI

150.     Jerry Herrington hereby incorporates by reference Paragraphs 1 through 110 as if fully set forth herein.

**ANSWER: Defendant incorporates his answers to each paragraph of Plaintiff's Complaint as his answer to paragraph 150 of Plaintiff's Complaint.**

151.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators not yet known to Jerry Herrington, reached an agreement among themselves to coerce, induce, and fabricate false evidence in the form of witness statements, a false confession, identifications, and testimony for the purpose of framing Jerry Herrington for a crime he did not commit.

**ANSWER: Defendant denies the allegations in this paragraph.**

152.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, and other co-conspirators, not yet known to Jerry Herrington, reached an agreement among themselves to deprive Jerry Herrington of material exculpatory evidence and information to which he was lawfully entitled, and to conceal their misconduct from Jerry Herrington, all in violation of Jerry Herrington's constitutional rights as described above.

**ANSWER: Defendant denies the allegations in this paragraph.**

153.    The Defendant CPD Officers and Detectives, Defendant ASA Toffenetti, acting in concert with unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

**ANSWER: Defendant denies the allegations in this paragraph.**

154.    In furtherance of that conspiracy, each of the co-conspirators committed overt acts and was a willful participant in joint activity.

**ANSWER: Defendant denies the allegations in this paragraph.**

155.    The misconduct described above was objectively unreasonable and was undertaken intentionally and with willful indifference to Jerry Herrington's constitutional rights.

**ANSWER:   Defendant denies the allegations in this paragraph.**

156.    At the time of these events, it was clearly established in the law that the misconduct described in this count was unconstitutional.

**ANSWER:   Defendant denies the allegations in this paragraph.**

157.    Through this misconduct, the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused Jerry Herrington's unjust criminal conviction and wrongful imprisonment.

**ANSWER:   Defendant denies the allegations in this paragraph.**

158.    The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:   Defendant denies the allegations in this paragraph.**

### COUNT 6
### 42 U.S.C. §§ 1983, 1986
### FAILURE TO INTERVENE
### vs. DEFENDANT CPD OFFICERS AND DETECTIVES

**Count 6 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

**COUNT 7**
**42 U.S.C. §§ 1983**
**MALICIOUS PROSECUTION**
**vs. DEFENDANT CPD OFFICERS AND DETECTIVES AND ASA**
**TOFFENETTI**

167. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER: Defendant incorporates his answers to each paragraph of Plaintiff's Complaint as his answer to paragraph 167 of Plaintiff's Complaint.**

168. The Defendants herein initiated criminal proceedings against Jerry for the murder of Vera Brown, for which Jerry was convicted.

**ANSWER: Defendant denies the allegations in this paragraph.**

169. At no point in time, was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

**ANSWER: Defendant denies the allegations in this paragraph.**

170. As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

**ANSWER: Defendant denies the allegations in this paragraph.**

171. On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

**ANSWER: Defendant denies the allegations in this paragraph.**

172. The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

**ANSWER: Defendant denies the allegations in this paragraph.**

173. The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

**ANSWER: Defendant denies the allegations in this paragraph.**

174. The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime of which he was accused.

**ANSWER: Defendant denies the allegations in this paragraph.**

175. This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER: Defendant denies the allegations in this paragraph.**

176. The Defendant CPD Officers and Detectives and ASA Toffenetti acted under the color of state law to deprive Jerry Herrington of his rights under the U.S.

Constitution. Accordingly, the Defendant CPD Officers and Detectives and ASA Toffenetti violated 42 U.S.C. § 1983.

**ANSWER:  Defendant denies the allegations in this paragraph.**

177.   The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:   Defendant denies the allegations in this paragraph.**

**COUNT 8**
**42 U.S.C. § 1983**
***MONELL* LIABILITY**
**vs. CITY OF CHICAGO**

**Count 8 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

**COUNT 9**
**STATE LAW MALICIOUS PROSECUTION**
**vs. DEFENDANT CPD OFFICERS AND DETECTIVES AND ASA TOFFENETTI**

216.   Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:   Defendant incorporates his answers to each paragraph of Plaintiff's Complaint as his answer to paragraph 216 of Plaintiff's Complaint.**

217. The Defendants herein initiated criminal proceedings against Jerry Herrington for the murder of Vera Brown, for which Jerry Herrington was convicted.

**ANSWER:  Defendant denies the allegations in this paragraph.**

218. At no point in time was there any credible evidence giving rise to probable cause to suspect Jerry Herrington of the crime for which he was arrested, charged, and prosecuted.

**ANSWER:  Defendant denies the allegations in this paragraph.**

219. As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti caused Jerry Herrington to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Jerry Herrington.

**ANSWER:  Defendant denies the allegations in this paragraph.**

220. On March 4, 2025, said judicial proceedings were ultimately terminated in Jerry Herrington's favor and in a manner indicative of Jerry Herrington's innocence.

**ANSWER:  Defendant denies the allegations in this paragraph.**

221. The Defendant CPD Officers and Detectives and ASA Toffenetti accused Jerry Herrington of a crime knowing that he was innocent. The Defendant CPD Officers and Detectives manipulated witness statements and identifications used against Jerry Herrington and withheld exculpatory evidence.

**ANSWER:  Defendant denies the allegations in this paragraph.**

222.     The Defendant CPD Officers and Detectives and ASA Toffenetti made statements to prosecutors with the intent of pressuring and exerting influence to institute and continue judicial proceedings against Jerry Herrington.

**ANSWER:   Defendant denies the allegations in this paragraph.**

223.     The Defendant CPD Officers and Detectives and ASA Toffenetti caused the criminal proceedings against Jerry Herrington to continue despite the absence of probable cause that he had committed the crime of which he was accused.

**ANSWER:   Defendant denies the allegations in this paragraph.**

224.     This misconduct by the Defendant CPD Officers and Detectives and ASA Toffenetti was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER:   Defendant denies the allegations in this paragraph.**

225.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it; the loss of freedom; the loss of time, affection, and support of and with loved ones; emotional pain and suffering of the most severe and persistent nature; humiliation; degradation; lost wages and economic opportunity; and other continuing injuries and damages as compensable under the law.

**ANSWER:   Defendant denies the allegations in this paragraph.**

### COUNT 10
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### vs. DEFENDANT CPD OFFICERS AND DETECTIVES AND ASA
### TOFFENETTI

226. Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER: Defendant incorporates his answers to each paragraph of Plaintiff's Complaint as his answers to paragraph 226 of Plaintiff's Complaint.**

227. The acts and conduct of the Defendant CPD Officers and Detectives and ASA Toffenetti as set forth above were extreme and outrageous. The Defendant CPD Officers and Detectives and ASA Toffenetti intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Jerry Herrington.

**ANSWER: Defendant denies the allegations in this paragraph.**

228. The actions and conduct by the Defendant CPD Officers and Detectives and ASA Toffenetti directly and proximately caused severe emotional distress to Jerry Herrington and thereby constituted intentional infliction of emotional distress.

**ANSWER: Defendant denies the allegations in this paragraph.**

229. The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER: Defendant denies the allegations in this paragraph.**

230. As a direct and proximate result of the wrongful acts committed by the Defendant CPD Officers and Detectives and ASA Toffenetti, Jerry Herrington suffered injuries, including but not limited to emotional distress.

**ANSWER: Defendant denies the allegations in this paragraph.**

<u>**COUNT 11**</u>
**WILLFUL AND WANTON CONDUCT**
**vs. DEFENDANT CPD OFFICERS AND DETECTIVES**

**Count 11 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

## COUNT 12
### CIVIL CONSPIRACY
### vs. DEFENDANT CPD OFFICERS AND DETECTIVES AND ASA TOFFENETTI

235.     Jerry Herrington hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

**ANSWER:   Defendant incorporates his answers to each paragraph of Plaintiff's Complaint as his answers to paragraph 235 of Plaintiff's Complaint.**

236.     As more fully described above, the Defendant CPD Officers and Detectives and ASA Toffenetti, acting in concert with one another and other co-conspirators, conspired to accomplish an unlawful purpose by unlawful means.

**ANSWER:   Defendant denies the allegations in this paragraph.**

237.     In furtherance of the conspiracy, the Defendant CPD Officers and Detectives and ASA Toffenetti committed overt acts and were otherwise willing participants in joint activity.

**ANSWER:   Defendant denies the allegations in this paragraph.**

238.     The misconduct was undertaken with malice, willfulness, and reckless indifference to Jerry Herrington's rights.

**ANSWER:   Defendant denies the allegations in this paragraph.**

239.     The misconduct alleged herein proximately caused Jerry Herrington to experience horrific and permanent injury, including but not limited to pain and suffering from being incarcerated and the danger, stress, and fear that came with it;

the loss of freedom; the loss of time, affection, and support of and with loved ones;

emotional pain and suffering of the most severe and persistent nature; humiliation;

degradation; lost wages and economic opportunity; and other continuing injuries and

damages as compensable under the law.

**ANSWER:   Defendant denies the allegations in this paragraph.**

## COUNT 13
### *RESPONDEAT SUPERIOR*
### vs. CITY OF CHICAGO, COOK COUNTY, AND CHICAGO HOUSING AUTHORITY

**Count 13 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

## COUNT 14
### INDEMNIFICATION
### vs. CITY OF CHICAGO, COOK COUNTY, AND CHICAGO HOUSING AUTHORITY

**Count 14 of Plaintiff's Complaint is not asserted against the Defendant and thus no answer is required.**

### JURY DEMAND

Defendant requests a jury trial pursuant to Federal Rule of Civil Procedure 38 on all triable issues.

## DEFENDANT'S AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, while continuing to deny liability to Plaintiff, and pleading in the alternative and without prejudice to the averments in his answer to Plaintiff's Complaint, assert the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE
*Absolute Prosecutorial Immunity*

At all relevant times, Defendant was an Assistant State's Attorney for the Cook County State's Attorneys' Office. In this capacity, Defendant took actions intimately associated with the judicial phase of the criminal process, including but not limited to the preparation for and initiation of judicial proceedings and trial. When Defendant spoke with suspects and witnesses, and took statements, he performed

acts toward initiating a prosecution and presenting the State's case. Because the conduct complained of on the part of Defendant is within the scope of his employment as a prosecutor, within his role as an advocate of the State, and arises out of the evaluation of evidence and taking statements for the purpose of initiation and prosecution of criminal charges, Plaintiff's claims are barred on the basis of absolute prosecutorial immunity.

## SECOND AFFIRMATIVE DEFENSE
*Qualified Immunity*

At all relevant times, Defendant was an Assistant State's Attorney for the Cook County State's Attorney's Office. To the extent any of his actions were not protected by absolute prosecutorial immunity, they are protected by qualified immunity as his actions did not violate Plaintiff's constitutional rights and were at all times proper in light of clearly established law. A reasonable government official objectively viewing the facts and circumstances then confronting Defendant could have reasonably believed that the actions taken by him were objectively reasonable and were within constitutional limits that were clearly established at the time.

## THIRD AFFIRMATIVE DEFENSE
*Sovereign Immunity*

Plaintiff's claims against Defendant are really claims against a State official based upon his actions as Assistant State's Attorney, functions that fall within the scope of his employment and authority as an Assistant State's Attorney. Plaintiff's claims against Defendant relates to the initiation of charges against, and the criminal prosecution of Plaintiff. The State's Attorney is the constitutional officer vested with

exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. Plaintiff's claims against Defendant are against the State of Illinois, and thus sovereign immunity shields Defendant from liability in federal court. The Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendant.

## FOURTH AFFIRMATIVE DEFENSE
*Federal Statute of Limitations*

Plaintiff's §1983 claims accrued more than two years earlier than the filing of Plaintiff's Complaint, and, thus, these claims are time-barred.

## FIFTH AFFIRMATIVE DEFENSE
*Illinois Statute of Limitations*

Plaintiff's state law claims accrued more than one year earlier than the filing of Plaintiff's Complaint, and, thus, these claims are time-barred (745 ILCS 10/8-101).

## SIXTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-201*

Defendant is immune from Plaintiff's state law claims under 745 ILCS 10/2-201 of the Illinois Tort Immunity Act which provides as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

## SEVENTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-202*

The acts or omissions that Defendant allegedly took would have been acts or omissions in their capacity as public employees in the execution or enforcement of a law and because those acts or omissions did not constitute willful or wanton conduct, Defendant is immune from suit.

## EIGHTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-204*

Because Defendant was  at all times relevant to the Plaintiff's allegations, a public employee acting within the scope of his employment, he is immune from suit for any injury caused by the act or omission of another person.

## NINTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-205*

Defendant is not liable for any injury caused by his adoption of an enactment, failure to adopt an enactment, or his enforcement or failure to enforce any law.

## TENTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-208*

Defendant is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment unless he acted maliciously and without probable cause.

## ELEVENTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-212*

To the extent that any Count in this Complaint seeks recovery based on joint action between public employees, Defendant is immune from suit pursuant to 745 ILCS 10/2-212.

## TWELFTH AFFIRMATIVE DEFENSE
*Tort Immunity Act 745 ILCS 10/2-213*

Defendant is immune from punitive or exemplary damages under 745 ILCS 10/2-213 which provides as follows: "Notwithstanding any other provision of law, a public employee is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused."

## THIRTEENTH AFFIRMATIVE DEFENSE
*Attorneys' Fees*

Plaintiff is not entitled to attorney fees for his state law claims. *See Kerns v. Engelke*, 76 Ill.2d 154, 166 (Ill. 1979).

## FOURTEENTH AFFIRMATIVE DEFENSE
*Failure to Mitigate Damages*

To the extent Plaintiff failed to mitigate any claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

## FIFTEENTH AFFIRMATIVE DEFENSE
*Res Judicata, Judicial Estoppel, Collateral Estoppel, and Waiver*

Plaintiff's claims in the Complaint are waived and/or barred by the doctrines of *res judicata, judicial estoppel* and collateral estoppel to the extent that they involve issues or claims that were, or could have been, resolved in the underlying criminal, or post-conviction proceedings.

### SIXTEENTH AFFIRMATIVE DEFENSE
*Personal Involvement*

Defendant cannot be held liable for Plaintiff's 42 U.S.C. 1983 claims unless he individually caused or participated in an allege constitutional deprivation because individual liability for damages under 42 U.S.C. 1983 is predicated on personal liability. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

### SEVENTEENTH AFFIRMATIVE DEFENSE
*Vicarious Liability*

To the extent Plaintiff alleges a failure to intervene claim, such a claim has no basis in the Constitution and the "Supreme Court has held many times that 1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen* 48 F.4th 816, 834-835 (7th Cir. 2022 ( Easterbrook, J. concurring).

### EIGHTEENTH AFFIRMATIVE DEFENSE
*In pari delicto*

Any recovery of damages by Plaintiff is barred by the doctrine of *in pari delicto*.

### NINETEENTH AFFIRMATIVE DEFENSE
*Comparative or Contributory Fault*

To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by the negligent, willful, wanton and/or other wrongful

conduct on the part of the Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this cause.

## TWENTIETH AFFIRMATIVE DEFENSE
*Unconstitutionality of Punitive Damages Award If Any*

An award of punitive damages would deprive Defendant due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where liability for punitive damages has not been proven beyond a reasonable doubt or at least by clear and convincing evidence, or where the award of punitive damages is disproportionate to actual damages.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
*Setoff*

In further response to Plaintiff's Complaint, and without waiving any of the responses in the foregoing Answer, Defendant is entitled to a setoff on the amount of the final judgment for any prejudgment amount received from any other party to this lawsuit and/or third-party entity as compensation for the alleged wrongs or harms that are the subject of Plaintiff's Complaint.

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice, enter a judgment in Defendant's favor, award Defendant reasonable attorneys' fees, costs, and expenses, and award Defendant any other relief this Court deems just and reasonable.


Dated:  November 5, 2025

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

By: */s/ Anshuman Vaidya* _____

Robert Shannon
Anshuman Vaidya
Calvin R. Edwards, Jr.
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois  60606
T (312) 704-3000 | F (312) 704-3001
rshannon@hinshawlaw.com
avaidya@hinshawlaw.com
cedwards@hinshawlaw.com

*Counsel for Defendant William Toffinetti*

## **CERTIFICATE OF SERVICE**

I hereby certify that on **November 5, 2025**, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day and was served upon all Counsel of Record via the Court's CM/ECF system.

*/s/ Anshuman Vaidya*